IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

---

LT. ANTHONY CARMICHAEL,

             Plaintiff,

      v.

POLICE CHIEF JOHN SCOTT
THOMSON, DEPUTY CHIEF ORLANDO
CUEVAS, DEPUTY CHIEF MICHAEL
LYNCH, LOUIS VEGA, CITY OF
CAMDEN, COUNTY OF CAMDEN,
COUNTY OF CAMDEN POLICE
DEPARTMENT, CHIEF JOHN SCOTT
THOMSON, DEPUTY CHIEF ORLANDO
CUEVAS, DEPUTY CHIEF MICHAEL
LYNCH, JOSEPH WYSOCKI, J.L.
WILLIAMS

             Defendants.

---

HONORABLE JEROME B. SIMANDLE

Civil No. 14-3323 (JBS/AMD)


**OPINION**

APPEARANCES:

Cheryl Cooper, Esq.
LAW OFFICES OF CHERYL L. COOPER
342 Egg Harbor Rdd, Suite A-1
Sewell, NJ 08080
    -and-
Paul D. Brandes, Esq.
VILLARI BRANDES & GIANNONE, PC
8 Tower Bridge
161 Washington Street
Suite 400
Conshohocken, PA 19428
    Attorneys for Plaintiff

Christine O'Hearn, Esq.
Benjamin S. Teris, Esq.
BROWN & CONNERY, LLP
360 Haddon Ave.
PO Box 539
Westmont, NJ 08108
    Attorneys for Defendants County of Camden, et al.

Daniel Edward Rybeck
John C. Eastlack, Jr.
WEIR & PARTNERS LLP
457 Haddonfield Rd., Suite 310
Cherry Hill, NJ 08002
    Attorneys for Defendants City of Camden, et al.

**SIMANDLE**, Chief Judge:

## I.   INTRODUCTION[1]

    This is an action by Plaintiff Lt. Anthony Carmichael, a
police officer currently employed with the Camden County Police
Department. Plaintiff alleges that his current employer, his
former employer, the City of Camden Police Department, and
various superior officers, some of who are currently employed at
the Camden County Police Department, engaged in a pattern of
retaliation and harassment against Plaintiff after he spoke out
against certain internal disciplinary procedures and practices
that violated New Jersey statutes as well as guidelines
promulgated by the Attorney General.

    Presently before the Court are two motions to dismiss and
Plaintiff's cross-motion to amend the complaint, which
Defendants oppose. For the reasons set forth below, the Court
will grant in part and deny in part Plaintiff's motion to amend.

---

[1] The facts recited here are drawn from Plaintiff's Complaint,
filed May 27, 2014, which are presumed to be correct for
purposes of these motions.

Defendants' motions to dismiss the original complaint will be denied without prejudice as moot.

II. **BACKGROUND**

**A. Factual Background[2]**

Plaintiff Lieutenant Anthony Carmichael was a member of the Camden City Police Department, from September 1994 until April 15, 2013. Since April 15, 2013, he has been employed as a Lieutenant with the Camden County Police Department. Plaintiff is African American. (Compl. ¶¶ 4, 11.)

Plaintiff was hired by the City Police Department in 1994. In 2003, he was promoted to Lieutenant. In July 2008, he was assigned to Internal Affairs as an "acting Captain" awaiting appointment to a permanent position of Captain. (Compl. ¶¶ 11-12, 19.) In being made acting Captain, Plaintiff became the direct supervisor of Lt. Sosinavage, who previously ran the Internal Affairs unit. (Compl. ¶¶ 19, 39.) Plaintiff became the immediate supervisor of the entire unit. (Compl. ¶ 19.)

At the time, the City Police Department was under a federal Consent Decree imposed by the District of New Jersey as a result of past irregular Internal Affairs practices. Under the Consent Decree, the police department was required to follow certain

---

[2] The facts of this case are drawn from Plaintiff's Complaint, filed May 27, 2014.

specified policies and procedures and had certain reporting
requirements. As acting Captain of the Internal Affairs Unit,
Plaintiff was charged with ensuring that the City complied with
the Decree, overseeing the reporting requirements, and making
sure that the Internal Affairs Department complied with the New
Jersey Attorney General Guidelines, including the guidelines on
investigating internal and external complaints of officer
misconduct. (Compl. ¶¶ 28-32.) The Guidelines required the
Internal Affairs unit to conduct full and complete
investigations into all allegations of officer misconduct.
(Compl. ¶ 41.) In the five years prior 2009, when Sosinavage in
charge of the unit, the Internal Affairs unit had been in
compliance with the Guidelines. (Compl. ¶ 39.)

