UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY


```
JOHN SOSINAVAGE,                )   14-CV-3292-JBS-AMD
                                )
               Plaintiff,       )
                                )
       vs.                      )
                                )
                                )
POLICE CHIEF JOHN SCOTT         )
THOMSON, et al,                 )
                                )
               Defendants.      )
-------------------------------)
ANTHONY CARMICHAEL,             )   14-CV-3323-JBS-AMD
                                )
               Plaintiff,       )
                                )
       vs.                      )
                                )
POLICE CHIEF JOHN SCOTT         )
THOMSON, et al,                 )   Camden, NJ
                                )   April 7, 2017
               Defendants.      )   11:05 p.m.
-------------------------------)
```


TRANSCRIPT OF TELEPHONE CONFERENCE
BEFORE THE HONORABLE ANN MARIE DONIO
UNITED STATES MAGISTRATE JUDGE


APPEARANCES:

For the Plaintiffs:        CHERYL L. COOPER, ESQUIRE
                           LAW OFFICES OF CHERYL L. COOPER
                           322 Egg Harbor Road
                           Suite A-1
                           Sewell, New Jersey  08080

                           PAUL D. BRANDES, ESQUIRE
                           VILLARI BRANDES & GIANNONE, PC
                           8 Tower Bridge
                           161 Washington Street
                           Suite 400
                           Conshohocken, Pennsylvania  19428

For the County             BENJAMIN S. TERIS, ESQUIRE
Defendants:                BROWN & CONNERY, LLC
                           360 Haddon Avenue
                           Westmont, New Jersey  08096

APPEARANCES: Continued

For the City            DANIEL RYBECK, ESQUIRE
Defendants:             WEIR & PARTNERS, LLP
                        215 Fries Mill Road
                        Second Floor
                        Turnersville, New Jersey  08012




Audio Operator:         SUSAN BUSH




Transcribed by:         DIANA DOMAN TRANSCRIBING, LLC
                        P.O. Box 129
                        Gibbsboro, New Jersey  08026
                        Office:  (856) 435-7172
                        Fax:     (856) 435-7124
                        E-mail:  dianadoman@comcast.net


Proceedings recorded by electronic sound recording, transcript
produced by transcription service.

1

2                                    I N D E X

3

4      COLLOQUY:                                                    PAGE

5        Ref: Document Production                                     5

6        Ref: Bates Stamp numbering                                  11

7        Ref: Redactions                                             21

8        Ref: Monell Issue                                           24

9        Ref: Depositions                                            28

10       Ref: Damage Claim                                           33

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

                              Colloquy                                    4

1                (The following was heard via telephone at 11:05

2        a.m.)

3                THE COURT:  All right.  We are on the record in two

4        cases, document case number 14-3323 and 14-3292, for yet

5        another dispute.  We'll start by having the parties place

6        their appearances on the record.

7                MS. COOPER:  Yes.  Good morning, Your Honor.  Cheryl

8        Cooper on behalf of the plaintiffs.

9                MR. BRANDES:  Good morning, Your Honor.  Paul

10       Brandes on behalf of the plaintiffs in the case against the

11       City.

12               MR. RYBECK:  Good morning, Your Honor.  Daniel

13       Rybeck on behalf of the City of Camden defendants.

14               MR. TERIS:  Good morning, Your Honor.  Benjamin

15       Teris on behalf of the Camden County defendants.

16               THE COURT:  Okay.  Here is what I'm going to do.  I

17       am going to ask that you sit here now and go through the

18       exhibits that have been sent to the Court by Ms. Cooper and

19       see if there can reach any agreement on this production issue,

20       because I am at a loss as to why we constantly are having

21       discovery disputes in this case.

22               And, before I do that, does the defense have any

23       response?  I think -- I've seen Ms. Cooper's many letters to

24       the Court with attachments, but what is generally, Mr. Rybeck,

25       the defense to the production here?

Colloquy                                                                        5

1           MR. RYBECK:  With the white cards, Your Honor, they

2      weren't updated by the City.  There is a log that has all the

3      discipline.  They have an index card for reference purposes.

4      They simply never updated them.  That's it.

5           THE COURT:  So you've produced the full and complete

6      cards, is that what you're saying?

7           MR. RYBECK:  Sure.  I actually saw the cards

8      themselves, they didn't put the newest -- all this -- the most

9      recent cases on before the City Police Department expanded.

10     They are just not in the cards.  They never updated.  That's

11     it.

12          THE COURT:  Ms. Cooper, if that is the

13     representation to the Court, what is it that you would be

14     looking for me to order?

15          MS. COOPER:  Well, Your Honor, number one, I would

16     like to see the originals because at his deposition Deputy

17     Chief Wysocki testified exactly the opposite.  He said that

18     they continued to use the white cards and stopped using the

19     computer system.

20          In the demand we have a partial production where my

21     client's computer version is not here, it's not updated.  This

22     is the old one.  And, then the card is not updated either.

23     There are cases that my client was disciplined for that we

24     have documents to show that he was disciplined for that are

25     not on this card or the white card, so that's why it is

Colloquy                                                        6

1    important.

2              THE COURT:  Mr. Rybeck?

3              MR. RYBECK:  Judge, they never updated the cards.

4    Ms. Cooper has a list of all the cases her client was

5    disciplined for.  We all know the cases.  The white cards are

6    just for reference so I don't really see -- the City admits

7    they didn't admit -- they didn't update the cards.  Deputy

8    Chief Wysocki testified in his deposition that towards the end

9    they weren't updating the cards actually.

10             THE COURT:  Where are the cards now?

11             MR. RYBECK:  They are at the Camden County Police

12   Department.

13             THE COURT:  Is there any reason why Ms. Cooper can't

14   go there and look at the cards?

15             MR. RYBECK:  The original white card?

16             THE COURT:  Yes.  Not take them with her but go look

17   at them?

