UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

```
JOHN SOSINAVAGE,                )  14-CV-3292-JBS-AMD
                                )
              Plaintiff,        )
                                )
       vs.                      )
                                )
                                )
POLICE CHIEF JOHN SCOTT         )
THOMSON, et al,                 )
                                )
              Defendants.       )
------------------------------- )
ANTHONY CARMICHAEL,             )  14-CV-3323-JBS-AMD
                                )
              Plaintiff,        )
                                )
       vs.                      )
                                )
POLICE CHIEF JOHN SCOTT         )
THOMSON, et al,                 )  Camden, NJ
                                )  January 25, 2018
              Defendants.       )  2:50 p.m.
------------------------------- )
```

TRANSCRIPT OF CONFERENCE
BEFORE THE HONORABLE ANN MARIE DONIO
UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

For the Plaintiffs:        CHERYL L. COOPER, ESQUIRE
                           LAW OFFICES OF CHERYL L. COOPER
                           322 Egg Harbor Road
                           Suite A-1
                           Sewell, New Jersey  08080

                           PAUL D. BRANDES, ESQUIRE
                           VILLARI BRANDES & GIANNONE, PC
                           8 Tower Bridge
                           161 Washington Street
                           Suite 400
                           Conshohocken, Pennsylvania  19428

For the County             BENJAMIN S. TERIS, ESQUIRE
Defendants:                BROWN & CONNERY, LLC
                           360 Haddon Avenue
                           Westmont, New Jersey  08096

```
APPEARANCES: Continued

For the City          DANIEL RYBECK, ESQUIRE
Defendants:           WEIR & PARTNERS, LLP
                      215 Fries Mill Road
                      Second Floor
                      Turnersville, New Jersey  08012




Audio Operator:       ECR




Transcribed by:       DIANA DOMAN TRANSCRIBING, LLC
                      P.O. Box 129
                      Gibbsboro, New Jersey  08026
                      Office:  (856) 435-7172
                      Fax:     (856) 435-7124
                      E-mail:  dianadoman@comcast.net


Proceedings recorded by electronic sound recording, transcript
produced by transcription service.
```

1

2                                    I N D E X

3       COLLOQUY:                                              PAGE

4       Request for Admissions                                    7

5       City Certification on documents                          10

6       Personnel file supplement                               12

7       Serve records by way of subpoena                         16

8       Cuevas DCP&P files                                       19

9       Index cards                                              44

10      Request to re-depose                                     44

11      Thomson deposition                                       47

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1           (The following was heard in open court at 2:50 p.m.)

2           THE COURT:  We're here for a conference in

3    connection with various discovery issues and also to set a

4    final schedule in this matter in cases 14-3292 and 14-3323.

5    May I have the appearances please.

6           MS. COOPER:  Yes.  Good afternoon, Your Honor.

7    Cheryl Cooper on behalf of the plaintiffs.

8           MR. BRANDES:  Good afternoon, Your Honor.  Paul

9    Brandes on behalf of the plaintiffs.

10          THE COURT:  Thank you.

11          MR. RYBECK:  Good afternoon, Your Honor.  Daniel

12   Rybeck of the law firm of Weir & Partners on behalf of the

13   City defendants.

14          THE COURT:  Thank you.

15          MR. TERIS:  Good afternoon, Your Honor.  Benjamin S.

16   Teris from the law firm of Brown & Connery on behalf of the

17   Camden County defendants.

18          THE COURT:  All right.  Thank you, counsel.  All

19   right.  This conference was set up following the Court's order

20   on the motion to compel in each of the cases.  I do note that

21   there is pending motions to strike before the District Judge.

22   Obviously, I'm not going to be addressing those motions.  And

23   that's in connection with opposition to the County's motion

24   for summary judgment, correct?

25          MR. TERIS:  Yes, Your Honor.

Colloquy                                                     5

1              THE COURT:  And that motion's still pending before

2       the District Judge?

3              MR. TERIS:  Yes, Your Honor.

4              THE COURT:  All right.  And just for the record,

5       that's Mr. Teris.  So this conference is being electronically

6       recorded, and I would ask that each time you speak you

7       identify yourself for the record.

8              So I received a letter from Ms. Cooper yesterday

9       dated January 24th for today's conference, outlining what

10      plaintiffs' counsel believes to be issues that the Court

11      should address.  I didn't see a response from defense.  I'll

12      note the letter was filed just yesterday.

13             Mr. Rybeck, have you had a opportunity to review the

14      letter?

15             MR. RYBECK:  I didn't even know one was filed,

16      Judge.  And I'm checking my emails now.

17             THE COURT:  You don't -- you don't know there was

18      one filed in the case that deals with what we have to talk

19      about right now?

20             MR. RYBECK:  I was in Court all day yesterday, Your

21      Honor.  I didn't check my emails, and my office didn't put it

22      on my file I guess, and I did not see the letter.  I

23      apologize, Your Honor.

24             THE COURT:  Ms. Cooper, do you have a copy of the

25      letter?

Colloquy                                                          6

1          MR. RYBECK:  I'm looking at it right now, Mr. Teris

2    showed me.

3          THE COURT:  Well why don't I take a break?  Because

4    I'm going to go right to the letter, and you really need to

5    take a look at it.

6          MR. RYBECK:  I apologize, Your Honor.

7          THE COURT:  And we'll -- we'll be back in like five,

8    ten minutes.  All right?

9          MR. RYBECK:  Okay.

10         THE COURT:  So we'll just adjourn for a few minutes.

11         MR. RYBECK:  Thank you.

12       (Court in recess 2:53 p.m. to 3:06 p.m.)

13         THE COURT:  We're back on the record in case numbers

14   14-3292 and 14-3323.  And all the attorneys who placed their

15   appearances on the record are still in the courtroom.  Mr.

16   Rybeck, did you have something you wanted to add to the Court?

17         MR. RYBECK:  I've had a opportunity to read the

18   letter, Judge.  So --

19         THE COURT:  You have now?

20         MR. RYBECK:  Yes.

21         THE COURT:  And you're prepared to move forward?

22         MR. RYBECK:  Yes.

23         THE COURT:  All right.  So let me just address what

24   I want to address today.  Which begins with what the Court

25   order of December 22nd, 2017 indicated the Court would be

1    addressing.

2         So let's talk first about requests for admissions.

3    The Court notes on page 18 in the prior opinion that the City

4    asserted that plaintiff served untimely requests for

5    admissions, and that they be stricken.

6         And I indicated I would not request that in the

7    context of plaintiff's motion, but address it at the next

8    conference.  Here we are.  Mr. Rybeck, what is your position

9    with respect to the request for admissions?

10        MR. RYBECK:  Fact discovery was over, and they were

11   served -- fact discovery was over pursuant to this Court's

12   order.  We had years to serve these requests for admissions.

13        THE COURT:  Okay.  Ms. Cooper?

14        MS. COOPER:  Actually, Mr. Brandes is going to

15   address this.

16        THE COURT:  Mr. Brandes?

17        MR. BRANDES:  Thank you, Your Honor.  Paul Brandes

18   speaking.  Your Honor, these were served under Rule 36.  Rule

19   36 is not a discovery rule, it is a trial preparation, trial

20   efficiency rule.  As Your Honor knows, under Rule 36, Rule 36

21   has its own procedure for seeking to compel appropriate

22   responses, separate and apart from Rule 37.