Shortly after Plaintiff moved to Internal Affairs, in
August 2008, Louis Vega was hired as a civilian police director
for the City's police department. At around the same time, John
Scott Thomson was promoted from Captain to Police Chief. As
Chief, Thomson oversaw the Camden City Police Department and the
Camden County Police Department and had final authority over
decisions made in the department. (Compl. ¶¶ 13, 16-17.) Vega
and Thomson consulted with each other on almost all decisions
made within the police department.

Vega met with Plaintiff shortly after he first joined the

4

City Police Department and told Plaintiff that he wanted to reprioritize Internal Affairs cases. According to Plaintiff, Vega wanted Plaintiff to "focus more on the rule infractions rather than the pending criminal/serious infractions." (Compl. ¶ 23.) He also told Plaintiff that he "wanted to put the officers out of work, 'teach them a lesson,' and have them fight to get their jobs back." (Compl. ¶ 24.)

At another meeting with Vega and Thomson, Plaintiff was told that it was not necessary to follow the Attorney General Guidelines on investigating and charging in administrative cases. (Compl. ¶ 25.) Plaintiff voiced objections to violating the AG Guidelines to "several members of the City of Camden administration," but the administration members told Plaintiff to discontinue the past practice of Internal Affairs. ((Compl. ¶¶ 25-26.)

On or around March 23, 2009, Plaintiff had a meeting with Thomson to brief him on the status of pending Internal Affairs investigations. Plaintiff told Thomson of one complaint alleging that certain officers with the rank of Inspector committed some misconduct against subordinate officers. (Compl. ¶¶ 42-45.) The investigation was not yet completed but the complaint appeared to be corroborated by eyewitnesses, and Plaintiff told Thomson that there should be a full and complete investigation into the

allegations before disciplinary charges were filed against the Investigators. (Compl. ¶¶ 45, 47.)  Thomson responded that "the tail is not going to wag the dog." (Compl. ¶ 49.)

At the same meeting, Plaintiff told Thomson of another Internal Affairs investigation in which Inspectors wrote a memo stating that a Sargent had committed several rule infractions. Again, Plaintiff stated his opinion that a full investigation was required before disciplinary charges were filed, since the Sergeant was alleged to have committed serious rule infractions and any disciplinary charges brought against him could result in severe penalties. (Compl. ¶¶ 51-54.) Plaintiff added that the department, including Thomson, could be in trouble for not fully investigating the allegations. (Compl. ¶ 57.) Thomson was "annoyed" and indicated that he would direct Plaintiff what to investigate and what not to investigate. (Compl. ¶ 55.)

On April 7, 2009, Thomson met with Sosinavage and asked about the two matters Plaintiff had raised during the March 23rd meeting. Sosinavage told Thomson that the investigations into those cases were not yet complete but that he would be able to complete them within time. Despite this, Thomson emailed Plaintiff the next day asking Plaintiff to prepare the Notices of Discipline for the officers and to have the document on his desk by noon. (Compl. ¶¶ 58-59.) Plaintiff objected to Thomson's

6

order but asked Sosinavage to comply because Thomson was their superior officer. The order was drafted and placed on Thomson's desk that day. (Compl. ¶ 60.)

On April 10, 2009, two days after Sosinavage and Plaintiff Carmichael submitted the Notices of Discipline to Thomson, Vega and Inspector Michael Lynch met with Sosinavage and told him that he was also being transferred out of Internal Affairs. They told Sosinavage that he was being transferred into the midnight shift in the patrol division and assigned to supervise the "problem people" on that shift. (Compl. ¶¶ 62, 64.)

Also on April 10, 2009, Plaintiff Carmichael met with Thomson and Vega, who told him that there would no longer be a Captain in Internal Affairs and that Plaintiff was going to be transferred out. (Compl. ¶¶ 63.) Shortly thereafter, Vega told Plaintiff that he was being transferred to the midnight shift of the patrol division, where he would be on the same shift as Sosinavage. (Compl. ¶¶ 67-68.)

Then-Sergeant Joseph Wysocki, who is Caucasian, replaced Plaintiff in Internal Affairs and was made acting Lieutenant, even though Plaintiff was senior in rank within the unit. (Compl. ¶¶ 70, 94-95.) Before leaving for the patrol division, Sosinavage trained Wysocki on the proper procedures for conducting Internal Affairs investigations and told Wysocki to

conduct full investigations as required by the the Attorney General Guidelines. While Sosinavage was training Wysocki, he received another memo by Inspectors about misconduct where the Inspectors recommended disciplinary charges without further investigation. Despite the requirements under the Guidelines, Sosinavage was ordered to follow the Inspectors' recommendations and issue a Notice of Discipline without any additional inquiry. (Compl. ¶¶ 72-73.)