18             MR. RYBECK:  Nope.  Nope.

19             THE COURT:  All right.  You are granted leave Ms.

20   Cooper to go to, you know, the next two weeks, right, make a

21   date and time to observe the cards.  All right?

22             MS. COOPER:  Yes, Your Honor.  And, on that issue, I

23   would like the opportunity to compare the computerized version

24   of the white cards, which we all call the Internal Affairs

25   index card.  They literally were three-by-five index cards

Colloquy                                                            7

1    back in the old days.  They ended up changing it to be part of

2    the Internal Affairs computerized system, which looks like

3    this.  And, I also attached one to the submission that I

4    provided to the Court yesterday where you'll see on defendant

5    Cuevas', on the third page, there is a list of all of the

6    infractions.

7              THE COURT:  Well, my question to you is, don't you

8    have the computerized version?

9              MS. COOPER:  No, not for up -- not in either one.

10   They're like, they produced one part of it and not the other.

11   Nothing matches.

12             THE COURT:  I guess I just have the hardest time

13   following your position.  You say you haven't gotten updated

14   cards.  The City says they aren't updated, we gave you copies

15   of what -- how they exist.  Correct?

16             MR. RYBECK:  Correct.

17             THE COURT:  You have copies of what they gave you.

18             MS. COOPER:  I do, Your Honor, but the problem is

19   that what Mr. Rybeck just represented to the Court is

20   completely opposite of what Deputy Chief Wysocki testified.

21             THE COURT:  No, I understand that, so -- but you

22   have --

23             MR. RYBECK:  That's not what --

24             THE COURT:  I mean, I'm not making a finding of

25   that, --

1           MS. COOPER:  Sure.

2           THE COURT:  -- but my statement is you have copies

3    of what they say is the card?

4           MS. COOPER:  Yes.

5           THE COURT:  You can take your copies, you can go

6    look at the cards and make sure that they copies are accurate.

7           MS. COOPER:  Correct.

8           THE COURT:  Because you don't agree with that, you

9    say there is something wrong?

10          MS. COOPER:  Correct.

11          THE COURT:  Yes?

12          MR. RYBECK:  Judge, I would just like to ask a

13   question.  What is the importance of these cards?  They are

14   for references.  We know the cases, we have the case numbers,

15   I don't get the issue with these cards.  They are just for

16   reference purposes.  What is the point of this?

17          MS. COOPER:  That is not correct, Your Honor.  In

18   the Attorney General Guidelines, which is what -- my clients

19   were in charge of Internal Affairs for five years.  In the

20   Attorney General Guidelines it is required that the Police

21   Department maintain a chronological list of every single

22   infraction that an officer is charged with over his career.

23   And, if you read these guidelines, it even remains in effect

24   until 25 years after they retire.  It is a very significant

25   thing.

Colloquy                                                    9

1          They do that for purposes of tracking.  If you know

2   <u>Beck versus City of Pittsburgh</u> and the other cases go along

3   that way, that is the reason why.

4          THE COURT:  But the question is, why is the -- why

5   are the cards relevant to this claim in the case?

6          MS. COOPER:  Sure.  If you read the complaint, part

7   of my clients' pattern and practice is that they, meaning the

8   City defendants, did not maintain much towards what they're

9   supposed to do in the Attorney General Guidelines, which

10  violated the consent decree that was entered here by Judge

11  Kugler and that my clients helped get ended before Judge

12  Simandle before.  And, then they began the same pattern and

13  practice of what they were doing before when the City was in

14  terrible trouble.

15         THE COURT:  Well, what -- just tie it to your claim

16  or defense.

17         MS. COOPER:  Sure.  So what happens then, when my

18  clients explain this to the Chief and say that you can't do

19  this and you can't -- you have to maintain it, you have to do

20  investigations like this, you have to have these records.

21  They then get transferred out of Internal Affairs and begin

22  this pattern of retaliation against them.  All the way up

23  until the Sosinavage case -- well, in both of their cases, but

24  in Sosinavage, in particular, even after he was no longer

25  there they were, you know, putting out negative things to

Colloquy                                              10

1    places that he applied and so forth.

2             So there are -- this is very relevant and it's all

3    part of the Monell claim.  It's also part of the clients'

4    individual claims.

5             MR. RYBECK:  I'd like to respond to that, Your

6    Honor.

7             THE COURT:  Sure, Mr. Rybeck.

8             MR. RYBECK:  This is the first time I've ever heard

9    any issue about Sosinavage or Carmichael complaining about

10   white cards not being updated.  Never once been an issue in

11   this case.

12            MS. COOPER:  That is totally incorrect.

13            MR. RYBECK:  It's not in the complaint.

14            MS. COOPER:  It says, "The pattern and practice of

15   the Internal Affairs records and procedures."  This is all

16   part of it and they testified to it at their deposition.

17            THE COURT:  All right.  Well, I'm going to permit

18   you to go to Camden City Hall --

19            MR. RYBECK:  It's a County Police Department at 800

20   Federal Street.

21            THE COURT:  -- County Police Department, look at the

22   white cards, compare it with what your printout -- what your

23   copies are of the white cards and then you'll have that.

24            What's next?

25            MR. RYBECK:  As far as the deceit -- the issue with

1    Bates numbering, Your Honor.

2              THE COURT:  Pardon me?  Can you say that again.

3              MR. RYBECK:  The issue with Bates numbering.

4              THE COURT:  Yes.

5              MR. RYBECK:  There was a State Court litigation

6    which had their own Bates numbers.

7              THE COURT:  Have you now produced everything that

8    was produced in the State litigation?

9              MR. RYBECK:  Correct, yes.

10             THE COURT:  You have.

11             MR. RYBECK:  Yes.  We re-Bates numbered everything

12   in Federal Court because the numbers started over and there's

13   different documents, so that's the issue with there being

14   different numbers.

15             THE COURT:  But when you produced the State file,

16   didn't you have a copy of the State file with the State

17   numbers on there?

18             MR. RYBECK:  Yes.

19             THE COURT:  Did you just stamp those with new

20   numbers but leave the State number on?