23        Rule 37 speaks to depositions, requests for

24   production of documents, interrogatories, and failure to make

25   the designation under Rule 30(b)(6).  It is silent as to

1    requests for admissions.

2           The Third Circuit has not ruled that requests for

3    admissions are discovery, or trial preparation materials.

4    That's an open question of the Third Circuit.  It's

5    plaintiff's position, however, that the Rules of Civil

6    Procedure provide the answer that it is not a discovery tool

7    so much as it is a trial preparation tool, that there is no

8    deadline for serving.

9           THE COURT:  How many requests did you serve?

10          MS. COOPER:  Honestly, Your Honor, I don't recall at

11   this time.  I did look at that, but I couldn't find the

12   document before I left this -- I had Court this morning as

13   well, so I just came from my office directly here.

14          THE COURT:  Mr. Rybeck, do you know how many were

15   served?

16          MR. RYBECK:  I don't have them with me, Your Honor.

17   But I believe there's maybe 15 or 20, off the top of my head.

18          MS. COOPER:  It is not a huge number.

19          THE COURT:  All right.  Anything further from either

20   party?

21          MR. RYBECK:  No, Your Honor.

22          THE COURT:  All right.  I'm going to permit the

23   plaintiff to -- I'm going to permit any party to serve no more

24   than 30 requests for admissions.  And they can be served by

25   the end of the month, by January 31st, and then the answers

Colloquy                                              9

1    would be due by the end of February, within the 30-day period.

2    And we'll schedule the remaining completion of final pretrial

3    order, and set a date certain for dispositive motions before

4    we're done today.

5              Okay?

6              MR. TERIS:  Your Honor, just to clarify, that does

7    not apply to the county defendants, is that accurate?

8              THE COURT:  Well you have a pending summary judgment

9    motion, correct?

10             MR. TERIS:  Yes, Your Honor.

11             THE COURT:  So discovery's over vis-a-vis the

12   County.  It's always been that way, other than this issue of

13   the IA files, correct?

14             MR. TERIS:  Yes, Your Honor, and we're only somewhat

15   related to that, in that we house the files.

16             THE COURT:  You possess them.

17             MR. TERIS:  Yes.  Yes, Your Honor.

18             THE COURT:  But they're not directed to you, the

19   request, per se.

20             MR. TERIS:  Correct, Your Honor.

21             THE COURT:  All right.  So no requests for

22   admissions between the County and the plaintiff, or vice

23   versa, because there's a pending summary judgment motion.

24   Everybody agrees with that?

25             MS. COOPER:  I'm fine with that, Your Honor.

1          MR. TERIS:  Thank you, Your Honor.

2          THE COURT:  Okay.

3          MS. COOPER:  Judge, may I just clarify one other

4    thing before you move on?

5          THE COURT:  Yes.

6          MS. COOPER:  Do you want me to re-serve those same

7    requests for admissions that were already served last year?

8          THE COURT:  Yes.  Re-serve them and -- because you

9    might want to -- because you've gotten some additional

10   information, you may want to revise them.

11         MS. COOPER:  Sure.

12         THE COURT:  So whatever you want to serve, you need

13   to serve by January 31st.  All right?  That takes care of one

14   item that was specifically and expressly indicated that we

15   would address today.

16         The next item I want to address is Mr. Rybeck's

17   certification confirming that all documents that he intended

18   to use to support any claim or defense in the case has been

19   produced.  Mr. Rybeck, you served such a certification?

20         MR. RYBECK:  Yes, Your Honor.

21         THE COURT:  It appears plaintiff objects to that.

22   Ms. Cooper, you have a problem with that?

23         MS. COOPER:  Your Honor, my issue with it is that he

24   did -- Mr. Rybeck's certification did not comply with what the

25   Court ordered him to certify.  There was two different -- two

1    separate parts of the Court's requirement.  One certifying

2    that they turned over all the documents that they intended to

3    rely upon for -- in their case, and, number two was that they

4    updated everything pursuant to Rule 26(e).  And that is what

5    is missing.

6            THE COURT:  Okay.  Mr. Rybeck, I think what happened

7    is that the form of the order didn't include what was also put

8    in the order, because on page 10 of the Court order, the Court

9    required that you also certify that the Rule 26 disclosures

10   have been appropriately supplemented.  Can you please do so?

11           MR. RYBECK:  Yes, Your Honor.

12           THE COURT:  All right.  So the request of the

13   plaintiff is consistent with what's in the body of the order,

14   but not in the final order portion of the order, so that's

15   probably where the confusion came in.  And I'll give you ten

16   days to do that.

17           MR. RYBECK:  Thank you, Your Honor.

18           THE COURT:  All right.

19           MS. COOPER:  Your Honor, may I also address the

20   other part of that?  If you look at my letter is that we know

21   for certain that they have not updated all of the -- the

22   documents that were turned over for Rule 26 disclosures,

23   and/or the ones that Your Honor ordered the City of Camden

24   defendants to produce.

25           And I specifically put in my letter, for example, my

Colloquy                                    12

1        clients' own personnel files and transfer orders, as well as

2        civil service documents that should be in their personnel

3        files are not there, and I only asked for the personnel files

4        of my clients, and the named defendants.  I didn't ask for,

5        you know, everybody in the whole wide world.

6               And those documents are necessary to prove parts of

7        the claims of plaintiffs' complaint.  And they should have

8        been updated and supplemented as we went along.  Each time

9        when Your Honor ordered them to supplement it the last time,

10       they were not included.  Nothing past a certain point has ever

11       been updated.  None of the current stuff from like 2008

12       forward has ever been produced in their personnel files.  And

13       they were transferred numerous times, they were given

14       appointments up and down the promotional scale, depending on

15       what was happening in the City.

16              And -- and so were all of the named defendants.

17              THE COURT:  Mr. Rybeck, your position as to whether

18       current and 2008 plus personnel records are relevant to this

19       litigation?

20              MR. RYBECK:  If there is transfer orders -- the

21       plaintiffs, they want the transfer orders, I can go check and

22       see if they were updated, and I'll go back and look at that,

23       Your Honor.  But I wasn't aware of an update.  And if they --

24       whatever I produced, I can't remember how many years ago I

25       produced it, but if there's an updated one and I'll certainly

Colloquy                                                      13

1    check, and if there's any new in there, Your Honor.

2             But as far as the defendants' personnel files, I

3    don't see how that's relevant at all.  Under State v.

4    Kaszubinski, you just can't ask for the personnel file without

5    something more.  If they're claiming they were not

6    transferred, or they were transferred in retaliation for

7    something, I don't see what it has to do with the defendants'

8    personnel files, Your Honor.

9             MS. COOPER:  Your Honor, the purpose of that was to

10   show that the -- some of the defendants -- in fact, most of

11   the defendants received promotions that were not permitted

12   under the Civil Service Rules, which is directly related to

13   the -- the claims that are in my clients' complaint.  He

14   claimed that they were violating and skirting around the New

15   Jersey Civil Service Rules using titles, job titles, and

16   designations that were not permitted.

17            And he complained about those things.  And the part

18   of his retaliation claim is over that.  And they were already

19   produced up until that point, but they just haven't produced

20   anything else since that time.  And, you know, honestly the

21   reason that they haven't produced it, in my opinion, is

22   because from 2008 forward is when all of these issues took

23   place.