Around the time Plaintiff was being asked to transfer out of Internal Affairs, he was to be promoted to Captain. Plaintiff was third on the promotional list and, for unrelated reasons, the two candidates above him were not going to be promoted. (Compl. ¶ 75.) Vega asked Plaintiff to decline the promotion to Captain, but Plaintiff refused to do so. (Compl. ¶ 74.)

Approximately two weeks later, on April 23, 2009, during a meeting with the City of Camden Business Administrator, Chirstine Jones-Tucker, Jones-Tucker told Sosinavage that the Captain position had been given to an officer Burnett. (Compl. ¶ 79.)

As a result of Defendant's treatment, Plaintiff took family medical leave from his position in the patrol division. (Compl. ¶ 98.) When he returned from medical leave wearing his Captain bars, he was told by Deputy Chief Orlando Cuevas that he had

been demoted to Lieutenant. Plaintiff was then transferred to
Special Operations, where he was assigned to work under now-
Captain Burnett. (Compl. ¶¶ 99-102.) At around the same time,
Sosinavage, who is Caucasian, was promoted to acting Captain in
the patrol division. Sosinavage, who is lower on the promotional
list than Plaintiff and junior in rank, took over Plaintiff's
position in the patrol division unit when Plaintiff left.
(Compl. ¶¶ 100, 103.)

Plaintiff alleges that in addition to being passed over for
a promotion and demoted, he was humiliated, fined, disciplined,
and discriminated against (Compl. ¶¶ 97, 109.) He states that
Cuevas once ordered Plaintiff to be "charged with AWOL less than
5 days" for attending a union meeting while other union members
were permitted to attend the meeting on administrative leave and
not punished. (Compl. ¶ 104.) Deputy Chief Michael Lynch once
imposed disciplinary action against Plaintiff, approved by
Thomson, "that was unwarranted, unsupported by the evidence and
excessive." (Compl. ¶ 106.) Plaintiff also states that, as
Captain, he was forced to work "split shifts" when his Caucasian
counterparts were not told to do so. (Compl. ¶ 144.)

When the City of Camden Police Department was disbanded in
May 2013, Plaintiff was hired by the Camden County Police
Department. He disclosed that he had filed a complaint against

9

Defendants, including Thomson, Lynch, and Cuevas, alleging race discrimination, retaliation, and other torts. Nevertheless, Thomson was named Police Chief of the Camden County Police Department, and Cuevas and Lynch were named Deputy Chiefs. (Compl. ¶¶ 169-76.) Plaintiff asserts that the hiring of Thomson, Lynch, and Cuevas violated New Jersey law on the hiring and promotion of officers in the Camden County Police Department. (Compl. ¶ 178.) Plaintiff also alleges that he spoke out against the improper practices and demanded that his union grieve the hirings in the newly created Camden County Police Department, and was subject to retaliation by Thomson, Lynch, and Cuevas as a result. (Compl. ¶¶ 181-84.)

**B. Procedural Background**

Plaintiff filed his complaint on May 27, 2014, naming as defendants the City of Camden, the County of Camden, the County of Camden Police Department, and six individual officers: John Scott Thomson, Orlando Cuevas, Michael Lynch, Louis Vega, Joseph Wysocki, and J.L. Williams, all in their individual and official capacities as employees of the City of Camden and the County of Camden.

Plaintiff's complaint states that he was subject to retaliation by the City Defendants for objecting to the City Police Department's unlawful disciplinary practice. Plaintiff

states that he was transferred to a less desirable post, demoted, passed over for a promotion, disciplined, harassed, fined, and forced to work split shifts as a result of his actions. Plaintiff argues that Defendant's retaliatory conduct violated the New Jersey Law Against Discrimination ("LAD"), the Conscientious Employee Protection Act ("CEPA"), and Plaintiff's free speech rights guaranteed by the U.S. and New Jersey Constitutions. (Counts One, Two, Three, Four, Six, and Seven.) Plaintiff alleges that Defendants created an official custom or policy of violating the Attorney General Guidelines with respect to investigating charges and imposing discipline.