21             MR. RYBECK:  Yes, I believe so.

22             THE COURT:   So it has two numbers on it?

23             MS. COOPER:  No.

24             MR. RYBECK:  Well, I -- no, I'm sorry, Your Honor.

25   I believe the State numbers were not left on there, we

1     produced them with new numbers.  Because Your Honor ordered

2     that everything produced in the State Court litigation be

3     produced in this matter, previously, so we did that.  My

4     understanding is my paralegal put new numbers on them.

5               THE COURT:  Ms. Cooper, you're shaking your head but

6     I'm not sure what you're trying to say.

7               MS. COOPER:  No, he's incorrect, unfortunately.

8     And, I -- I mean I could show it to him, I can show it to the

9     Court.  What -- I tried to do that in the letter that I

10    submitted yesterday.

11              For example, they produced the -- initially, when --

12    in State Court they produced a set of documents.  We all have

13    those documents.  I had them in State Court.  Even within the

14    State Court documents there were different sets of numbering

15    that they used.  Some of them started with 0001, some of them

16    said City of Camden and the number, some of them just said

17    City and the number.  Okay?  That's just the State Court

18    matter.

19              We then come to Federal Court.  Federal Court, they

20    produced documents and it starts off with City 0001, but the

21    City 0001 does not match City 0001 from the State Court matter

22    nor does it match just 001 is what I'm trying to say.

23              THE COURT:  But what difference does it make if you

24    have the documents?

25              MS. COOPER:  Well, it's very difficult to tell -- I

Colloquy                                                    13

1    mean, honestly, Your Honor, it is a giant mess, because they

2    have one document that might have three different numbers.

3    And, they're saying they produced -- I updated everything.

4    One, I tried to give the Court an example.  It --

5              THE COURT:  But just tell me why does it matter for

6    moving forward with this litigation if you have all the

7    documents and they are now stamped with State -- with Federal

8    Bate stamp numbers?

9              MS. COOPER:  Because I can't tell if they're really

10   updated documents or not, Your Honor.  It's extremely

11   confusing.  If you look -- the one --

12             THE COURT:  I am just trying to understand why it's

13   a problem.  They gave you -- they are representing as officers

14   of the Court, if they are wrong, they are subject to

15   sanctions, --

16             MS. COOPER:  Uh-huh.

17             MR. RYBECK:  Correct.

18             THE COURT:   -- that they have given you everything

19   that was in State Court.  They just gave it to you and they

20   restamped them new.  Is that what you're saying Mr. Rybeck?

21             MR. RYBECK:  That's my understanding, Your Honor.

22             THE COURT:  How many documents did you send over?

23             MR. RYBECK:  From the State Court litigation?

24             THE COURT:  Yes.

25             MR. RYBECK:  It's in the thousands.

Colloquy                                        14

1          THE COURT:  And, what are the documents stamped.

2    What are the numbers?  What is the Bate range number?

3          MR. RYBECK:  The new Bates range number?

4          THE COURT:  Yes.

5          MR. RYBECK:  I believe it's in the four thousands.

6          THE COURT:  No, what -- does it start from zero one

7    and go straight through?

8          MR. RYBECK:  No, it's a continuation from the

9    Federal -- from doc -- we produced documents in this -- we

10   just kept on numbering them from what --

11         THE COURT:  So give me the numbers because you

12   really -- I'm just --

13         MR. RYBECK:  I'll explain -- again clarify.  So we

14   produced discover -- Rule 26 disclosures in this matter.

15         THE COURT:  And, how did you stamp them?

16         MR. RYBECK:  City -- I believe it's City.  I don't

17   recall, but starting with one.

18         THE COURT:  Okay.

19         MR. RYBECK:  When Your Honor ordered to produce --

20         THE COURT:  Just recently.

21         MR. RYBECK:  -- reproduce the State Court we kept

22   the numbers going.  So whatever the last document number was,

23   4,000, for example, the State Court when we produced them we

24   put new numbers on those.

25         THE COURT:  So 4,000 to what?  Do you have an index

Colloquy                                          15

1    of them or --

2            MR. RYBECK:  I don't have that with me, Your Honor.

3    The -- it's boxes and boxes of documents, but we just kept the

4    numbering going.

5            THE COURT:  You just got a copy, stamped it and sent

6    them over?

7            MR. RYBECK:  Correct.

8            THE COURT:  Okay.  Now what is the problem Ms.

9    Cooper?

10           MS. COOPER:  That is not correct.

11           THE COURT:  What do you mean?  They didn't stamp

12   them and send them over?

13           MS. COOPER:  They did not -- they did not number

14   them from the Federal Court case and that --

15           THE COURT:  What do you mean, you don't have

16   documents numbered?  You have documents that aren't numbered?

17           MS. COOPER:  I have documents that have the State

18   Court number on them.  The documents that they just produced

19   are not -- I believe I have the index here, it is not the same

20   at all.  They are not -- and they are not fully updated.  If

21   that was the case you would have -- if there was 3,000

22   documents produced in State Court, you would then have 6,000

23   because of Federal Court, but that is not what the case is and

24   they haven't done that.

25           THE COURT:  How is the Court supposed to resolve

Colloquy                                          16

1    this issue?  I'm just flabbergasted that I have this issue.

2    One party says, I gave you everything, the other party says,

3    no you didn't.  How am I supposed to figure that out?

4              MS. COOPER:  Well, Your Honor, I agree.  And, I sat

5    there this other past weekend, more than 30 hours, trying to

6    go through the documents and trying to give you examples in a

7    letter.  These are just examples, they're not even the whole

8    thing.