24            THE COURT:  I'm not sure what that comment means.

25   What do you mean all these issues took place?

Colloquy                                                14

1          MS. COOPER:  The issues with using job titles that

2     are not civil service titles.  The issues of promoting people

3     without an examination.  The issues of charging officers

4     without doing an investigation.

5          All of the things that --

6          THE COURT:  And you're saying you don't have them

7     from 2008?

8          MS. COOPER:  Forward.

9          THE COURT:  Mr. Rybeck, go back and certify that

10    you've produced the personnel files that were requested from

11    2008 through to the date of the filing of this lawsuit.

12         MR. RYBECK:  Certainly, Your Honor.

13         MS. COOPER:  Your Honor, it actually should be up

14    through 2013 when the Police Department disbanded, because the

15    ranks changed all the time.  Throughout, my client's rank

16    changed from captain all the way down to sergeant, then back

17    up to lieutenant, then back up to captain.

18         THE COURT:  So you're looking from 2008 to 2013?

19         MS. COOPER:  Correct.

20         MR. RYBECK:  That's fine, Your Honor.

21         THE COURT:  That's fine.  All right.  So I'll put

22    that in the order, and I'll give you ten days to do that,

23    because we're just looking at updated personnel files.

24         MR. RYBECK:  I just have to go to City Hall and get

25    the files, Your Honor.

                              Colloquy                          15

1            THE COURT:  And that's -- include transfer orders of

2       the plaintiff and -- plaintiffs, and any named defendants.

3            MR. RYBECK:  That's fine, Your Honor.  My only

4       concern is that if there's some kind of medical issue or

5       something --

6            THE COURT:  They're not looking for medical records.

7            MR. RYBECK:  Just transfers?  That's fine then, Your

8       Honor.

9            THE COURT:  Transfer records and disciplinary

10      notices.

11           MS. COOPER:  Anything to do with promotional pay

12      changes.  Those things have to have a particular form that

13      shows what the rate is, et cetera.  That's what I'm interested

14      in.

15           MR. RYBECK:  That's fine, Your Honor.

16           THE COURT:  Okay.  All right.  That takes care of

17      that.

18           Let me take care of some items I'm not going to

19      address today.  Ms. Cooper, you put in your letter that the

20      privileged logs are deficient, but you didn't tell me anything

21      more.  I've already addressed that in the motion.  I'm not

22      going to rehash what's in the motion.  If it wasn't in -- it's

23      sufficiently detailed in the motion, this letter is not a

24      opportunity to do that again.

25           Do you understand that?

1              MS. COOPER:  I understand, Your Honor.

2              THE COURT:  All right.  So I'm not going to address

3      privileged logs.  The file regarding defendant Cuevas, is that

4      how you pronounce it?

5              MR. RYBECK:  Yes, Your Honor.

6              MS. COOPER:  Yes.

7              THE COURT:  Regarding stealing time, I addressed

8      that in the order, and I denied it.  I permitted you to serve

9      records by way of subpoena to the Camden County Prosecutor's

10     Office.  You raised that again.  I've already addressed it.

11     I'm not going to revisit my order.  Have you served the

12     subpoena?

13             MS. COOPER:  No, Your Honor, because the last time

14     when we were here Mr. Teris objected to the County having to

15     do anything.  But the problem is that they're so very

16     intertwined on some of these issues.

17             MR. TERIS:  Your Honor, the County is separate and

18     apart from the County Prosecutor's Office.  I don't have a

19     problem with any subpoena --

20             THE COURT:  Okay.  Let me see.  This is how I said

21     it in the order.  And this is -- I'm just -- I'm not going to

22     reconsider the order, I'm only going to address that which we

23     indicated I would address.

24             Because the time line for reconsideration has

25     expired, and I'm not going to reconsider what I ordered in the

1    order.  So in the order I indicated that:

2              "Deny the request without prejudice in light of the

3    defense counsel's statement that the entire investigatory file

4    has been produced and that the CCPO may be in possession.  The

5    Court shall address whether plaintiff shall be permitted to

6    seek this information by way of subpoena."

7              All right.  You have ten days to serve your subpoena

8    on the CCPO for this information.  That takes care of that

9    issue.

10             The DCP&P file of Defendant Cuevas, which is item

11   six in your letter -- I think it's six in your letter -- I

12   can't -- in the Court's prior order, I indicated:

13             "Plaintiffs have not demonstrated how the specific

14   underlying details of the investigative report is relevant to

15   the plaintiffs' claims."

16             I've denied that portion of the motion.  I don't see

17   any basis to readdress it at this time.  A letter is not a

18   motion for reconsideration.  And so there's nothing for me to

19   address.  It's already been denied.

20             MS. COOPER:  Your Honor, just with respect to a

21   motion for reconsideration, I did not consider this to be

22   something that we could either file for reconsideration or

23   appeal until after this hearing on these issues that we're in

24   here.  But if the Court, you know, feels differently, you

25   know, I will take whatever step's necessary to rectify that.

1          THE COURT:  Where in the order does it say you're

2     not to file a motion for reconsideration of any of the matters

3     that the Court ruled on, as opposed to indicated that we would

4     be addressing it at the conference?

5          MS. COOPER:  There's no language that says it's not,

6     you know, just to prohibit it, it just was the fact that it --

7     that the defense counsel is ordered to, you know, file a

8     certification of certain things.  And then, you know, there

9     was no opportunity, or nothing in here to say that I have a

10    opportunity to rebut that, which I did in the letter.  But --

11         THE COURT:  What -- the defense counsel wasn't

12    ordered to do anything with respect to this issue.

13         MS. COOPER:  Not on this particular one.  I'm just

14    saying throughout the course of the opinion, that's how I read

15    it, and that was my understanding that until the Court heard

16    these issues that were outstanding, that it wouldn't be, you

17    know, something that couldn't be appealed.

18         THE COURT:  Well I don't know where that

19    understanding came from.  There were a number of items the

20    Court ruled against, a number of items the Court ruled for,

21    and a number of items the Court will address at the next

22    conference.  To the extent I said I'll address it at the next

23    conference, we're going to address it.

24              As I understand from my Court order, I did not say I

25    was going to revisit, or consider, or deny without prejudice

1    to discuss at the conference anything with respect to the

2    DCP&P file.  So I'm not going to address it today, as I've

3    already addressed it.

4             Okay.  What I did indicate I would be addressing

5    today would be the scope of the IA files.  I indicated I

6    thought perhaps sampling would work, and we would address it.

7    So I'll hear from the plaintiff on the IA files on sampling.

8             MS. COOPER:  Your Honor, I do not believe that

9    sampling will work.  And I also believe that the

10   characterization of what the plaintiffs are claiming is the

11   pattern and practice is -- is not exactly accurate.  In

12   Sosinavage in particular, but it's the same through both of

13   them.  I just don't know the paragraph numbers for each, but

14   it's -- the pattern and practice claims are, like paragraph

15   193 through two hundred and something.

16            And in there it's very specific where he says that

17   they created a pattern and practice of not investigating

18   certain files, not logging certain files, prohibiting them

19   from investigating certain files.  And the deposition of

20   Wysocki and Lynch seems to confirm parts of those things.

21            But without looking at the log, the actual numerical

22   log, which we do have, versus the files, there is no way that

23   you could possibly prove a pattern and practice without having

24   them say, well, how many are statistically relevant?