Plaintiff also alleges that the adverse employment actions he suffered were a result of unlawful race discrimination, in violation of the LAD and rights under the U.S. Constitution. (Counts Two, Four, and Five.)

Finally, Plaintiff alleges that the County and City Defendants retaliated against him after he initiated a state civil suit against these practices and spoke out against unlawful promotion and hiring practices in the new Camden County Police Department. Plaintiff alleges constitutional violations under § 1983. (Counts Eight and Nine.)[3]

---

[3] The Court exercises subject matter jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. § 1331, and exercises supplemental jurisdiction over Plaintiff's state law

Defendants filed their first motion to dismiss on June 16, 2014, on behalf of the City of Camden and the individually named defendants in their role as employees of the City of Camden ("City Defendants.") [Docket Item 5.] Plaintiff filed an opposition to Defendant's motion to dismiss on July 31 [Docket Item 9]. On August 28, 2014, Defendants filed a second motion to dismiss on behalf of the County of Camden, County of Camden Police Department, and the individually named defendants in their role as employees of Camden County ("County Defendants").[4] [Docket Item 11.] No opposition to the County Defendants' motion to dismiss was filed. Instead, on November 1, 2014, Plaintiff filed a cross-motion to amend his complaint. [Docket Item 16.] The proposed Amended Complaint primarily added some new facts detailing events after the filing of his lawsuit in 2010, and the claims arising out of those facts. [Docket Item 16].

The County and City Defendants filed a single brief opposing Plaintiff's motion to amend on the grounds of futility [Docket Item 19].

**III. STANDARD OF REVIEW**

A motion to dismiss under Fed. R. Civ. P. 12(b)(6) may be granted only if, accepting all well-pleaded allegations in the

---

claims pursuant to 28 U.S.C. § 1367.
[4] Vega, who is not employed with Camden County, was not a party to the second motion to dismiss.

complaint as true and viewing them in the light most favorable
to the plaintiff, a court concludes that plaintiff failed to set
forth fair notice of what the claim is and the grounds upon
which it rests that make such a claim plausible on its face.
Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007). Although
Rule 8 does not require "detailed factual allegations," it
requires "more than an unadorned, the-defendant-unlawfully-
harmed-me accusation." Ashcroft v. Iqbal, 556 U.S. 662, 678
(2009) (citing Twombly, 550 U.S. at 555). A court must accept as
true all factual allegations in a complaint; however, that tenet
is "inapplicable to legal conclusions," and "[a] pleading that
offers labels and conclusions or a formulaic recitation of the
elements of a cause of action will not do." Id. at 678.

If a responsive pleading has been served, "a party may
amend its pleading only with the opposing party's written
consent or the court's leave." Fed. R. Civ. P. 15(a). "The court
should freely give leave when justice so requires." Id. The
decision to grant leave to amend a complaint rests within the
sound discretion of the trial court. Massarsky v. General Motors
Corp., 706 F.2d 111, 125 (3d Cir. 1983). The district court may
deny leave to amend only if (a) the moving party's delay in
seeking amendment is undue, motivated by bad faith, or
prejudicial to the non-moving party; or (b) the amendment would

13

be futile. <u>Adams v. Gould, Inc.</u>, 739 F.2d 858, 864 (3d Cir. 1984). "Futility" means that the complaint, as amended, would fail to state a claim upon which relief could be granted. <u>Travelers Indem. Co. v. Dammann & Co.</u>, 594 F.3d 238, 243 (3d Cir. 2010); <u>Shane v. Fauver</u>, 213 F.3d 113, 115 (3d Cir. 2000). In assessing "futility," the court applies the same standard of legal sufficiency as applies under Rule 12(b)(6). <u>Shane</u>, 213 F.3d at 115. Thus, if a claim is vulnerable to dismissal under Rule 12(b)(6) and the Court finds that an amendment would not cure the deficiency, the request to amend will be denied.

## IV.  ANALYSIS

### A. Plaintiff's motion to amend

Plaintiff's Amended Complaint introduces a few new facts which primarily serve to add detail and clarify portions of the original complaint. The most significant of these facts pertain to Plaintiff's claim that he was subject to retaliation after filing suit against Defendants in civil court. In the original complaint, Plaintiff did not specify how he was retaliated against, but his Amended Complaint provides new detail. Plaintiff now pleads that his state complaint was filed in April 2010, while he was still with the City Police Department. (Am. Compl. ¶ 182.) Where Plaintiff previously stated that he spoke truthfully about his lawsuit against the City, he now states