9              For example, they have a list of the documents that

10   they produced in State Court and that here -- I have a list of

11   that here.  This is a list that was prepared by Mr. Rybeck's

12   office and it was the one that they gave me on, I believe, the

13   28th -- no, the 28th of March when I was there for a

14   deposition.  And, this shows that the documents that they gave

15   at that time went up to 2339.  Then you'll see that they said

16   the produced additional documents that weren't numbered in the

17   City case.

18             Then they give you an updated -- this is a list

19   right here of the documents that they produced that they say

20   are updated.  And, it starts at number 4445 and then goes up

21   to 6421.  So that is not the same number of pages, number one,

22   and number two, it is not the same documents that are on this

23   list.

24             If you -- if it is confusing for Your Honor, it's

25   been a nightmare for me.  I mean, and then they produce

Colloquy                                    17

1      documents that literally look like this with no privilege log.

2                    THE COURT:  Mr. Rybeck, do you have any response?

3                    MR. RYBECK:  If Your Honor wants, I can re -- I can

4      start all over again, just give Bates number from one, and for

5      every document produced in this case, and just -- (sorry, I

6      apologize for hitting the microphone) -- and just renumber

7      everything.  That's the only solution I could have.

8                    MS. COOPER:  It's far worse than that, Judge.  If

9      you look --

10                   MR. RYBECK:  And, to address the other issue with

11     number five to Ms. Cooper's exhibit, the City had a private

12     investigator investigate an allegation by plaintiff Sosinavage

13     against Inspector Cuevas regarding stealing time.  Ms. Cowan,

14     (phonetic) the private investigator, gave me her file.  It

15     wasn't in order.  I didn't change the original at all.  I

16     copied it as it was provided to me and pages were out of

17     order.  So I gave it to Ms. Cooper as was produced by the

18     private investigator.  That's her original file.  If pages are

19     out of order, that was the private investigator's file.  I

20     wasn't going to mess with the documents and rearrange them or

21     do anything to alter them.  So I gave her the exact way that

22     they were organized.

23                   THE COURT:  Okay.  Where are all the documents?

24                   MR. RYBECK:  Ms. Cowan's file?

25                   THE COURT:  Yes.  All the documents that you

Colloquy                                        18

1    produced.  When you say, I could just go restamp them.  Are

2    they at your office?

3            MR. RYBECK:  From my office, yes.

4            THE COURT:  Why don't you go to his office, pull out

5    the boxes, you spend an afternoon and you get this issue

6    sorted out.  Wouldn't that be the best way to handle it?  Go

7    through document by document, I have that one, I have that

8    one, I have that one, this one I don't have.

9            MS. COOPER:  It's a huge amount -- I mean there's --

10           THE COURT:  Well, I don't know how else you want me

11   to resolve the issue.  I mean, I'm certainly not going to go

12   look at 300 or 4,000 documents.  So I don't -- if you have

13   another suggestion, I'm happy to hear it.  Do you want Mr.

14   Rybeck to just restamp them?

15           MR. RYBECK:  Judge, I'll re-Bates number everything.

16           MS. COOPER:  All right, Your Honor.  Mr. Brandes and

17   I will go over there.

18           THE COURT:  Unless you want Mr. Rybeck to just

19   restamp every document.

20           MS. COOPER:  Unfortunately, Judge, they are not even

21   reproducing the same thing, so I would rather just go there

22   and take the originals and look at it myself.  I wish I could,

23   you know, in Exhibit 5, they also left out like all these

24   other reports that have to go with it.

25           THE COURT:  Well, maybe the inspector didn't have

1    those reports.  That's what I'm trying to say.

2              MR. RYBECK:  That is correct, Your Honor.  It's

3    reports from the Prosecutor's Office that Ms. Cowan was not

4    privy to.

5              MS. COOPER:  Well, if she wasn't privy to them, then

6    how could she make a recommendation?  Then I need to take her

7    deposition too.

8              THE COURT:  Well, that would be -- that would be

9    basis for you to impeach her.

10             MS. COOPER:  Uh-huh.  But I --

11             THE COURT:  I mean, if that's the representation.

12   But you have them separated by a file, right?

13             MR. RYBECK:  Correct.

14             THE COURT:  So you could just give Ms. Cooper the

15   file and you'll be representing this is the file as I received

16   it from the investigator.

17             MR. RYBECK:  Exactly.

18             THE COURT:  You'll look at the file and right then

19   and there say, oh, I have this, I have this, I don't have this

20   one.  I'm not sure if there's any easier way to do that.  And,

21   I think if Mr. Rybeck just restamps it, you'll have the same

22   issues that you're not getting -- you believe you're not

23   getting certain documents, right?

24             MR. RYBECK:  Judge, I can restamp them and delineate

25   the case number, the document number.  I'll even give an

Colloquy                                    20

1    index, I'll name every document.  And, I think that is the

2    easiest way.  I'll rename every document.  I'll re-Bates

3    number everything and I'll put an index what the document is.

4    I'll put the date, everything.

5                MS. COOPER:  That's what was already ordered, Judge,

6    and I'm still in the same place that I was before.  I mean, I

7    was a paralegal long before I was a lawyer and I can tell you

8    I produced millions of documents in environmental litigation

9    and I never had a problem like this.  This is ridiculous.

10                THE COURT:  So what about Mr. Rybeck's statement

11   right now on the record that, you know what, he'll just go

12   back, produce a clean index with a cross-reference of the

13   numbers and every document?

14                MS. COOPER:  I'm willing to look at that.

15                THE COURT:  Mr. Rybeck?

16                MR. RYBECK:  No problem with that, Judge.

17                THE COURT:  All right.  Let's do it that way then.

18   Then you don't have to go to the office.  How long will it

19   take you to get your index together?

20                MR. RYBECK:  Uh --

21                THE COURT:  And, to show the document, this was

22   previously produced, here's the State number, here's our new

23   Federal number?

24                MR. RYBECK:  I -- my paralegal -- it's going to take

25   quite sometime.  Two weeks, will that be sufficient?

Colloquy                                                        21

1          THE COURT:  Is that acceptable?

2          MS. COOPER:  I think so, Judge, because in fairness

3    to them I mean it is approximately 8,000 or more pages.