25            How many out of 397 files for the year is proper?

1     You know, if you find a mistake on one or two, is that -- is

2     that a pattern or practice?  There's no way for a plaintiff to

3     prove a <u>Monell</u> claim on the allegations that are here.  And

4     the one thing I do agree with them on, is that that this is

5     not like an excessive force claim where you're just looking at

6     excessive force complaints, or excessive force, or other sorts

7     of torts.

8               This is a situation where he says he was prohibited

9     from investigating files that had criminal elements to them.

10    He was -- he was ordered to charge individuals without

11    completing a full and complete investigation with termination

12    offenses, and just major discipline, which under the Attorney

13    General Guidelines is also not permitted.  And they had a

14    custom and practice of bringing people in and forcing them to

15    be interviewed, sworn under oath, which are not permitted by

16    the Attorney General Guidelines either.

17              And my clients testified that they were subject to

18    those things.  And so far, because we don't even have the

19    updated index cards and so forth, and the opportunity to

20    review all of the files, we don't know some if those things

21    are not logged on there.  For example, Captain Carmichael

22    testified that he was brought in over an issue that he was

23    told to discipline somebody over not wearing their hat, and

24    then he didn't -- they ended up sending Lieutenant Wysocki

25    down, and he was put on a recorder, and all these other

1  things.  Well there's no IA file that was ever produced on

2  that.

3         There was nothing on his index card that was

4  produced on that.  A union rep was there, his union president

5  was there.  So these are all types of things where we need to

6  be able to go through the files and see if there even is

7  something that exists there.  That in addition -- if I could

8  just finish, during the course of the deposition with

9  Lieutenant Wysocki and Lynch, they both testified that they

10 closed a huge number of files with an administrative closure,

11 and there's only a very limited ability to do that under the

12 Attorney General Guidelines, and that was from 2012 and

13 thirteen, that both of them said that.

14        And they just signed off on them, without reviewing

15 the file, which is also not permitted under the Attorney

16 General Guidelines.  So he -- I tried to get a description

17 from both witnesses as to what exactly they looked at in order

18 to close the file, and he just said that he had a summary.

19 Well I don't know what he's talking about, but I need to be

20 able to review those things to what the Attorney General

21 Guidelines require.

22        And so does our expert, candidly.  So that was why

23 before I offered to have, you know, staff -- I have four

24 people that could go there with scanners, we don't even have

25 to photocopy the things, scan the files, and if the files are

Colloquy                                          22

1    really empty, as Wysocki testified, except for one or two

2    sheets of paper for all of twelve and thirteen, it really

3    should be a matter of one day.

4              THE COURT:  What, if I could ask you, if you

5    contemplate specifically the scope of the IA files you're

6    looking for?

7              MS. COOPER:  Well definitely every one that's

8    administrative in nature.  But beyond that, you know, there's

9    allegations my clients made that when he made complaints about

10   -- against other officers, or against the process, he -- those

11   investigations don't appear on their IA card.

12             For example, Cuevas' file doesn't appear on that IA

13   card, the one that we just talked about.  Or there was pages

14   missing out of it.  There's nothing that appears on his

15   record.  All of that is all relevant.

16             My client was precluded from investigating the DCCP

17   file, which is something that another officer was terminated

18   for.  Same exact thing.

19             THE COURT:  Well but just, if you could articulate

20   for me whose IA files you would want to see, and the years?

21             MS. COOPER:  It's not whose, Your Honor.  It's all

22   of them.

23             THE COURT:  All IA files for whatever the allegation

24   is?

25             MS. COOPER:  No, Your Honor.  I put in my -- I

Colloquy                                    23

1    believe it was in my letter, there is like 90 files for --

2    it's 90 files, I think, for 2008, something like -- to that

3    effect.  Ninety-seven files for 2008.  That was out of

4    three --

5              THE COURT:  Let me just read your letter.

6              MS. COOPER:  I'm sorry.

7              THE COURT:  So --

8              MS. COOPER:  It's in your opinion on page four, Your

9    Honor.

10             THE COURT:  Okay.

11             MS. COOPER:  Ninety-seven files from 2008.  And I

12   believe that was out of 347, somewhere in that vicinity.  Then

13   for 2009, I don't have the attachment here, but I believe it

14   was a hundred and something out of, again, almost 400 files.

15   And then 2010 to thirteen was all of them.

16             THE COURT:  And your request for these IA files

17   deals with which of your claims?

18             MS. COOPER:  It deals with both the plaintiffs'

19   claims on the Monell claim against the City for the pattern

20   and practice claims.

21             THE COURT:  Pattern and practice of what?

22             MS. COOPER:  Pattern and practice of failing to

23   follow the Attorney General Guidelines with respect to

24   logging, investigating, charging, all of it.

25             THE COURT:  And why is that relevant to a claim or

1    defense in your case?

2            MS. COOPER:  Because my clients actually complained

3    about that, and they were then retaliated against as a result

4    of it.  So that's what forms the whole basis of the claim

5    against the City, and City defendants.

6            THE COURT:  So when the Court wrote in the opinion

7    that it appeared that you were seeking these files to --

8            MS. COOPER:  I think Your Honor used the word like

9    altered --

10           THE COURT:  Alter -- let me -- I have it right here.

11   That's what you're looking for?

12           MS. COOPER:  Right.  It's not altered, though.  In

13   some instances, people who were -- they were just never

14   investigated.  Some of them were just never charged.  Some of

15   them were -- they're just failing to follow the guidelines,

16   which are very specific as to how Internal Affairs records

17   have to be maintained.

18           That's why the City of Camden has the little index

19   cards that we first started with.  That was, back in the day,

20   the way that they tracked an officer's offenses or charges

21   throughout his entire career with the Police Department.

22           And some officers would have multiple of those index

23   cards, and then others might none.  However, as time

24   progressed, it became something that was computerized.  That's

25   just one example of the requirements that the Attorney General

1    Guidelines for Internal Affairs policies and procedures

2    require.

3              THE COURT:  All right.  Thank you.  Anything, Mr.

4    Rybeck?

5              MR. RYBECK:  Judge, I think it was sometime in March

6    of 2010 the plaintiffs were transferred out of Internal

7    Affairs.  So if they complained about certain cases occurring

8    prior to their transfer, that's one thing, but I don't know

9    what -- I'm not aware of any complaints they made 2012 or 2013

10   about officers not being investigated, or investigations not

11   being done properly.

12             If they had a specific complaint, we would have no

13   problem giving our best specific file.

14             THE COURT:  Say that slower.

15             MR. RYBECK:  If they have a specific complaint then

16   we can -- we have no problem giving our best specific file.

17   But as far as just a broad, general claim that they're not

18   investigating things properly, what does that have to do with

19   these plaintiffs in 2012 or 2013?

20             THE COURT:  What about 2010, 2009, 2008?

21             MR. RYBECK:  If there's specific cases they're

22   saying that wasn't done, I understand that, Your Honor.  And

23   from our understanding, the actual IA cases listed in the

24   complaint, the actual instances, everything listed in the

25   complaint about specific instances where something was done

1    wrong, or allegedly done wrong, those files have been

2    produced, Your Honor.

3           MS. COOPER:  That is absolutely not correct, number

4    one.  But, number two, a pattern and practice is not just

5    about specific instances.  That's exactly why and how Monell

6    makes liability against the policy makers of the City.  You

7    have to show that it's not one or two instances, it's not one,

8    or two, or three, or four.  It is a pattern and practice and

9    custom that has evolved.