that he testified truthfully under oath as to Defendant's
unlawful actions. (Compl. ¶ 184.) Plaintiff also adds that he
was passed over for a promotion in the County Police Department
as a result of his lawsuit and testimony. Specifically, he
states that Thomson, Lynch, and Cuevas "placed Caucasian less
senior officers in front of Plaintiff who was more qualified and
promoted the Caucasian officers over Plaintiff." (Compl. ¶ 213.)
Plaintiff alleges that the individually named County Defendants
"promoted and/or placed and/or hired officers" into the County
Police Department in a manner that violated the Civil Service
Pilot Program and the Civil Service rules and regulations, and
that Defendants had a custom and policy of doing so.[5] (Compl. ¶
214-217.) He further states that Defendants passed over him for
promotion and hiring in retaliation for his filing the civil
suit. (Compl. ¶ 186.) Plaintiff pleads that he spoke out against
these unlawful hiring and promotion practices but "suffered
adverse employment actions" for doing so. (Compl. ¶ 190.)

In addition to these new facts, Plaintiff's Amended
Complaint amends some claims and adds new claims, some
duplicative, most of which relate to the new facts. Plaintiff
states that Thomson, Lynch, and Cuevas passed him up for a

---

[5] Plaintiff does not specify what the Civil Service Pilot Program
is, nor does he state precisely which rules or regulations
Defendants violated.

promotion in retaliation for his lawsuit, his testimony against
Defendants, and his objections to the County Police Department's
unlawful hiring and promotion practices. Plaintiff states that
such conduct violated his free speech rights under the U.S. and
New Jersey Constitutions. (Counts Eight, Nine, Thirteen,
Fifteen, and Sixteen.) Plaintiff also states general claims
under § 1983, alleging that he "suffered damages" as a result of
the County Defendants' failure to stop the unlawful hiring and
promotion custom or practice. (Counts Ten and Fourteen.)
Finally, Plaintiff pleads that Defendants' failure to promote
him constituted discrimination on the basis of race, in
violation of the Constitution and the LAD. (Counts Eleven and
Twelve.)

Defendants challenge Counts Five, Ten, Eleven, Twelve,
Thirteen, Fourteen, and Fifteen of Plaintiff's Amended Complaint
on the grounds of futility, arguing that the new allegations are
still insufficient to state claims for retaliation, race
discrimination, and general violations under § 1983.

Defendants do not challenge Counts Eight, Nine, and
Sixteen, which are retaliation claims based on protected speech
against City Defendants Thomson, Lynch, Cuevas, and the City of
Camden. Accordingly, in light of the liberal policy of amendment
embodied in Rule 15(a), see Forman v. Davis, 371 U.S. 178, 182

16

(1962), and because the original complaint gave Defendants notice of the general nature of these claims, the Court will accept amendment of these claims as unopposed.[6]

> **a. Counts 13 & 15: Plaintiff's Amended Complaint states a plausible claim for retaliation by the remaining County Defendants under the First Amendment and the New Jersey Constitution.**

Counts Thirteen and Fifteen of Plaintiff's Amended Complaint allege that the County Defendants, in violation of the First Amendment and the New Jersey Constitution, failed to promote Plaintiff because Plaintiff filed a lawsuit and spoke out against Defendants' unlawful hiring and promotion practices.[7]

---

[6] Although Defendants have not moved to dismiss the Camden County Police Department as a party, the Court notes that "[i]n Section 1983 actions, police departments cannot be sued in conjunction with municipalities, because the police department is merely an administrative arm of the local municipality, and is not a separate judicial entity." Padilla v. Twp. of Cherry Hill, 110 Fed. App'x 272, 278 (3d Cir. 2004) (quoting DeBellis v. Kulp, 166 F. Supp. 2d 255, 264 (E.D. Pa. 2001)). If all counsel agree, they are invited to submit a consent order dismissing the Camden County Police Department as a party.

[7] Plaintiff's "First Amendment" claim under the state Constitution (Count Thirteen) appears to be a free speech retaliation claim, since Plaintiff alleges that he "suffered retaliation, which included, but is not limited to being skipped and/or passed over for promotion" as a direct and proximate result of engaging in protected speech. (Am. Compl. ¶ 232.) There is no First Amendment to the New Jersey Constitution; however, Article 1, Paragraph 6 protects the freedom of speech, and the Court assumes Plaintiff asserts a claim under that section. The analysis for free speech retaliation claims under the New Jersey Constitution is identical to that for claims arising under the First Amendment, and the Court will address these claims together. See Borden v. School Dist. of Twp. of E. Brunswick, 523 F.3d 153, 168 (3d Cir. 2008).