4          THE COURT:  All right.  One more production, two

5    weeks.  What's next then?  That takes care of the documents,

6    that takes care of the white cards.  What else do we have?

7          MS. COOPER:  The redactions.

8          THE COURT:  What about your redactions?  Did you

9    give a privilege log on redactions?

10         MR. RYBECK:  The redactions for the State Court

11   litigation, if I redacted a personal identifier, I don't

12   believe we produced a privilege log saying personal

13   identifier.  We just said, we're redacting personal

14   identifiers.

15         MS. COOPER:  Judge, it's worse than that.  In the

16   production that they just produced that said it was the

17   updates to the Rule 26 disclosures, they said -- there's

18   things that are just pulled out.  There's a number and it

19   says, "attorney/client privilege".  That is not sufficient

20   under the Federal Rules of Civil Procedure.  And, you know,

21   you have to put a description of the document, you have to put

22   the date of the document, you have to put what the document

23   was and what was privileged.

24         You can't just say, "attorney/client privilege" and

25   yank out a document.  That's what they've done.

1                MR. RYBECK:  That was five pages, Your Honor.  I'll

2    delineate those.

3                THE COURT:  All right.  Mr. Rybeck, --

4                MR. RYBECK:  It's a letter from the counsel for the

5    City at the time.

6                THE COURT:  Well, you have to say what it is.  So --

7                MR. RYBECK:  My paralegal, I -- we talked about that

8    this morning.

9                THE COURT:  All right.  So you'll produce it in the

10   next two weeks --

11               MR. RYBECK:  I can produce it tomorrow, one day.

12               THE COURT:  No, it's just -- in two weeks --

13               MR. RYBECK:  Okay.

14               THE COURT:  -- you produce all the documents again

15   with your index and --

16               MR. RYBECK:  And, the privilege log.

17               THE COURT:  -- privilege log.  Privilege log

18   consistent with Rule 26.

19               MR. RYBECK:  Certainly.

20               THE COURT:  Okay.  Anything else?

21               MS. COOPER:  Just, Judge, when I make the

22   appointment to go view the index cards over at the Camden

23   County Metro Police Department, I would like to be able to

24   compare the index cards with the computer index of the same

25   A.I. files.   In other words, it's not every single person in

Colloquy                                   23

1    the whole wide world.  And, my demand was never that.  It was

2    only my clients and the named defendants.  And, their index

3    card, the white card, and then their computerized record.

4    And, the same thing for my clients.

5              THE COURT:  Well, what do you mean you want to

6    compare?  Do you want to look on their computer system?

7              MS. COOPER:  Well, have them printed out for me.

8              THE COURT:  Haven't they done that already?

9              MS. COOPER:  Nope.

10             THE COURT:  Have you printed out the computer index?

11             MR. RYBECK:  That's the document she's holding in

12   her hands, Your Honor.

13             They were -- Deputy Chief Wysocki testified he took

14   over Internal Affairs.  Approximately 2010 he stopped using

15   the computerized version, which is what Ms. Cooper has, and

16   went -- just stuck with the white cards.  So if you want me to

17   print it out, I'll print it out again and she can compare

18   them.

19             THE COURT:  Do that again on the certification

20   saying, this is the computerized data for the named defendants

21   and the plaintiffs.

22             MR. RYBECK:  Certainly.

23             THE COURT:  That's what you want, right?

24             MS. COOPER:  Correct.

25             THE COURT:  You don't need to make a comparison at

1    their office.  They are going to represent to you, you're

2    going to go to their office and you're going to look at your

3    copy of the white card and the white card.  If there is no

4    difference then you are going to go back to your own office --

5              MS. COOPER:  Correct.

6              THE COURT:  -- and take your copy and compare it

7    with the recent production.

8              MS. COOPER:  Production.  I'll have them all there.

9              THE COURT:  Okay.  Put that in a certified form

10   though, Mr. Rybeck.

11             MR. RYBECK:  Certainly, Your Honor.

12             THE COURT:  That is the complete computerized form

13   of the named defendants and the --

14             MR. RYBECK:  The plaintiffs.

15             THE COURT:  -- plaintiffs.  Anything else for today?

16             MS. COOPER:  Your Honor, the Monell (phonetic)

17   discovery and the deposition of Chief Thomson.  And, then

18   being able to recall the City defendants, you know, for --

19   with the deposition where they answered I don't know and I

20   don't remember about 90 times during the deposition.  Yet they

21   remember certain things but not other things.

22             THE COURT:  What do you mean by the Monell

23   discovery?  What is outstanding?

24             MS. COOPER:  Well, I put that in a letter to the

25   Court and I also did a demand to Mr. Rybeck for the 2008

 1    through 2012 Internal Affairs files but it's not every single

 2    file.

 3              In 2008 there were 347 Internal Affairs cases.  I

 4    think we designated 98.  In 2009 there were over 500 and I

 5    think I designated like 144 of them that need to be reviewed

 6    so that I can get them to my expert.  We need to review them,

 7    we need to get copies of them.  And, then for the other two

 8    years we need to just review them and be able to -- and I

 9    offered to, you know, go there with clerks and scanners and

10    just scan it while I'm there and, you know, be done in two

11    days.

12              MR. RYBECK:  I strongly object to that Your Honor.

13    We're in 2017.  This is the first time Ms. Cooper has ever

14    requested all the Internal Affairs files in this case.  She's

15    never served discovery.  She's -- the plaintiff sat in this

16    case for years.  Now they want to prove their Monell claim and

17    go through thousands of files or hundreds of files.  I

18    strongly object.  I would like to brief that issue before Your

19    Honor.

20              MS. COOPER:  Your Honor, that is absolutely a

21    misrepresentation.  And, luckily for me, I finally got the

22    recording from State Court where they -- from September of

23    2012 where this was the very same issue that I was dealing

24    with going all the way back.  So I'll be able to produce the

25    recording for the Court.  You can listen to it for yourself.