10          And that is exactly what my clients have alleged.

11    And, in fact, my clients testified multiple times after 2009

12    when the complaint was filed, where they -- where it's under

13    oath where they've -- Wysocki himself has admitted that he

14    didn't do investigations.

15          THE COURT:  Why would you need 2012 and 2013?  If

16    the retaliation that's alleged to have occurred, occurred in

17    2010 --

18          MS. COOPER:  It was continuing and ongoing, Your

19    Honor.  They were denied the opportunity to take promotions

20    when other people were not.  They appealed it to civil

21    service.  By the time the appeal came though it was moot.

22    There was a whole load of things, all the way up until the

23    very end.  At one point in time, Lieutenant Sosinavage

24    testified that he was the only City of Camden police officer

25    in the entire force that was forced to work every weekend for

Colloquy                                    27

1    two thousand -- I believe that was 2011 or twelve.

2          So there's -- the retaliation wasn't one or two

3    instances of, it was continuous and ongoing.

4          THE COURT:  All right.

5          MR. RYBECK:  Judge, may I respond to that?

6          THE COURT:  Yes.

7          MR. RYBECK:  It's continuous and ongoing for

8    complaints he alleged he made while he was in the Internal

9    Affairs about he being told to not investigate things, or him

10   being -- he alleges that he was told, you don't need to do --

11   interview 20 people, just charge the person, we'll have the

12   hearing, essentially.

13         And then that was when he was in Internal Affairs.

14   What does whether some random officer in 2012, whether he was

15   properly investigated or not, have to do with whether or not

16   plaintiffs were retaliated against for making a complaint in

17   2009?

18         MS. COOPER:  That is absolutely incorrect.

19         MR. RYBECK:  And, Judge, if there's a pattern and

20   practice they're alleging here, he was in Internal Affairs, he

21   can tell us which files these were allegedly done.  He was in

22   charge of the unit.

23         MS. COOPER:  Not after he was not there.

24         MR. RYBECK:  I understand after he was not there.

25   But the problem is, Judge, that what does whether or not

1    they're investigating cases properly three years after he was

2    transferred have anything to with this case?

3              MS. COOPER:   It has everything to do with the case,

4    Your Honor, because that is what precipitated my clients

5    beginning -- retaliation against my clients.   And in fact my

6    clients testified, and especially Sosinavage, in multiple

7    disciplinary matters in New Jersey Superior Court, in

8    Administrative Law Division, in hearings in which Mr. Rybeck

9    is very well aware, because his law firm was there, and even

10   regular other litigation as to what was done during his

11   tenure, versus what was done afterwards.

12             So it is very important, and it is exactly what is

13   required under Monell.   I specifically went through and made

14   sure of what I needed in the complaint, as well as in the

15   files to be able to show this.   The Attorney General

16   Guidelines layout every single thing that should be in an

17   attorney -- in the files.

18             THE COURT:   Well let me ask this question.   Let's

19   say you get 2013 IA files, let's say there's 20.   And let's

20   say there's non-compliance with the Attorney General

21   Guidelines on one of the 20.   What relevance -- or let's say,

22   alternatively, there's not compliance in all 20, what

23   relevance does that have to your clients' claim of

24   retaliation?

25             MS. COOPER:   Because it shows that the pattern and

1    practice actually existed, and it continued up until the end

2    when my client was terminated.  And the fact is, even though

3    the County -- I mean, not terminated, laid off with everybody

4    else at the end of the thing.  The County has made the

5    argument that these are separate, two distinct things, which

6    generally I might agree.  However, you have the same personnel

7    involved, and his claim then -- Sosinavage's claim continues

8    that he was not properly hired over, or given the opportunity

9    to be hired at the County.  And it's Carmichael's claim

10   continues that he was then further discriminated and

11   retaliated by the same exact people who just wearing a

12   different hat and uniform.  So it is very relevant.  And it

13   did continue all the way up -- and my clients testified

14   extensively and were questioned extensively about it at their

15   depositions.

16          So it is --

17          THE COURT:  Okay.

18          MR. RYBECK:  Judge, with Monell it has to be the

19   driving force behind the constitutional violation.  If some

20   officer wasn't properly investigated in 2012, it has nothing

21   to do with the plaintiffs.  How that that be the driving

22   force?

23          THE COURT:  Well their argument is that -- that it's

24   a little broader than that.  That -- say an officer in 2012

25   didn't do the investigation, it's continued pattern and

Colloquy                                                          30

1    practice.  And because the plaintiffs are -- had raised that

2    issue years ago, they're still retaliated against because

3    there's a claim, I guess, that they now want to expose this

4    continued pattern or practice.  I think that's where the

5    plaintiff's going, is that right?

6              MS. COOPER:  Basically, Your Honor.  And in addition

7    to that, my clients testified in multiple of the disciplinary

8    hearings for the other officers, not all are known, but of the

9    ones that we did testify at, of course I know those officers.

10   And so it's -- those things were not only occurred in 2009 or

11   2010, it continued on, and on, and on, all the way up until

12   the end.

13             THE COURT:  All right.  Well discovery has to be

14   relevant and proportional to the needs of the case.  And so in

15   light of plaintiff's statement that the plaintiff will go in

16   and just make the copies, what's the argument on

17   proportionality, if the Court determines that there's been

18   enough of a showing of relevance?  Now, remember, it's not

19   admissibility, it's relevance on the IA files.

20             MR. RYBECK:  Well, Judge, on proportionality we have

21   four hundred something files a year, these are confidential

22   Internal Affairs files that --

23             THE COURT:  Well let's see, plaintiffs' looking for

24   ninety-seven in 2008.

25             MR. RYBECK:  Yes.

Colloquy                                                    31

1          THE COURT:  A hundred in 2009, and then 2010,

2   eleven, twelve, and thirteen, four more years.

3          MR. RYBECK:  That's approximately 1,400 files, Your

4   Honor.

5          THE COURT:  But plaintiff has said, I'm going to go

6   in and just scan them all in, no cost to the defense.

7          MR. RYBECK:  Um -- I --

8          THE COURT:  No time limit to the defense.

9          MR. RYBECK:  I understand that, Your Honor.  I think

10  it's really a matter of showing good cause here and relevance

11  to that.  And I don't see the relevance still here, Your

12  Honor.

13         THE COURT:  No, but I'm saying, let's say I

14  determine that they're relevant to the claim of defense in

15  light of the argument of establishing a pattern or practice

16  that continued in light of an argument that the retaliation

17  continued.

18         MR. RYBECK:  I'm assuming that's your -- okay.

19         THE COURT:  I thought you had raised initially a

20  proportionality argument, but it seems like plaintiff

21  addresses that by saying, look, we don't want you to copy it,

22  we'll just come in and scan them all.

23         MR. RYBECK:  I think that would be a task that would

24  take weeks, Your Honor, in light of how big these files are,

25  and how big that room is that I've been in, Your Honor.

1          THE COURT:  The plaintiff says she could do --

2          MR. RYBECK:  It's -- there's 1,400 files, some of

3     these in boxes.

4          THE COURT:  -- it in a day.

5          MS. COOPER:  Your Honor, Mr. -- I mean, Lieutenant

6     Wysocki and Lynch testified, number one, they're in the very

7     same room that they were when it was the PAB versus the County

8     PAB.  I questioned him extensively about that at his

9     deposition.  He said they've not been moved.  The archive

10    files are all in the exact same place.