"A public employee has a constitutional right to speak on matters of public concern without fear of retaliation." Brennan v. Norton, 350 F.3d 399, 412 (3d Cir. 2001) (quoting Baldassare v. New Jersey, 250 F.3d 188, 194 (3d Cir.2001) (citations omitted)). To state a First Amendment claim, a plaintiff must sufficiently allege (1) that he engaged in protected First Amendment activity, and (2) that the protected activity was a "substantial factor" in the alleged retaliatory action. Hill v. Borough of Kutztown, 455 F.3d 225, 241 (3d Cir. 2006); Phyllis Hill v. City of Scranton, 411 F.3d 118, 125 (3d Cir. 2005). The employer may rebut this claim by demonstrating that it would have reached the same decision even in the absence of protected conduct. Brennan, 350 F.3d at 414. Determining whether a public employee's speech is a matter of public concern is a question of law for the court. Id. at 413.

A public employee's statement is protected activity when (1) in making it, the employee spoke as a citizen rather than pursuant to his official duties, (2) the statement involved a matter of public concern, and (3) the government employer did not have "an adequate justification for treating the employee differently from any other member of the general public" as a result of the statement he made. Garcetti v. Ceballos, 547 U.S. 410, 418 (2006); Kimmett v. Corbett, 554 Fed. App'x 106, 112 (3d

Cir. 2014). A public employee does not speak "as a citizen" when he makes a statement "pursuant to [his] official duties." Garcetti, 547 U.S. at 1960. "Whether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement." Rankin v. McPherson, 483 U.S. 378, 384 (1987) (quoting Connick v. Myers, 461 U.S. 138, 147-148 (1983)).

Plaintiff has alleged enough facts to show that he engaged in protected speech. He states that he filed a legal complaint in New Jersey Superior Court in or around April 2010, which alleged "serious misconduct by Defendants." (Am. Compl. ¶ 182.) In addition, he states that since the lawsuit, he has "testified truthfully under oath" regarding certain Defendants' illegal conduct. (Am. Compl. ¶ 184.) In combination with the facts pled in an earlier section, it is apparent that Plaintiff's lawsuit and testimony sought to bring attention to Defendants' alleged violation of the Attorney General Guidelines and other regulations with respect to administrative investigations and discipline. Speech that "bring[s] to light actual or potential wrongdoing or breach of public trust" is a matter of public concern. Connick v. Myers, 461 U.S. 138, 148 (1983). Moreover, a public employee's "truthful testimony, even if voluntary, is inherently a matter of public concern protected by the First

19

Amendment." <u>Green v. Philadelphia Hous. Auth.</u>, 105 F.3d 882, 886 (3d Cir. 1997). Plaintiff's lawsuit and testimony relate to a matter of public concern and thus constitute protected speech. <u>Kimmett</u>, 554 Fed. App'x at 114 (holding that plaintiff's lawsuit "concerning allegations of actual or potential wrongdoing" in the Office of the Attorney General related to matter of public concern and was protected speech); <u>Czurlanis v. Albanese</u>, 721 F.2d 98, 104 (3d Cir. 1983) (holding that allegations of "inefficient, wasteful, and possibly fraudulent" government practices were matters of public concern); <u>McCullough v. City of Atlantic City</u>, 137 F. Supp. 2d 557, 568 (D.N.J. 2001) (holding that plaintiff's testimonies regarding alleged OSHA violations and lack of police resources is a matter of public concern because "they implicate the judicial and public interest in the integrity of the truth seeking process and the effective administration of justice.").

Plaintiff has also sufficiently pleaded that he was subject to retaliation. Plaintiff states that he was the most senior Lieutenant at the County Police Department and that more junior officers who had fewer years in the service were inexplicably promoted over him. (Compl. ¶ 213; 225.) He states that Thomson and others knew about his lawsuit because he was forced to disclose it when he was hired by the County in 2013. (Compl. ¶

20

242.) Plaintiff alleges that he believes he was "skipped for promotion" because he filed a lawsuit and spoke out against the unlawful practices. Plaintiff also alleges that Defendants were motivated to take action against him. For example, Plaintiff alleges that the decisions to hire and promote in the County Police Department were made by Thomson, Lynch, and Cuevas, the same people against whom Plaintiff had filed suit. (Compl. ¶ 213.) Plaintiff also alleges that there were several previous incidents at the City Police Department where Thomson, Cuevas, or Lynch retaliated against Plaintiff for complaining about Internal Affairs practices.[8]

Accordingly, Counts Thirteen and Fifteen state a plausible claim for relief against the County Defendants.