 1    This is not the first time this has come up and they were

 2    ordered --

 3              THE COURT:  But was --

 4              MR. RYBECK:  I said in Federal Court, Your Honor.

 5              THE COURT:  -- did you make a request in Federal

 6    Court consistent with the Federal Rules for this type of

 7    discovery?

 8              MS. COOPER:  I didn't until I got the logs.  Once I

 9    got the logs, which wasn't until March when Your Honor ordered

10    them to turn them over, which I had been saying from the

11    beginning that they didn't do, I then, within two weeks,

12    designated these files.

13              MR. RYBECK:  Your Honor, that's the problem.  Ms.

14    Cooper has been saying at conferences since 2013, I don't have

15    these documents.  Every time I say, put it in writing.  It

16    hasn't happened until this year.

17              THE COURT:  Their --

18              MR. RYBECK:  The plaintiffs have sat in this case in

19    discovery.  And, as far as the representation that my clients

20    said they don't remember things from 2008, that's certainly

21    true, because it's been nine years.  And, they could have been

22    deposed three years ago but the plaintiffs never served one

23    discovery request in this matter, Your Honor.   Never once.

24              MS. COOPER:  These documents have nothing at all to

25    do with that.  If they would have not -- if they would have

1    turned them over in Rule 26 like they were obligated to do and

2    updated them --

3              THE COURT:  Well, I'm not sure they're obligated to

4    turn over every I.A. file.

5              MS. COOPER:  I didn't ask for every I.A. file.  I --

6    even the logs they didn't turn over.  If I would have just had

7    the logs I could have done something.

8              THE COURT:  Okay.  So make your motion to compel

9    consistent with Rule 26 and Rule 37 and the defendants can

10   oppose it on timeliness grounds and if there is any other

11   objection.  And, I will address it in writing.  That motion

12   needs to be filed by a -- I don't know, a week from today.  We

13   need to get this case moved.

14             MS. COOPER:  Just one other last thing.  On the

15   Internal Affairs logs and/or files, I put in my documents and

16   my client has testified under oath that he was disciplined

17   twice in 2012 and once in 2013.  And, we don't have the 2013

18   log, which is only four months more of information.  It

19   doesn't show on his card which all goes to the claims that are

20   in the complaint.  And, so I would like the opportunity to

21   review the log for 2013 to see if his file is on there to make

22   sure that that again goes directly to whether or not they're

23   updating records as they're supposed to and keeping an

24   accurate record.

25             In addition to that, I had previously demanded and

1    they had turned over some but not all of the recordings, which

2    is also contained in the September 12th recording from State

3    Court where my clients were actually recorded in these

4    statements and they still have not been turned over.  So that

5    has been an ongoing process.

6              And, in the recording of September 12th there's a

7    date of August 13th, I believe of 2012.  So once I listen to

8    that recording again, I will be able to provide the date of

9    that.  But in addition, this one here is January 27th of 2013

10   where my client receives discipline.  And, the case number is

11   13-0112.  So, again, I need that in order to either document

12   that he -- the card is not properly -- the records are not

13   properly kept or they are.  I mean, it's one or the other.

14             MR. RYBECK:  So just for clarification, she just

15   wants the log for 2013?  I'll produce that.

16             THE COURT:  Okay.  Produce that within the next two

17   weeks as well.

18             MR. RYBECK:  Certainly.

19             THE COURT:  Okay.  What else Ms. Cooper?

20             MS. COOPER:  The depositions.

21             THE COURT:  Well, I --

22             MS. COOPER:  Chief Thomson they never -- wouldn't

23   reschedule that.  And, when --

24             THE COURT:  Well, we're not going to have any

25   depositions scheduled until you get this new set of documents.

Colloquy                                                29

1           MS. COOPER:  I agree.

2           THE COURT:  Then you make your motion to extend time

3    for discovery.

4           MS. COOPER:  Sure.

5           THE COURT:  And, if you want to redepose someone,

6    you're going to have to demonstrate why there is a basis.

7           MS. COOPER:  Sure.

8           THE COURT:  I don't know if the answer, I don't

9    know, is a good faith basis to seek an additional discovery.

10   If the person doesn't remember they don't remember.  If you

11   believe that there is a basis to redepose someone, you can

12   make your application and we'll address it by formal motion.

13          MS. COOPER:  There was al -- okay.  And, I guess,

14   Your Honor, on that issue, at the deposition of Cuevas he

15   refused to answer questions that are directly related to one

16   of the claims that are in my clients' complaint and this was

17   the subject of another litigation where he testified, where

18   the documents were produced in that case.  And so I'm -- I

19   guess, do you want me to include that in the motion so I can

20   explain it more -- brief more certainly there.

21          THE COURT:  Whatever authority you have to suggest

22   that these people should be redeposed you should include in

23   one motion.

24          MS. COOPER:  Sure.

25          THE COURT:  Mr. Rybeck, you can oppose it if you

1  believe --

2              MR. RYBECK:  I'll respond accordingly, Your Honor.

3              THE COURT:  Okay.

4              MS. COOPER:  Your Honor, just so I'm clear, the

5  ruling is that the depositions that haven't been taken are

6  being held in abeyance until you make a ruling.

7              THE COURT:  You don't even have dates for them, do

8  you?

9              MS. COOPER:  Well, I attempted that and Mr. Brandes

10  attempted it.  I was called to a Court arbitration on the

11  third, which was the date we had for Chief Thomson.  I gave

12  them an alternate date before the deadline that Your Honor

13  opposed -- I mean imposed and they refused to reschedule it.

14  And, then Mr. Brandes attempted and he said, I'll get back to

15  you and he never did.

16             MR. RYBECK:  No, that's incorrect, Your Honor.

17  Chief Thomson was scheduled for Monday.  He has a very busy

18  schedule.  Ms. Cooper represented she had a court -- she had

19  court that day so she had to cancel.  I said, fine.  They

20  proposed Chief Thomson to be deposed yesterday.  I responded,

21  he's not available.