11         The other part of that is, Your Honor, that the City

12    of Camden, regardless whether it has a Police Department or

13    not, is the one who is the owner of those files, and under the

14    Attorney General Guidelines required to maintain those files,

15    the City, for 75 years.

16         So it has nothing at all to do with the County.

17    However, the proportionality is, Your Honor, we have economic

18    experts that we've produced in this case already.  I don't

19    know where the numbers are, but I believe -- they're in seven

20    figures for the damages these plaintiffs have suffered.

21         And so they should be allowed to have the discovery

22    to go through if there's -- if the files are as Wysocki and

23    Lynch, who are the two deputy chief of police now at the

24    County, testified, that there's probably one or two pieces of

25    paper in all of the files for twelve and thirteen.

 1              So it's, again, for me --

 2              THE COURT:  All right.  Well here's how I --

 3              MS. COOPER:  -- I don't --

 4              THE COURT:  I figured out a way to do it.  Let's do

 5       it this way --

 6              MR. RYBECK:  Judge --

 7              THE COURT:  -- yes?

 8              MR. RYBECK:  -- just as far as one or two pieces of

 9       paper, that's not every single case.  They didn't do that in

10       all of the cases in twelve and thirteen, that's just not what

11       they testified to.

12              THE COURT:  Okay.  Well the best way to do that is

13       -- here's what I'm going to do.  I think it's -- I find that

14       the plaintiff has demonstrated through her argument today the

15       relevance, at least through 2010, for all the IA files that

16       she's asked for.

17              And I'm going to permit the plaintiff to go to the

18       City, or wherever they're housed, and make the copies,

19       pursuant to a confidentiality order, which I assume you have

20       in place, is that correct?  There's no issue on that?

21              MR. RYBECK:  Yes, there is.

22              MS. COOPER:  Yes, Your Honor.  We do already have

23       that, yes.

24              THE COURT:  All right.  So that's for 2008, 2009,

25       2010, all the way through the end of 2010.  And I'm no longer

1    going to require a sampling, because I think the plaintiffs'

2    arguments are well taken about, if a sampling then creates

3    problems on the expert report, unless the defendants were

4    prepared to agree that any sampling was a sufficient basis to

5    make any opinion of the expert.

6              Which is think is the argument you made, is that

7    correct, Ms. Cooper?

8              MS. COOPER:  Basically, Your Honor, yes.

9              THE COURT:  Okay.  Then we get to two thousand --

10   and I'm agreeing to go through -- I'm permitting you to go

11   through all of 2010, even if the termination, or the --

12   what --

13             MR. RYBECK:  Transfer in March of 2010.

14             MS. COOPER:  Transfer.

15             THE COURT:  So then we have 2011, twelve, thirteen.

16   So I'm also going to permit the plaintiff to go through 2011,

17   without prejudice to come back to me for 2012 and 2013,

18   because let's see how long it takes to get 2011.  I mean, if

19   they're very voluminous and detailed, and it's different than

20   what Ms. Cooper has in mind, maybe she doesn't even want 2012

21   and thirteen.  So in addition, I will give the parties a

22   opportunity when they come back to me, when you're there, to

23   call me, you know, whatever date you're going to set there,

24   see what it looks -- the 2012 and thirteen look like.

25             Mr. Rybeck, see how many files we're talking about.

Colloquy                                          35

1    I don't even know how many files we're talking about, right?

2                   MR. RYBECK:  It's approximately 400 a year.

3                   THE COURT:  Yes.  So how thick are they?  Are they

4    all one page ones?

5                   MR. RYBECK:  It depends on the allegation, Your

6    Honor.

7                   THE COURT:  All right.  So how many of them are two

8    pages, and how many of them have 50 pages in them?  That's the

9    issue.

10                  MR. RYBECK:  Yeah, I've just been in the room and

11   I've seen the giant stacks for one particular year, Your

12   Honor.

13                  MS. COOPER:  And, Your Honor, just in 2013, just so

14   we're clear, it's only January through May -- I mean, January

15   through the end of April.  So it's four months of 2013, it's

16   not an entire year.

17                  THE COURT:  Four months of 2013.

18                  MS. COOPER:  Thirteen, yes.

19                  MR. RYBECK:  The Police Department disbanded.

20                  MS. COOPER:  Right.  So there's none --

21                  THE COURT:  And the whole year of 2012.

22                  MS. COOPER:  Right.

23                  THE COURT:  And I indicated you could do 2008, 2009,

24   2010, and I'm permitting you to go through 2011.

25                  MS. COOPER:  Yes, Judge.

1          THE COURT:  Without prejudice to contact the Court

2     about whether I will permit you to do 2012 and 2013.  The

3     reason I say that is, the longer the temporal element -- the

4     further that date is from the date of the transfer, the Court

5     finds the relevance may weaken.

6          MS. COOPER:  Right.  But, Your Honor, it's not just

7     one transfer.  I think that's where it -- it wasn't just being

8     transferred out of IA, it was multiple transfers, multiple

9     different things.  In fact, in -- in Carmichael's case, we had

10    to grieve the hours that they were forcing him to make, which

11    violated the CDA, which he won that grievance.

12         So it's a continuing thing that happened, that's why

13    it's a continuing violation that's alleged.  But I will start

14    with this, and I have no issue with, you know, contacting the

15    Court when we're there.

16         THE COURT:  When you're there take a look at what

17    we're talking about for 2012, and the four-month period of

18    2013.  And then contact the Court with further argument about

19    why 2012 and 2013 would be relevant to any claim of the

20    plaintiff, in light of the fact that the plaintiffs were no

21    longer in the IA department.

22         MS. COOPER:  Sure.

23         THE COURT:  And I'll hear from Rybeck as well.  And

24    I'll determine not only whether I permit -- whether I find

25    those documents to be relevant under Rule 26, but also

Colloquy                                                     37

1    proportional discovery.

2              MR. RYBECK:  Thank you, Your Honor.

3              THE COURT:  Okay?  So when can they be made

4    available?  If they're just sitting in a room, you can get

5    that done before the end of -- let's say in the middle of

6    February?

7              MR. RYBECK:  Yeah.  We can make an appointment, Your

8    Honor.  That's fine.

9              MS. COOPER:  Is there any objection to the -- to the

10   bringing of laptops and scanners so we can scan them rather

11   than copy them?  Because I think for everybody's sake, using

12   electronic copies is far better than making paper copies.

13             MR. RYBECK:  Are you like looking to take pictures

14   of them or --

15             MS. COOPER:  No, scanning.  A scanner that's hooked

16   to a laptop.

17             MR. RYBECK:  Okay.  It's just --

18             MS. COOPER:  And it just scans it right in from --

19   into a PD --

20             THE COURT:  It's all subject to a confidentiality

21   order.  But whether it's copied or scanned --

22             MR. RYBECK:  The other thing is, there's audio

23   recordings, there could be video recordings, what about those?

24   That's an issue.

25             MS. COOPER:  Well I think generally, Your Honor, if

Colloquy                                    38

1   they are, we can make a list of something, if it's absolutely

2   necessary.  I'm not on a fishing expedition, it's more

3   about --

4          THE COURT:  Well you don't really need to see the

5   underlying evidence of the IA.  You need to see what was done.

6          MS. COOPER:  Well partially true, Your Honor, except

7   that when someone's charged with a termination offense, for

8   example, or a major discipline offense, which is an offense

9   that carries a charge of more than five days of either

10  suspension or a fine, those things have to be done in a

11  different manner than the ones that are less than that.