**b. Counts 11 & 12: Plaintiff's Amended Complaint states a plausible claim for relief against the County Defendants for race discrimination.**

Counts Eleven and Twelve allege that County Defendants discriminated against Plaintiff on the basis of race when they failed to promote him, in violation of 42 U.S.C. § 1983 and the New Jersey Law Against Discrimination. Plaintiff's race

---

[8] Although Plaintiff's lawsuit was brought in 2010, three years before he was up for a promotion at the County Police Department, the lack of "close temporal proximity" between the protected activity and the adverse action "is not legally conclusive proof against retaliation." Robinson v. Se. Pa. Transp. Auth., 982 F. 2d 892, 894 (3d Cir. 1993); Lee v. City of Philadelphia, at *3 (E.D. Pa. Feb. 26, 2014).

discrimination claim appears to be based on the sole fact that certain unidentified Caucasian officers lower in rank to him were promoted while he was not. He does not allege additional facts which would raise an inference of race discrimination.

As an initial matter, the Court notes that at the pleading stage, the plaintiff need not be held to the precise requirements of a prima face case of employment discrimination. Swierkiewicz v. Sorema N.A., 534 U.S. 506, 514 (2002); Krieger v. Fadely, 211 F.3d 134, 136 (D.C. Cir. 2000) (complaints "'need not plead law or match facts to every element of a legal theory'" (quoting Bennett v. Schmidt, 153 F.3d 516, 518 (7th Cir. 1998))). Rather, a plaintiff need only present "enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element[s]" of a cause of action. Phillips v. Cnty. of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008).

Plaintiff alleges (1) that he is African American; (2) that he was not given a promotion; and (3) that Caucasian individuals who were less qualified than he was and who had spent fewer years in service were promoted over him at the County Police Department. These allegations, although not rich with detail as the Court may prefer, are sufficient to state a claim of race discrimination. See Fowler, 578 F.3d at 211 (holding that

22

plaintiff stated a claim for relief after under *Twombly* and *Iqbal* when she alleged that she suffered a disability, her job was terminated and she did not get a similar position to which she applied, and she believed that her employer's actions were based on her disability); Sparrow v. United Air Lines, Inc., 216 F.3d 1111, 1114 (D.C. Cir. 2000) (reversing dismissal of race discrimination claim even though plaintiff alleged only that a similarly situated male Caucasian employee would not have experienced disparate treatment).

Defendants argue that there is no evidence Plaintiff even applied for a promotion. At this juncture, however, the Court must treat the complaint's factual allegations as true, and must grant plaintiff the benefit of all inferences that can be derived from the facts alleged. Plaintiff has stated that he was "skipped" over for a promotion despite his seniority. It is therefore reasonable to infer from the allegations that Plaintiff was up for a promotion and did not receive it. Although Plaintiff's complaint does not supply much factual basis for his failure to promote claim, it need only set forth sufficient facts to support a plausible claim. See Twombly, 550 U.S. at 556 ("[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts alleged is improbable and that a recovery is very remote and unlikely."

23

(internal quotations omitted)). The Court will allow Counts
Eleven and Twelve to proceed.[9]

> **c. Counts Ten and Fourteen of Plaintiff's Amended Complaint do not state a claim for relief under § 1983.**

Counts Ten and Fourteen against County Defendants fail to
state a claim upon which relief may be granted. Both Counts
assert a claim under 42 U.S.C. § 1983 for the Defendants' hiring
and promotion practice. Count Ten states that Plaintiff
"suffered damages" as a result of the individual Defendants'
custom and practice of violating the "laws, rules, and statutes
of the State of New Jersey in particular the Civil Service and
Civil Service Pilot Program." (Compl. ¶¶ 201-09.) It also
alleges that the County of Camden knew of the improper behavior
and "acquiesced" in it. (Compl. ¶ 207.) Count Fourteen likewise
states that the County of Camden "acquiesced" in Defendant's
"improper acts" and the unlawful custom and practice, and that
Plaintiff "suffered damages" as a result. (Compl. ¶¶ 236-39.)
Neither Count states a claim upon which relief may be granted.

---

[9] The Court holds only that Counts 11 & 12 contain a plausible
basis for a claim of failure to promote on grounds of race under
42 U.S.C. § 1983 and the NJLAD, by indulging in the inference
that Plaintiff is alleging that he applied for such promotions
and was qualified for them. If in fact he did not apply, then
such claims of failure to promote cannot be proved and
Plaintiff's counsel is invited to voluntarily dismiss these
claims.