22             Mr. Brandes then said, well, what other dates is he

23  available?  I said, I think it is more prudent to address this

24  with the Court today.  That was my response.  The

25  representation, I never responded, I sent him an email saying

Colloquy                                      31

1      it would be more prudent to address that today.

2            MR. BRANDES:   What the email said, Your Honor, was

3      that he was conferring with Chief Thomson and that he would

4      like to make -- to discuss it in more detail today.  So, what

5      I took from that was that he was looking for more dates from

6      Chief Thomson, but also didn't want to discuss it today.

7      That's what the email said.

8            MS. COOPER:   Correct.

9            THE COURT:   Well, I think it makes sense to get this

10     last round of discovery done so I don't have another motion to

11     redepose somebody.

12           MS. COOPER:   Sure.

13           THE COURT:   But I may not grant your motions.   In

14     which case, then we'll just get the depositions based on the

15     record as it exists in the documents.  But maybe I will grant

16     the motions on the -- on the motions to compel, so we'll take

17     it from there.

18           MS. COOPER:   Thank you, Judge.

19           THE COURT:   I'll have another status conference in

20     probably three or four weeks to make sure the production has

21     been done --

22           MR. RYBECK:   Certainly.

23           THE COURT:   -- and see where we are on the status of

24     the motion.  Any motions to compel, extend discovery or take

25     additional depositions shall be filed no later than -- today

Colloquy                                                32

1    is the 7th, let's say April 21st, two weeks.  File your

2    motions.

3              Okay.  And, this way I won't order any further

4    depositions until we have the basic motion done.  Does

5    everybody agree with that approach?

6              MS. COOPER:  Yes, Judge.

7              MR. RYBECK:  Yes, Your Honor.

8              MR. TERIS:  Yes, Your Honor.

9              THE COURT:  Okay.  What's the County have to say

10   about all this?

11             MR. TERIS:  The only issue is that the files are now

12   housed at the county with the multiple I.A. files.  And, it's

13   our position that we would object to somebody coming in and

14   looking at hundreds of I.A. files without somebody -- we need

15   somebody to look at them for us.  They are in our custody and

16   control at this point.

17             THE COURT:  All right.  Well, the motion to compel

18   is going to be filed and if you have an opposition or any

19   caveat to any granting of the motion you can file your

20   position paper.

21             MR. TERIS:  Yes, Your Honor.

22             THE COURT:  Okay.  Anything else for today?

23             MR. RYBECK:  Your Honor, just a point of

24   clarification on scheduling.  You had indicated just now that

25   discovery motions be filed by 4/21.  Earlier you had said with

Colloquy                                                    33

1    regard to the Monell discovery regarding the I.A. files that

2    you wanted that within a week, 4/14.

3            THE COURT:  Because of the holiday I'm going to give

4    you until the 21st.

5            MR. TERIS:  Okay.  I understand, Your Honor.  Thank

6    you.

7            THE COURT:  And, I guess I'm going to have to stay

8    the expert deadlines at this point until we are done this

9    issue.  Do you have any objection to that?

10           MR. RYBECK:  No, Your Honor.

11           MS. COOPER:  No, Judge.

12           MR. TERIS:  No, Your Honor.

13           THE COURT:  Do you have a demand in the case, Ms.

14   Cooper?  What are you looking for in this case?  Can we get

15   this case resolved?  Can you go to mediation?  What do the

16   parties think about that?

17           MR. RYBECK:  As far as the City is concerned, Your

18   Honor, the discipline was -- I think they -- I don't think

19   there was even more than 20 days of discipline against these

20   officers.  They've produced no medical evidence of any kind of

21   treatment so I don't know what the damages really are, so.

22           THE COURT:  Ms. Cooper?

23           MS. COOPER:  That's not true either, Your Honor.

24   My clients --

25           THE COURT:  Well, what are your damage claims?

1           MS. COOPER:  -- Mr. Carmichael -- I mean, Lt.

2    Carmichael was actually out on F.M.L.A. for a period of 12

3    weeks related to some of the issues here.  In addition to that

4    Lt. Carmichael filed a grievance over monies that were lost

5    and he won that through the PERC system, but the monies were

6    never paid.  So, there is quite a bit of damages here Your

7    Honor.

8           In addition to that there's overtime hours and many

9    others that -- in addition to just regular mental pain and

10   suffering damages that you get in a CEPA claim or an

11   employment claim.  So it's a significant --

12          THE COURT:  Well, how about this?  Do you have a

13   number for plaintiff?

14          MS. COOPER:  I don't, Your Honor.  And, we've talked

15   about this, but the problem is that we feel that it is better

16   to have, in the losses part of it, to have an expert at least

17   quantify what the wage part of it would be.  Because the --

18   there's a pension contribution, there's the wages themselves,

19   there's all that.  And, I don't feel like I'm at all qualified

20   to be able to quantify that.

21          THE COURT:  All right.  I am going to do a caveat to

22   my order.  I am going to do an exception.  I am going to stay

23   liability experts, but I want your damage -- there's no reason

24   why your damage expert reports can't be produced as I see it.

25          MS. COOPER:  Well, Your Honor, that was stayed with

Colloquy                                    35

1    the County pending whatever happens with the summary judgment

2    there, because we were both -- they're going to use the same

3    expert, so that's why that was.  But we are collecting that

4    information to provide to an economist to do something.

5           THE COURT:  I'm going to require you to produce your

6    damage expert report, because if you're saying you can't give

7    a number until you get an expert report, I can never get this

8    case settled.

9           MS. COOPER:  Uh-huh.

10          THE COURT:  So your damage expert report is going to

11   be due my May 15th.

12          MR. TERIS:  Your Honor, are you speaking as to a

13   damage expert as to the County.

14          THE COURT:  Damage expert for whatever plaintiff

15   blames their damage, County or State or City.