12         You can have -- you can have an Internal Affairs

13  investigation, you know, for -- where the person just gets a

14  written warning, for example.  That does not require the same

15  sort of investigation.

16         THE COURT:  Okay.  But it's -- it's a unique

17  argument.  It's different than your excessive force type cases

18  where you actually have to see what happened and what the end

19  result is.  Here, the argument, as I understand it from the

20  plaintiff is, you should have interviewed witnesses and

21  witnesses weren't interviewed.  And we complained about that.

22  We were documenting and pushing through these IA complaints

23  without the requisite investigation that's required.  That's

24  the general argument, correct?

25         MS. COOPER:  Sort of, yes.  But, in fact, in one

Colloquy                                          39

1   sergeant's case in particular that I handled the appeal, it

2   was a three or four day trial before Judge Orlando.  So there

3   is -- it's --

4          THE COURT:  But what difference does it make what

5   happens before Judge Orlando?  Your argument is that your

6   client complained because they were pushing under the rug

7   these IA investigations.

8          MS. COOPER:  Well not just pushing them under the --

9   they would charge an officer without doing the investigation

10  that's required.  In the investigative file there should be

11  something like a chronological list --

12         THE COURT:  Exactly.

13         MS. COOPER:  Yes.  And there should be an

14  investigative memorandum that's done that then substantiates

15  how the charges are preferred, or not, against an officer.

16         THE COURT:  So if there's a tape recording of a CI,

17  or a witness --

18         MS. COOPER:  Yes.

19         THE COURT:  -- you don't need to listen to the tape

20  recording.

21         MS. COOPER:  I'm not going to --

22         THE COURT:  You just mark there is a tape recording

23  in the file.

24         MS. COOPER:  Correct.

25         THE COURT:  That's what I'm getting at.

Colloquy                                              40

1                MS. COOPER:  Yes.  Absolutely.

2                THE COURT:  So you don't need to make copies of the

3    video, or the recording, just a notation that there was one in

4    the file.

5                MS. COOPER:  Correct.  That's exactly right.

6                THE COURT:  All right.  So we're all in agreement on

7    that.

8                MR. RYBECK:  Thank you, Your Honor.

9                THE COURT:  All right.  So what about the scanning

10   then, any objection?

11               MR. RYBECK:  I don't have any issue with scanning

12   them.  There just needs to be somebody present during this

13   period when Ms. Cooper's in IA.

14               THE COURT:  Okay.

15               MR. RYBECK:  And we request that it be done during

16   business hours.

17               MS. COOPER:  Absolutely.

18               THE COURT:  No issue on that.

19               MR. RYBECK:  I don't think Internal Affairs work --

20   they work banker's hours, I think.

21               THE COURT:  Well for the sake of all counsel having

22   also a regular life besides a lawyer life, do it during the

23   business hours Monday through Friday.  Okay?

24               MR. RYBECK:  We'll coordinate that with plaintiff.

25               THE COURT:  All right.  And then if it turns out

1      it's going to be a lot longer than you thought, because I

2      think Ms. Cooper you said two, three days max, you'll advise

3      the Court.

4              MS. COOPER:  Yeah.  If the -- if the testimony of

5      the other officers, but if it turns out something different,

6      I'm more than happy to contact the Court.

7              THE COURT:  All right.  So we're clear, and I hope I

8      get it right in my order, we're going to permit that the IA

9      files be provided to the plaintiff for scanning and copying,

10     subject to an agreed upon confidentiality order --

11             MR. RYBECK:  We already have a confidentiality.

12             MS. COOPER:  Yes.

13             THE COURT:  Yes.  So it's subject to that.  Also,

14     I'm making no ruling on whether these documents are

15     admissible.  They can be, however, be served -- submitted to

16     plaintiffs' expert for purposes of the expert report.

17             Ninety-seven files in 2008, 100 files, I think -- a

18     hundred and some files in 2009.  Do we have the exact number?

19             MS. COOPER:  I didn't bring the spreadsheet, Your

20     Honor, but it was in the letter of April the 17th to Mr.

21     Eastlack.

22             THE COURT:  And you say it's in my opinion, right?

23     Do I have it in the opinion?

24             MS. COOPER:  You just said it was narrow.  Because,

25     honestly, the -- I didn't attach the Excel spreadsheet copies,

1   because they're confidential, so I didn't want to have them

2   attached.  But it is -- it's a narrow number in there.

3          THE COURT:  Okay.

4          MS. COOPER:  There was an attachment that delineated

5   what -- which files.

6          THE COURT:  So files for 2010 and 2011, not 2012,

7   and not 2013, without prejudice to the plaintiff's right to

8   contact the Court upon getting into the IA room and advising

9   whether there will be a renewed request for the 2012, 2013.

10  Okay?

11         MR. RYBECK:  Thank you, Your Honor.

12         MS. COOPER:  Thank you, Your Honor.

13         THE COURT:  And the copies, once you make them,

14  you'll make them available to defense.

15         MS. COOPER:  Absolutely.  Yes.

16         THE COURT:  Okay.  That takes care of item two in

17  your letter.  The index cards, that's item three in your

18  letter.  The Court notes that the defendants already assert

19  that they produced all the versions of the index cards in

20  their possession.

21         And in light of that, the Court doesn't see a basis

22  to make any further ruling in this matter.

23         MS. COOPER:  Your Honor, if I could?  I tried to

24  explain it as succinctly as possible in my papers, but the

25  index card, as I've indicated to Your Honor, is something was

1    required under the Attorney General Guidelines so that each

2    officer's charges or discipline throughout his or her career

3    is listed in one place.  As time went on it changed from an

4    actual paper index card to a computerized database, or an

5    Excel spreadsheet.

6              THE COURT:  Let me just cut you off, only because I

7    already ruled on your arguments.

8              MS. COOPER:  Okay.  But, Judge, what I'm trying to

9    get at is, they indicate that they've produced them, and

10   you're satisfied with that.  However, I showed in my papers

11   that they didn't, and there's no -- there's seven instead of

12   eight that -- and Your Honor notes that in the opinion.  And

13   in addition to that, there's nothing that says which one is

14   actually the most up-to-date and current.

15             I mean, if they want to stipulate to it then --

16             THE COURT:  I considered your arguments.  And I

17   indicated that the -- that defendant has a certification that

18   every version of the IA index cards have been produced.  So if

19   you still believe that there's something that's been withheld,

20   or you want a certification, then submit that by way of your

21   request for admissions.

22             MS. COOPER:  Sure.

23             THE COURT:  All right.  But I've ruled on this

24   issue.

25             And of course, if it turns out that something gets

Colloquy                                                    44

1    produced that the certification's wrong, you'll have your

2    rights under Rule 37, and/or 36.

3              MS. COOPER:  Your Honor, in the event that I served

4    the request for admissions, as Your Honor's indicated, with

5    respect to the index cards, because obviously they are four of

6    the defendants and then my two, so that's six, am I permitted

7    to then serve it with -- in the event that there's a denial

8    that they attach whatever correct document is to replace that?

9              THE COURT:  Well you can serve the request for

10   admissions consistent with what the Rules permit.