With respect to Count Ten, Plaintiff alleges only that the individual Defendants created a "practice and custom" that violated New Jersey law, and that the County of Camden was aware of and acquiesced in those practices. Plaintiff's claim appears to be premised on Defendants' violation of state law and as such, does not state a claim for relief under 42 U.S.C. § 1983. The "plain language of section 1983 . . . solely supports causes of action based upon violations . . . of federal statutory law or constitutional rights. Section 1983 does not provide a cause of action for violation of state statutes." Benn v. Univ. Health Sys. Inc., 371 F.3d 165, 174 (3d Cir. 2004) (Alito, J.) (quoting Brown v. Grabowski, 922 F.2d 1097, 1113 (3d Cir. 1990). For the same reason, Count Fourteen's allegation that the County acquiesced in a "custom and practice" which violated state law does not state a claim for relief under § 1983.

To the extent Count Fourteen may be interpreted as a supervisory liability claim against the County for acquiescing in violations of Plaintiff's First Amendment and due process rights, it appears to be no different from Plaintiff's claim against the County in Counts Eleven and Fifteen. Count Eleven, Plaintiff's § 1983 race discrimination claim, specifically alleges that the County "acquiesced and/or ratified the behavior of Thomson and the other individually named Defendants." (Am.

25

Compl. ¶ 215.) Count Fifteen, Plaintiff's § 1983 First Amendment claim, alleges that the County "knew of, acquiesced in and/or ratified the behavior of the individually named Defendants." (Am. Compl. ¶ 252.)

The Court will therefore dismiss Counts Ten and Fourteen for failure to state a claim upon which relief may be granted. Count Fourteen will alternatively be dismissed for being duplicative of Counts Eleven and Fifteen.

### d. Count Five does not state a claim for relief under § 1983.

Count Five asserts a claim of "Discrimination – LAD" against all Defendants for participating in "discrimination and/or retaliation against Plaintiff." (Am. Compl. ¶ 150.) Plaintiff asserts broadly that "Thomson, Cuevas, Lynch and/or Vega utilized Defendants Williams and/or Wysocki to intimidate, threaten and retaliated against Plaintiff." (Am. Compl. ¶ 148.) He also states that Thomson "was made aware of the harassment, discrimination and retaliation against Plaintiff Carmichael" and "participated in, and/or affirmed and/or ratified the acts of the other individually named Defendants. (Am. Compl. ¶ 153.)

The Court agrees with Defendants that Count Five fails to put County Defendants on notice of the claims against them. First, the Count does not distinguish between the individual Defendants' conduct as City employees and their later conduct as

26

employees of the County. Instead, it "lumps all of the defendants together and accuses every defendant" of committing the same harm. Pietrangelo v. NUI Corp., 2005 WL 1703200, at *10 (D.N.J. July 20, 2005). Without distinguishing between allegations against Defendants as City employees and those against Defendants as County employees, it is impossible to identify which claims are against which defendant and when the claims arose. In addition, the Count does not state the purported basis of discrimination against Plaintiff, which is an essential element of a claim of retaliation and a discrimination. The allegations in this Count therefore fail to state a claim for relief. Dismissal is further warranted because the Count states that Defendants "discriminated," "retaliated," and "harassed" Plaintiff, but does not elaborate on the specific acts of discrimination or retaliation that occurred. Such allegations are merely conclusory and do not set out the "sufficient factual matter" for a facially plausible claim. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (stating that a court is not bound to accept as true a legal conclusion couched as a factual allegation (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)).[10]

---

[10] To the extent Count Five asserts a claim of retaliation for protected speech or race discrimination, it appears to be duplicative of Counts Two (retaliation under the NJLAD), Three

The Court will therefore dismiss Count Five.

**IV. CONCLUSION**

For the foregoing reasons, the Court will grant Plaintiff's motion to amend with respect to Counts Eight, Nine, Eleven, Twelve, Thirteen, Fifteen, and Sixteen. Counts Five, Ten, and Fourteen will be dismissed. Defendants' motions to dismiss will be denied without prejudice as moot. The accompanying Order will be entered.


**March 6, 2015**                                **s/ Jerome B. Simandle**
Date                                                     JEROME B. SIMANDLE
                                                              Chief U.S. District Judge

---

(retaliation under the NJLAD), and Twelve (discrimination under the NJLAD).