16          MR. RYBECK:  I believe, Your Honor, discovery is

17   over.  And, Your Honor, there is summary judgment for the

18   County, so I'll let the County address that.  As far as -- I

19   don't think there is any discovery left --

20          THE COURT:  I'm going to say to the plaintiff, serve

21   your damage expert report.  I don't know who you are asserting

22   the damage -- damage expert report.  I don't know why the

23   motion has been pending this long.  When did you file it?

24          MR. TERIS:  Your Honor, we filed our summary

25   judgment motion on September 14th.

Colloquy                                              36

1          THE COURT:  Okay.  So, more than six months, right?

2          MR. TERIS:  The issue is that the plaintiffs didn't

3     respond.  Judge Simandle ordered that all facts were deemed

4     admitted.  They filed a motion for reconsideration.  That's

5     what is pending.

6          MS. COOPER:  In addition, Your Honor, if you

7     remember, I don't know whether it was in the last two or so

8     telephone conferences where I had requested the wage

9     information for my client, just be able to get that from the

10    County.  And, Your Honor, has said to do it through OPRA and I

11    have not gotten that information back yet.  He has collected

12    some himself but we sent some to the State.

13         THE COURT:  I am going to require you to do your

14    damage expert report by May 15th.  If you need more time

15    because you haven't gotten the earning statements, which I

16    don't know why is that an issue.  Why can't you just go get

17    his personnel records?  Why -- a person should be able to get

18    their -- what the were previously paid, but --

19         MR. TERIS:  Judge, we produced his personnel file.

20         THE COURT:  That was the County.

21         MR. RYBECK:  And, Your Honor, he can go get his

22    personnel file, I think he's allowed to.

23         MR. TERIS:  It's on line actually, he can get it

24    himself.

25         MS. COOPER:  It's the pay record not the personnel

Colloquy                                37

 1    file.

 2              MR. RYBECK:  But he can get the pay records on line.

 3              MR. TERIS:  I believe it is an online pay system

 4    with the County so I think he can go --

 5              THE COURT:  Right.  So, anybody should be able to go

 6    back and find out what they were paid.  They need it for tax

 7    purpose.

 8              MR. RYBECK:  I think he himself has access to those

 9    records.

10              MR. TERIS:  That's what -- yeah, exactly.

11              MS. COOPER:  He has the records for the County, it's

12    the City, Your Honor.

13              THE COURT:  Well, whatever you need you're going to

14    have to find it, because you are going to have to produce your

15    expert report by May 15th, so I have a damage number.

16              MS. COOPER:  Sure.

17              THE COURT:  And, whether you attribute that to the

18    County or the City, we can talk about it when the defense has

19    served their expert response.  I will require the defense

20    damage expert report, if any, be served by June 15th.  And,

21    then if the County's motion is still pending, you can ask me

22    to revisit that deadline.  If you're out of the case it won't

23    matter.

24              MR. RYBECK:  Are we going to have an expert as to

25    psychological suffering?

Colloquy                                          38

1          THE COURT:  We'll find that out, won't we?  All

2     damage expert reports.

3          MR. RYBECK:  If that's going to be a claim then I

4     would like -- I would file a motion to have an examination of

5     the plaintiffs.  And, I don't know if there's enough time.  I

6     might report until a month afterwards.

7          THE COURT:  When you get the report.

8          MR. RYBECK:  Yeah.

9          THE COURT:  Did you serve an interrogatory about

10    that?

11         MR. RYBECK:  Yes.

12         THE COURT:  What is the answer?

13         MS. COOPER:  All medicals have been provided through

14    the regular course of discovery.  And, I don't believe that

15    either one of them made a claim for psychological damages but

16    -- for expert, but nor do you have to for an employment claim.

17         MR. RYBECK:  I'm not saying they have to, but if I

18    get an expert report from a psychiatrist saying there's

19    damages, I would like --

20         THE COURT:  It's not a complicated issue.

21         MR. RYBECK:  Yeah.

22         THE COURT:  Ms. Cooper says there is no damage

23    expert on psychological.

24         MS. COOPER:  I do not anticipate that.

25         THE COURT:  Okay.  So then you don't need your IME.

1          MR. RYBECK:  I just wanted to make that clear.

2    There you go.  Thank you, Your Honor.

3          THE COURT:  And, the County may or may be out of the

4    case by then, but as we get closer to June 15th if you believe

5    you need more time for your damage expert response you'll let

6    me know.

7          MR. TERIS:  Yes, Your Honor.

8          THE COURT:  The City is going to have to have a

9    damage expert.  Maybe you share in the expert, I don't know.

10         MR. RYBECK:  That's all depended upon what the -- if

11   the plaintiff produces he worked X hours, I don't know if

12   we're going to need an expert for that.  It all depends upon

13   the report.

14         THE COURT:  Because then when I see you all here

15   again, maybe in June, we'll have a demand because plaintiff

16   would have produced a report and we can know what -- whether

17   we can get this case settled.

18         MR. RYBECK:  Certainly, Your Honor.

19         THE COURT:  Okay.  Ms. Cooper?

20         MS. COOPER:  No objection, Your Honor.

21         THE COURT:  You'll be able to meet that deadline?

22         MS. COOPER:  I am going to do my very best, yes.

23         THE COURT:  Okay.  Is there anything else then for

24   today?

25         MS. COOPER:  No.

Colloquy

40

1              THE COURT:  That's from the plaintiff.  From

2      defense?

3              MR. RYBECK:  Nothing from the City defendants, Your

4      Honor.

5              MR. TERIS:  No, Your Honor.

6              THE COURT:  Okay.  Everyone have afternoon and a

7      good weekend.  We are adjourned.

8          (Proceeding ends at 11:42 a.m.)

9                          *  *  *  *  *

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                   **C E R T I F I C A T I O N**

2

3                 I, Diana Doman, court approved transcriber,

4      certify that the foregoing is a correct transcript from the

5      official electronic sound recording of the proceedings in the

6      above-entitled matter.

7

8

9      _____          _04/10/2017_

10          DIANA DOMAN                                DATE

11     DIANA DOMAN TRANSCRIBING, LLC