11             MS. COOPER:  Okay.

12             THE COURT:  All right.  So I took care of items

13   number five and number six in your letter.  So that leaves us

14   to the request to re-depose the defendants due to subsequently

15   produced documents.  And the Court notes, really that request

16   might have been mentioned briefly in your motion, but not

17   articulated who you wanted to depose, and why, and how, and

18   what documents you've been produced that warrants

19   re-deposition.

20             MS. COOPER:  Well, Your Honor, I think I did say in

21   there that the defendants were ordered to produce --

22   re-produce the documents that were not correct and supplement

23   them prior to the depositions of the witnesses, and they did

24   not do that.

25             I didn't even have the time and opportunity, and in

1   fact it's documented in prior letters to the Court, to even go

2   through all of those documents prior to deposing them.   Some

3   of the documents were actually produced during the depositions

4   of those witnesses.   So I had no opportunity to review them

5   whatsoever.

6           So I feel that that is prejudicial.   But most

7   significantly, I did not get the deposition of Chief Thomson,

8   because that was noticed, then it had to be changed, then he

9   wasn't available.   And that has never been addressed since

10  last year.   And then the motion was filed about the rest of

11  the discovery.   And so he is definitely still -- I need that

12  deposition.   And there was -- well, the whole issue with

13  Cuevas, he refused to answer questions at his deposition.   I

14  don't have his deposition transcript here in front of me.

15          But I perhaps can file a separate motion on that.

16          THE COURT:   Well I'm done with the discovery in this

17  case, as I see it, other than what I've just permitted today.

18  So -- and whatever I ordered previously.   So when you took his

19  deposition -- when was that?

20          MS. COOPER:   It was last -- right before the motion

21  was filed.

22          THE COURT:   So I'm -- I'm -- you know, that's not

23  even in your letter, is it?

24          MS. COOPER:   In this particular letter?   Yes.   It

25  says the re-deposing of the defendants.

1          THE COURT:  So you articulate defendant Thomas --

2          MS. COOPER:  Thomson.

3          THE COURT:  -- Thomson.

4          MS. COOPER:  I just said I never got the opportunity

5   to take his deposition, Your Honor.  Because it was changed

6   and moved, and then he was not available.

7          THE COURT:  Okay.  Well I'm not going to permit on

8   this record any re-deposition of defendant Cuevas.

9          MS. COOPER:  Cuevas.

10         THE COURT:  So discovery on the depositions are

11  done.  You're entitled to serve your admissions.  You're

12  entitled to get the IAs that I just permitted.

13         And you'll get a certification from Mr. Rybeck on

14  the 26(e) issue.  And we will be done, and we'll have a date

15  for your expert reports.  And I would like you to be able to

16  articulate to me, once you get the IA files, when you think

17  you'll be in a position to serve your expert reports.

18         MS. COOPER:  Sure.

19         THE COURT:  But I think you need to make sure that

20  that production goes in accordance with how you think it's

21  going to go.

22         MS. COOPER:  Sure.

23         THE COURT:  So that leaves your request, as I see

24  it, to depose someone who's never been deposed.

25         MS. COOPER:  Well, yes, even though I had noticed

Colloquy                                          47

1    it.

2              THE COURT:  And what is the City's position on that?

3              MR. RYBECK:  Judge, I mean --

4              THE COURT:  I mean, was it scheduled before the

5    close of discovery, and was it canceled by the City?

6              MR. RYBECK:  I -- Mr. -- it's now Judge Eastlack,

7    was handling the case at that time, so I was not privy to the

8    -- I know it was scheduled and it was pushed off.  The reason,

9    I don't know.  I don't think Mr. Teris knows.  I wasn't -- I

10   was not part of the case at that point.

11             MR. TERIS:  I believe that Ms. Cooper may have

12   delayed it once.  And then it may have been delayed by Mr.

13   Eastlack after that.  But I'm not sure --

14             MR. RYBECK:  But it was -- it just never happened,

15   Your Honor, and then that's essentially --

16             THE COURT:  But it was scheduled prior to the end

17   of --

18             MR. RYBECK:  Correct.

19             THE COURT:  All right.  So I'm going to permit that

20   deposition.  And it should be done by February the 28th.

21   Okay?

22             MS. COOPER:  Your Honor, if I could just on that

23   issue.  I would like to be able to see some of the IA files

24   first in order to be able to get that deposition.  That's why

25   the --

1            THE COURT:  That's why you're supposed to do them --

2    the IA files by the middle of February.

3            MS. COOPER:  Right.

4            THE COURT:  And then you schedule the deposition by

5    the end of February.

6            MS. COOPER:  Okay.

7            THE COURT:  So the IA files, I want that, if at all

8    possible, to be done the first week of February, but no later

9    than February the 15th.

10           MR. RYBECK:  Certainly, Your Honor.

11           THE COURT:  I mean, they're there, ready to go,

12   right?

13           MR. RYBECK:  Yep.

14           THE COURT:  And then the -- is it Chief Thomson?

15           MR. RYBECK:  Yes, Your Honor.

16           MS. COOPER:  Yes.

17           THE COURT:  Chief Thomson can be deposed no later

18   than February 28th.  We will have a phone call in early March,

19   at which time I will set dates for expert discovery.  What

20   kind of experts do you anticipate having?

21           MS. COOPER:  We have a police policies and

22   procedures expert.  We've already produced an economic expert.

23           THE COURT:  So that's it?  Just one more expert?

24           MS. COOPER:  I believe so, Your Honor.

25           THE COURT:  And you'll need this deposition and

Colloquy                                          49

 1    you'll need the IA files.

 2                MS. COOPER:  Correct.

 3                THE COURT:  So I'm thinking that you might be in a

 4    position to have that report by the end of March, but check

 5    with your expert.  And when I have the phone call, you let me

 6    know.

 7                MS. COOPER:  Sure.

 8                THE COURT:  Okay.  Are you having a rebuttal expert?

 9                MR. RYBECK:  Yes, Your Honor.

10                THE COURT:  So you'll need 30 days after the service

11    of the plaintiffs' report.

12                MR. RYBECK:  Yes, Your Honor.

13                THE COURT:  Okay.  And then expert depositions.

14                MR. RYBECK:  Yes, Your Honor.

15                THE COURT:  And then dispositive motions.  Okay.

16                MR. RYBECK:  Judge, I just want to clarify.  The dep

17    of Chief Thomson is going to be for the City case only,

18    correct?

19                THE COURT:  That's correct.

20                MS. COOPER:  Yes.

21                MR. RYBECK:  Okay.

22                THE COURT:  Do you agree, Ms. Cooper?

23                MS. COOPER:  Yes.

24                THE COURT:  Yes.  Okay.  Anything else then for

25    today?  Considering we got a lot done.

1          MR. RYBECK:  Nothing from the City, Your Honor.

2          THE COURT:  Ms. Cooper, anything further?

3          MS. COOPER:  Nothing more, Your Honor.

4          THE COURT:  Mr. Teris?

5          MR. TERIS:  Nothing more, Your Honor.

6          THE COURT:  All right.  Everyone have a nice

7    afternoon.  We are adjourned.

8        (Proceedings concluded at 3:56 p.m. )

9                        * * * * *

10                C E R T I F I C A T I O N

11   I, Josette Jones, court approved transcriber, certify that the

12   foregoing is a correct transcript from the official digital

13   audio recording of the proceedings in the above-entitled

14   matter.

15

16   ----------------------------          --------------------

17   JOSETTE JONES                          DATE

18   DIANA DOMAN TRANSCRIBING, LLC