IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

ANTHONY CARMICHAEL,

                    Plaintiff,

        v.

JOHN SCOTT THOMSON, et al.,

                    Defendants.

HONORABLE JEROME B. SIMANDLE

Civil No. 14-3323
    (JBS-AMD)

**OPINION**

APPEARANCES:

Cheryl L. Cooper, Esq.
LAW OFFICES OF CHERYL L. COOPER
342 Egg Harbor Road, Suite 1-A
Sewell, NJ 08080
     -and-
Paul D. Brandes, Esq.
VILLARI BRANDES & GIANNONE, PC
8 Tower Bridge
161 Washington Street, Suite 400
Conshohocken, PA 19428
     Attorneys for Plaintiff

Christine O'Hearn, Esq.
BROWN & CONNERY, LLP
360 Haddon Avenue
Westmont, NJ 08108
     Attorney for County Defendants

Daniel Edward Rybeck, Esq.
John C. Eastlack, Jr., Esq.
Lilia Londar, Esq.
WEIR & PARTNERS
250 Fries Mill Road, 2nd Floor
Turnersville, NJ 08012
     Attorneys for City Defendants

**SIMANDLE,** District Judge:

## I.  INTRODUCTION

Plaintiff Anthony Carmichael (hereinafter, "Plaintiff") brought this employment action against Defendants City of Camden, County of Camden, and John Scott Thomson, Orlando Cuevas, Michael Lynch, Louis Vega, Joseph Wysocki, and J.L. Williams, in their official capacities as employees of the City of Camden, the County of Camden, or both (collectively, "Defendants"). Plaintiff, formerly a Lieutenant in the Camden City Police Department and now a Captain in the Camden County Police Department, generally alleges that Defendants engaged in retaliation against him based on protected activity in violation of the New Jersey Conscientious Employee Protection Act, the New Jersey Law Against Discrimination ("NJLAD"), the New Jersey State Constitution, the First Amendment of the United States Constitution, and 42 U.S.C. § 1983 and/or race discrimination in violation of NJLAD and § 1983. This Opinion addresses only Plaintiff's claims against County Defendants for allegedly discriminating and/or retaliating against Plaintiff by failing to promote him to Captain during or soon after the formation of the Camden County Police Department in May 2013 and does not address any of Plaintiff's claims against City Defendants.[1]

_____

[1] The Amended Complaint contains two distinct components:

This matter comes before the Court on County Defendants'
motions for summary judgment on Counts Eleven, Twelve, Thirteen,
and Fifteen of the First Amended Complaint. (Motion for Summary
Judgment (hereinafter "County Defs.' Mot.") [Docket Item 63].)
County Defendants also seek to strike the Declaration of Darnell
Hardwick and exhibits in Plaintiff's papers submitted in

---

(1)    Counts One, Two, Three, Four, Six, Seven, Eight, and
       Nine allege discrimination and/or retaliation by the
       City of Camden and Chief John Scott Thomson, Deputy Chief
       Orlando Cuevas, Deputy Chief Michael Lynch, Louis Vega,
       Joseph Wysocki, and J.L. Williams in their capacities as
       former employees of the City of Camden and City of Camden
       Police Department (collectively, "the City Defendants"),
       for transferring Plaintiff out of his position as
       "acting Captain" of the Camden City Police Internal
       Affairs, forcing him to work midnight and work split
       shifts, assigning him to supervise those identified by
       the administration as "problem" officers, requiring him
       to attend meetings without overtime compensation,
       assigning him a schedule where he was the only officer
       in the Camden City Police Department forced to work every
       weekend, and unfairly writing up and/or disciplining him
       after he objected to the City Defendants' instructions
       to violate the Attorney General Guidelines; and

(2)    Counts Eleven, Twelve, Thirteen, and Fifteen allege
       discrimination and/or retaliation by Defendants County
       of Camden, County Police Chief Thomson, Deputy Chief
       Cuevas, Deputy Chief Lynch, and Louis Vega, in their
       capacity as employees of the County of Camden and County
       of Camden Police Department (collectively, "County
       Defendants"), for skipping over Plaintiff and failing to
       promote him to Captain sooner.

(Amended Complaint [Docket Item 26].) The Court previously
dismissed Counts Five, Ten, and Fourteen for failure to state a
claim upon which relief may be granted, and those claims are not
part of the operative Amended Complaint. (See Opinion [Docket Item
20], Mar. 6, 2015 at 24-28; Order [Docket Item 21], Mar. 6, 2015,
1-2.)

opposition to County Defendants' motion for summary judgment. (Motion to Strike [Docket Item 138].)

The principal issues to be decided are, discovery having been concluded, whether there are genuine issues of material fact from which, giving all reasonable inferences to Plaintiff, a jury could reasonably find that County Defendants failed to promote Plaintiff to the rank of Captain in the Camden County Police Department due to race discrimination or due to retaliation in violation of his First Amendment rights. For the reasons discussed below, the motion for summary judgment will be granted in part and denied in part.

## II. Defendants' Motion to Strike Hardwick Declaration and Exhibits

As a preliminary matter, the County Defendants' motion to strike the Declaration of Darnell Hardwick and exhibits in Plaintiff's papers submitted in opposition to County Defendants' motion for summary judgment, (Motion to Strike [Docket Item 138]), shall be granted in part and denied in part.

Plaintiff Carmichael includes a Declaration by Darnell Hardwick [Docket Item 75-8] plus numerous documents attached thereto as Exs. 1-27. Mr. Hardwick is President of the Camden County NAACP branch and has been a Civil Service employee since 1981 and a union shop steward for Local 1032 of the Communications Workers of America (Hardwick Dec. ¶ 1), but he

has had no personal involvement with the matters in dispute in this case other than in reviewing and gathering documents and holding meetings and "hav[ing] personal interaction with" Plaintiff and other Camden City Police Dept. union officials and members of the former Camden City Police Dept., in his capacity as President of the Camden County NAACP. (Id. ¶¶ 1-3.) He has reviewed discovery and certifications of witnesses in this case and argues in his declaration why he believes some statements are false or incredible or contradicted by other statements or documents he has gathered or reviewed. He also expresses numerous opinions that the processes employed for recruiting and hiring officers and superior officers, as well as for Intergovernmental Transfers, did not comport with the Camden County Defendants' various constitutional, statutory, and New Jersey Civil Service requirements.

The Camden County Defendants seek to strike the Hardwick Declaration and its attached documents in their entirety on two grounds: (1) That Plaintiff failed to identify Mr. Hardwick in his Rule 26 pretrial disclosures as a person with knowledge or information related to the County Defendants and Plaintiff produced none of the attached documents in discovery, which ended on March 31, 2016 as to the Camden County Defendants (extended to April 8, 2016 for the limited purpose of conducting the deposition of plaintiff); and (2) that the Hardwick

Declaration violates Fed. R. Civ. P. 56(c) and L. Civ. R. 7.1 because it is fraught with argument and opinion. While opinion testimony of an expert witness is permitted in an affidavit opposing summary judgment, there is no dispute that Plaintiff does not identify Mr. Hardwick as an expert nor does Plaintiff seek to qualify him as an expert under Rule 702, Fed. R. Ev.

Plaintiff concedes that he did not identify Mr. Hardwick as a person with knowledge as to Carmichael's claims against the County Defendants, but that he identified Hardwick as a person with relevant knowledge as to the Camden City Defendants, some of whom, in their new official capacities, are also sued as Camden County Defendants. [P. Opp., Docket Item 158 at 1-2.] In fact, as Defendants point out, the sole mention of Mr. Hardwick during the entire time of factual discovery in this case was contained in Plaintiff's Rule 26 Disclosures, dated and served November 13, 2015, which stated in relevant part:

> The following have knowledge and/or information regarding illegal practices by City of Camden, the City of Camden Police Department with respect [to] discipline and/or harassment and/or discrimination.
> . . .
> Darnell Hadwick [sic] -- Camden NAACP.

[Pl. Rule 26 Disclosures at p.5, attached to Certification of Benjamin S. Teris, Esq. at Ex. A (Docket Item 138-1)]. The Court agrees with Defendant that nothing in Plaintiff's Rule 26 Disclosures placed the Camden County Defendants on notice that

Mr. Hardwick had knowledge about the Camden County Defendants related to this case. Furthermore, if during the course of discovery Plaintiff wished to modify his description of Mr. Hardwick's knowledge, Plaintiff had the duty to supplement his disclosures in a timely fashion and did not do so. Also, Plaintiff had the duty to timely produce all relevant documents required by Rule 26(a)(1), including those attached to the new Hardwick Declaration, none of which were produced in discovery in this case according to Camden County's attorney Mr. Teris (see Teris. Cert. at¶ 14.)

Plaintiff asserts that his counsel's use of the Hardwick Declaration and documents in opposition to the County Defendants' present summary judgment motion on December 30, 2017, which was 20-plus months after the April 18, 2016, conclusion of factual discovery on the claims against the Camden County Defendants, was not as late as it appears. Plaintiff points out that his counsel had earlier provided the Court and the County Defendants with the Hardwick Declaration and attached documents on February 1, 2017, after the Court had found that Plaintiff had defaulted on his opportunity to oppose the present motion for summary judgment. Plaintiff sought reconsideration of this Court's order denying a further extension of his deadline for submitting opposition and attached the Hardwick Declaration on February 1, 2017 (it is dated January 24, 2017) [Docket Item

75-3], as an example of reasons why Plaintiff had substantial opposition and should be given a last chance to put it forward notwithstanding his counsel's tardiness. [See Docket Item 75-51]. The Court did not parse the specific contours of the Hardwick Declaration and its attachments nor of the other explanatory materials, leaving that until the actual summary judgment phase. The Court granted reconsideration as a matter of compassion in light of Plaintiff's counsel's medical or other personal needs, not because the Hardwick Declaration was particularly compelling. [Order filed Dec. 15, 2017 (Docket Item 123)].

Be that as it may, Plaintiff's introduction of the Hardwick Declaration on February 1, 2017, was itself untimely by almost ten months after the close of Camden County Defendants discovery on April 8, 2016, and it came five months after the Camden County Defendants filed for summary judgment. Indeed, despite naming Mr. Hardwick as a person with knowledge as to discrimination by the Camden City Policy Department two years earlier, Plaintiff's attorney did not even speak with him until January 5, 2017. (Docket Item 158 at 4, n.5).

The consequence of failing to provide facts and documents in discovery, when required in Pretrial Disclosures or discovery, is that such evidence cannot be used in opposition to summary judgment. Rule 37(c)(1), Fed. R. Civ. P. makes this

obligation clear, providing: "If a party fails to provide information or identify a witness as required by Rule 26(a) or (e) . . . the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or harmless." The rules impose serious continuing obligations of disclosure of a party's case so that discovery can be focused and this expensive and time-consuming aspect of litigation can be focused and brought to a reasonable and fair conclusion. The exclusion of such evidence is meant to be "self-executing" according to the Advisory Committee Note accompanying enactment of the current version of Rule 37(c) in 1993. According to the Advisory Committee, "[t]his automatic sanction provides a strong inducement for disclosure of material that the disclosing party would expect to use as evidence, whether at a trial, at a hearing or on a motion, such as one under Rule 56." Yet Plaintiff's counsel here nonchalantly downplays this obligation by arguing that the Camden Defendants could have questioned Plaintiff Carmichael at deposition about his knowledge of any documents or information possessed by Mr. Hardwick. [Pl. Opp. (Docket Item 158) at 3-4]. This is a bizarre suggestion given that the Camden Defendants took Carmichael's deposition by April 8, 2016, and Plaintiff's counsel herself didn't bother to even speak with Mr. Hardwick about this case, according to her

letter-brief, until January 5, 2017. [Id. at 4, n.5]. Plaintiff must fulfill discovery obligations by providing timely and complete discovery, not be expecting opposing counsel to go on a treasure hunt for the hidden contentions and facts.

The use of Mr. Hardwick as a witness against the County Defendants, as well as the use of the new records he has attached, is precluded unless Plaintiff shows that the failure to identify the witness and offer his opinions and documents was "substantially justified or harmless." Rule 37(c)(1), Fed. R. Civ. P. Plaintiff's failure here was neither substantially justified or harmless. Plaintiff's counsel apparently did not investigate her own client's claim until after discovery was over; Plaintiff took no discovery and did not speak with Mr. Hardwick or review the documents he collected, despite knowing of his existence, until almost three years after filing the Complaint, while the County Defendants diligently pursued discovery and timely filed their motion for summary judgment. The County Defendants have been harmed by these delays and false starts, when they have a right to rely upon the completeness and integrity of Plaintiff's disclosures as they formulated their summary judgment motion in 2016. They have also been prejudiced by having to deal with this issue of Plaintiff's continuing delays through several additional briefings and letters to the Court. While exclusion of the unidentified witness Mr. Hardwick

and the contents of his opinions is fully justified, the Court reaches a different conclusion regarding the Hardwick documents that come from the public record; such documents were equally available to the County Defendants and may shed important light on the issue of the County's delay in promoting Plaintiff Carmichael to the rank of Captain.

The County's witnesses are in a position to address these documents, if necessary, and they shall not be excluded on the ground of Plaintiff's late production. As public documents, the items attached to the Hardwick Declaration as Exs. 2, 3, 4, 5, 6, 7, 9, 10, 12, 13, 14, 15, 16, 17, 19, 20, 22, 23, 24, 25, and 27 appear to come from public sources, including the County itself.

The Court has likewise considered the prudential factors for exclusion of evidence for discovery failures articulated in Nicholas v. Pennsylvania State Univ., 227 F.3d 133, 148 (3d Cir. 2000) (upholding preclusion of evidence of future lost earnings where plaintiff failed to provide discovery concerning post-termination employment). The Nicholas case indicates four factors to consider, namely: (1) the prejudice or surprise of the party against whom the evidence would have been admitted; (2) the ability of the party to cure that prejudice; (3) the extent to which allowing the evidence would disrupt the orderly or efficient trial of the case; and (4) bad faith or willfulness

in failing to comply with a court order or discovery obligation. Nicholas, 227 F.3d at 148. Additionally, the Court of Appeals in Konstantopoulos v. Westvaco Corp., 112 F.3d 710, 719 (3d Cir. 1997), has indicated two additional considerations: (5) the importance of the excluded testimony; and (6) the parties explanation for failing to disclose. The Court finds that (1) the County Defendants are prejudiced and surprised – they had filed their summary judgment motion, obviously a heavy-duty task, and awaited the tardy opposition of Plaintiff, only to learn months later of this undisclosed witness and his investigation; (2) Defendants have no ability to cure the prejudice if Mr. Hardwick were permitted as a witness discussing his investigation and findings, requiring reopening of discovery long since closed and eventually redrafting of a second summary judgment motion; on the other hand, the County has the capacity to assimilate the documents under its pretrial planning, and the County could be given time to identify any rebuttal documents; (3) disruption of trial is not a concern because the case is not at trial; (4) Plaintiff's counsel's performance has been sporadic and troubling in this case, exhibiting a tendency to blame defense counsel for litigation problems of her own making; (5) the importance of the excluded testimony of Mr. Hardwick is not great, assuming Plaintiff has identified other witnesses with knowledge of the alleged events; and (6) Plaintiff's

counsel's excuses, as discussed above, are less than compelling; while accommodation is given to Plaintiff's counsel's health challenges, including the ability to even present opposition to this summary judgment motion, the fundamental demands of litigating a case counsel has brought and pursues over three years cannot be discarded like mere suggestions. On balance, the provision for automatic exclusion of Mr. Hardwick as a witness in Plaintiff's case against the County Defendants is well-warranted, while the exclusion of the public documents on grounds of their late production would not be warranted. (The Court does not determine their admissibility into evidence at this time.)

Similarly, Defendants' objection to the form of Mr. Hardwick's Declaration is also well taken.

The nature of Mr. Hardwick's testimony is also objectionable. Plaintiff seeks to rely on many purported expert opinions, arguments, or legal conclusions by Mr. Hardwick, who has no academic background or experience in law enforcement and who has not been certified as an expert witness in this case. Cf. Yazujian v. PetSmart, 729 F. App'x 213, 215–16 (3d Cir. 2018) (holding that the district court did not abuse its discretion in declining to permit witness to testify as an expert in retail safety where the proposed witness had no

relevant academic background, relevant training, or relevant work experience, other than as a stock clerk).

The Hardwick Declaration expresses opinions on police officer qualifications, police personnel records, Civil Service Commission records and rules, and the credibility of other witnesses' statements. Not only are such opinions regarding specialized matters of personnel rules and practices inadmissible because Mr. Hardwick has not been identified as an expert under Rule 702, but they also may not be presented, as many are here, as legal arguments and conclusions in an affidavit or declaration pursuant to Local Civil Rule 7.2(a), which provides in relevant part:

> [D]eclarations . . . shall be restricted to statements of fact within the personal knowledge of the signatory. Argument of the facts and the law shall not be contained in such documents. Legal arguments and summations in such documents will be disregarded by the Court and may subject the signatory to appropriate censure, sanctions or both.

L. CIV. R. 7.2(a). A few examples of improper opinions and legal conclusions in the Hardwick Declaration suffice to prove the point:

- Paragraph 5: "The Certification of Defendant Michael Lynch, from the Carmichael matter contains numerous inaccurate statements which are verified by the documents attached to my Declaration."

- Paragraph 6: "Some of the representations of by the County Defendants in both the <u>Carmichael</u> and <u>Sosinavage</u> matters also are not accurate or truthful and are proven inaccurate through the documents I have provided to Plaintiffs' counsel in preparing my declaration."

- Paragraph 9: "When the County wanted to establish the CCMPD, in order to avoid the Civil Service Rules for hiring and promotions, they were forced to apply to the CSC for a 'pilot program.'"

- Paragraph 13: "However, the CSC Pilot Program Order does contain a provision which prohibited 'rank jumping,' and included an example of prohibited promotions."

- Paragraph 31: "This is consistent with the provisions of N.J.A.C. 4A:4-7.1(A)(b)."

- Paragraph 35: "The representation by Mr. Goldberg, to the Court in that matter was inaccurate."

- Paragraph 62: "Neither of these two (2) individuals were PTC certified."

- Paragraph 64: "Upon receipt of these documents, I reviewed the content and determined that all 8 of these applicants were <u>not</u> PTC certified at the time of hire; had no prior police experience; and were all civilians, forcing the CCMPD to pay for and have these individuals trained at the Police Academy. According to my review, each of these eight (8) individuals did not meet the requirements for hire under the Pilot Program."

- Paragraph 65: "Each of these 8 individuals were younger than 40 years of age, and none were PTC certified. These individuals were hired by CCMPD over former Camden City Police Officers who had applied for employment with

the CCMPD prior to the dissolution of the Camden Police Department, and during the Pilot Program."

- Paragraph 71: "Each of the three (3) above officers identified above, Sandrock, Kunkle, and DeSantis, were and are younger than Plaintiff Sosinavage, and less qualified than Sosinavage."

(Hardwick Declaration [Docket Item 75-8].) In accordance with Local Civil Rule 7.2(a) and Federal Rule of Civil Procedure 56(e) (requiring that a declaration filed in connection with a motion for summary judgment must "be made on personal knowledge"), the Court will exercise its discretion to disregard all expert opinion, argument, or legal conclusions in the Hardwick Declaration.

An appropriate order will be entered granting the Camden County Defendants' motion to strike Mr. Hardwick's declaration in opposition to their summary judgment motion, but denying the motion to strike the documents consisting of public records attached to the Hardwick Declaration.

## III. BACKGROUND[2]

The motions pending before the Court were brought by County Defendants and do not address any of the allegations against

---

[2] For purposes of the instant motion and pursuant to Local Civil Rule 56.1, the Court looks to the Amended Complaint [Docket Item 26] when appropriate, County Defendants' Statement of Undisputed Material Facts [Docket Item 63-1], Plaintiff's Response to Statement of Material Facts [Docket Item 128], and public documents attached to the Hardwick Declaration to the extent determined in

City Defendants. (County Defendants' Brief in Support of Motion
for Summary Judgment (hereinafter "County Br.") [Docket Item
63-2], 8 n.1.) Accordingly, the Court recounts only those
portions of the factual the procedural history relevant to
Plaintiff's failure-to-promote claims against County Defendants.

### A.  Factual Background

#### 1.  Plaintiff Anthony Carmichael

Plaintiff is an African-American male. (Deposition of
Anthony Carmichael (hereinafter "Pl.'s Dep.") [Docket Item
63-12], 17:2-4; 88:11-13.) He was hired by the Camden City
Police Department in 1994 and promoted to Lieutenant in 2003.
(Pl.'s Dep. [Docket Item 63-12], 12:22 14:19-21;
Intergovernmental Transfer Agreement [Docket Item 63-4].) In
July 2008, Plaintiff was assigned to Internal Affairs as an
"acting Captain," but was subsequently transferred out of
Internal Affairs in or around April 2009 and was ultimately
reassigned to Special Operations as a Lieutenant. (Amended
Complaint [Docket Item 26], ¶¶ 21, 104, 108-09, 111-12.) On
January 30, 2013, Plaintiff applied to become a Captain in the
soon-to-be-formed Camden County Police Department, discussed
infra. (Employment Application [Docket Item 63-14], 10 on the
docket.) On April 15, 2013, Plaintiff was transferred to the

_____

Part II, above. Where not otherwise noted, the facts in this
section are undisputed by the parties.

Camden County Police Department as a Lieutenant.
(Intergovernmental Transfer Agreement [Docket Item 63-4], 1;
Pl.'s Dep. [Docket Item 63-12], 17:2-4.) Plaintiff's salary when
he left the City Police Department was $101,545; upon his
transfer, his salary was $104,070. (Intergovernmental Transfer
Agreement [Docket Item 63-4], 1-2.)

On March 18, 2018, Plaintiff was promoted to Captain and
received a pay raise. (County Letter Brief [Docket Item 162],
1.) According to the new Civil Service List of Eligibles,
Plaintiff would have ranked seventh had he not been promoted
prior to issuance of the list. (Id.)

> 2. Formation of the Camden County Police Department
> and the Pilot Program

On August 25, 2011, the City of Camden, the County of
Camden, and the State of New Jersey entered into a Memorandum of
Understanding, whereby the County of Camden agreed to create a
Camden County Police Department that would offer police services
to municipalities within Camden County, including the City of
Camden. (See Memorandum of Understanding [Docket Item 63-5].)
The Camden County Board of Chosen Freeholders subsequently
authorized the creation of the County Police Department pursuant
to N.J.S.A. 40A:14-106. (See Camden County Resolution [Docket
Item 63-6].)

On December 27, 2012, the New Jersey Civil Service Commission approved the City of Camden's proposed plan for laying off all uniformed police officers in the Camden City Police Department by April 30, 2013. (See Letter [Docket Item 63-7], Dec. 27, 2012, 1.) This layoff plan was approved by the Camden City Council on January 4, 2013. (See Camden City Resolution [Docket Item 63-8].) On April 30, 2013, all Camden City Police Officers were officially laid off and the Camden City Police Department was dissolved. (See id. at 2.) The Camden County Police Department assumed all police functions in the City of Camden the following day, on May 1, 2013. (See Police Services Agreement [Docket Item 63-9].)

By civil service order, the Camden County Police Department established a pilot program for filling positions (hereinafter, the "Pilot Program"). (See Civil Service Order [Docket Item 63-10], 15.) The Pilot Program required that candidates for promotions within the County Department "satisfy the minimum requirements for the promotional title." (Id.) Job specifications for County Police Captain positions required candidates to have at least three years of "supervisory police experience" and a high-school diploma. (County Police Captain Job Specification [Docket Item 63-16], 1-2.) During the Pilot Program, which lasted from November 1, 2012 to October 31, 2013, Defendants Thomson and Lynch made final recommendations for

hiring on all positions and promotions within the Camden County
Police Department, subject to formal approval by the Camden
County Board of Chosen Freeholders. (See Civil Service Order
[Docket Item 63-10], 3; Lynch Cert. [Docket Item 63-11], ¶ 8;
Thomson Cert. [Docket Item 63-17], ¶ 6.)

### 3. Camden County Police Captain Promotions

Following the formation of the Camden County Police
Department, there were three separate programs for promotions to
Camden County Police Captain: (1) promotions during the Pilot
Program; (2) provisional promotions to Police Captain based on
applications from within the County Police Department
(hereinafter, the "Provisional Process"), and (3) promotions
from the 2015 Civil Service Examination. (Thomson Cert. [Docket
Item 63-17], ¶ 4.) On March 18, 2018, Plaintiff was promoted to
the rank of Captain by the Camden County Police Department.
(County Letter Brief [Docket Item 162], 1.)

#### a. The Pilot Program

During the Pilot Program, Officers Joseph Saponare, David
Suarez, Deiter Tunstall, and Albert Handy were promoted to
Captain. (County Br. [Docket Item 63-2], 7; Lynch Cert. [Docket
Item 63-11], ¶¶ 21-22, 28-29, 35-36; Thomson Cert. [Docket Item
63-17], ¶ 16.) Handy received his promotion on October 28, 2013
(Thomson Cert. [Docket Item 63-17], ¶ 16), while Saponare,
Suarez, and Tunstall were hired on April 8, 2013. (County Br.

[Docket Item 63-2], 7; Lynch Cert. [Docket Item 63-11], ¶¶ 21-22, 28-29, 35-36.) Defendants Lynch and Thomson, who made final recommendations on all four officers as part of the Pilot Program, assert that they made those recommendations based on, inter alia, the officers' "success as supervisor[s] of uniformed officers," "demonstrated leadership abilities," and "established mentorship and development of subordinate officers." (Lynch Cert. [Docket Item 63-11], ¶¶ 24, 31, 38; Thomson Cert. [Docket Item 63-17], ¶ 19.)

### b. The Provisional Process

During the Provisional Process, Officers Gabriel Camacho and Alexsandro Ibarrondo received promotions to the provisional position of Police Captain through the Provisional Process. (See Thomson Memorandum [Docket Item 63-19]; Ibarrondo Personnel Action Form [Docket Item 63-20]; Camacho Personnel Action Form [Docket Item 63-21].) Plaintiff was told that, to qualify for the Provisional Process, he had to submit an application; however, Plaintiff decided not to apply through the Provisional Process because he "decided [to] just go take the [Civil Service] test [for non-provisional promotions]." (Pl.'s Dep. [Docket Item 63-12], 60:23-62:18.)

### c. 2015 Civil Service Examination

Three permanent Captain positions became available prior to (or after) the 2015 Civil Service Examination and Officers

Richard Verticelli, Camacho, and Ibarrondo received the first-, second-, and third-highest scores, respectively, and were promoted to the rank of Captain. (See Civil Service Promotion List [Docket Item 63-22]; Pl.'s Dep. [Docket Item 63-12], 49:4-9.) Plaintiff finished in a tie for third with Ibarrondo on the Examination, but was ranked fourth on the list to make Captain because Officer Ibarrondo had military experience, a tiebreaker on the Civil Service Examination. (See id.) Plaintiff was not promoted to Captain at this time.

**B. Procedural History**

Prior to the 2011 decision to form the Camden County Police Department, on April 20, 2010, Plaintiff and a fellow City Police Officer, Lieutenant John A. Sosinavage, filed a lawsuit in New Jersey Superior Court against the City Defendants. (See Superior Court Complaint [Docket Item 63-13].) In the Superior Court action, Plaintiff and Lt. Sosinavage claimed that the City Defendants retaliated and discriminated against them by, inter alia, transferring them out of Internal Affairs, forcing them to work split shifts, requiring them to attend meetings without overtime compensation, and demeaning them in front of peers after they objected to the City Defendants' instructions to violate the Attorney General Guidelines. (Id. at ¶¶ 88-90.) The Superior Court complaint was dismissed without prejudice. (Plaintiff's Response to Statement of Material Facts [Docket

Item 128], ¶ 18; <u>see</u> <u>also</u> Letter [Docket Item 83], Mar. 9, 2017, 2.)

On May 27, 2014, Plaintiff refiled his claims in federal court against the City of Camden, the County of Camden, and Officers John Scott Thomson, Orlando Cuevas, Michael Lynch, and Louis Vega in their individual and official capacities as employees of both the City of Camden and County of Camden. (Complaint [Docket Item 1].)[3] With leave of the Court, (Order [Docket Item 21], Mar. 6, 2015), Plaintiff filed the Second Amended Complaint on October 9, 2015. (Amended Complaint [Docket Item 26].)

On September 15, 2016, County Defendants filed the pending motion for summary judgment on counts Eight, Nine, and Ten. (County Defs.' Mot. [Docket Item 63].) The Court granted Plaintiff an extension of time to file opposition to County Defendants' motion for summary judgment until November 17, 2016. (Text Order [Docket Item 66], Oct. 18, 2016.) Due to a series of delays resulting from illness and other complications, (<u>see</u> Order [Docket Item 124], Dec. 15, 2017), Plaintiff's opposition was not filed until more than one year later, on December 30, 2017. (<u>See</u> Brief in Opposition (hereinafter "Pl.'s Opp'n")

---

[3] Around the same time, Lt. Sosinavage filed a separate federal action, which is also set before the undersigned, <u>Sosinavage v. Thomson, et al.</u>, No. 14-3292 (D.N.J. filed on May 22, 2014).

[Docket Item 130].) County Defendants timely filed a reply brief, (see Reply Brief (hereinafter "County Defs.' Reply") [Docket Item 144]), along with updated Declarations by Defendants Lynch and Thomson. (See Teris Cert. [Docket Item 144-1].)

On April 20, 2018, the Court convened oral argument on the pending motions. (See Minute Entry [Docket Item 164].) After oral argument, the Court ordered supplementary briefing regarding Plaintiff's identification of Defendant Wysocki as a potential comparator and regarding County Defendants' claims regarding the New Jersey Civil Service Commission. (See Letter Order [Docket Item 165], Apr. 23, 2018.) County Defendants submitted a letter regarding the New Jersey Civil Service Commission on April 26, 2018, (see County Letter Brief [Docket Item 169], Apr. 26, 2018), and one regarding Defendant Wysocki's status as a potential comparator on April 30, 2018. (See County Letter Brief [Docket Item 170], Apr. 30, 2018.) Plaintiff responded to these letters on May 7, 2018. (See Pl.'s Letter Brief [Docket Item 171], May 7, 2018; Pl.'s Letter Brief [Docket Item 172], May 7, 2018.)

On August 8, 2018, at plaintiff's request, the Court stayed this case for thirty (30) days, but explicitly stated that the stay "will not apply to the Court's adjudication" of the present motions. (Order [Docket Item 194], Aug. 8, 2018, 1 n.1.) On

September 10, 2018, the Court extended the temporary stay until
October 1, 2018. (See Letter [Docket Item 199], Sept. 10, 2018.)

## IV.  STANDARD OF REVIEW

At summary judgment, the moving party bears the initial
burden of demonstrating that there is no genuine dispute as to
any material fact and the movant is entitled to judgment as a
matter of law. FED. R. CIV. P. 56(a); accord Celotex Corp. v.
Catrett, 477 U.S. 317, 323 (1986). Once a properly supported
motion for summary judgment is made, the burden shifts to the
non-moving party, who must set forth specific facts showing that
there is a genuine issue for trial. Anderson v. Liberty Lobby,
Inc., 477 U.S. 242, 250 (1986). In reviewing a motion for
summary judgment, the court is required to examine the evidence
in light most favorable to the non-moving party, and resolve all
reasonable inferences in that party's favor. Scott v. Harris,
550 U.S. 372, 378 (2007); Halsey v. Pfeiffer, 750 F.3d 273, 287
(3d Cir. 2014).

A factual dispute is material when it "might affect the
outcome of the suit under the governing law," and genuine when
"the evidence is such that a reasonable jury could return a
verdict for the nonmoving party." Anderson, 477 U.S. at 248. The
non-moving party "need not match, item for item, each piece of
evidence proffered by the movant," but must simply present more
than a "mere scintilla" of evidence on which a jury could

reasonably find for the non-moving party. <u>Boyle v. Cty. of Allegheny</u>, 139 F.3d 386, 393 (3d Cir. 1998) (quoting <u>Anderson</u>, 477 U.S. at 252).

## V.  DISCUSSION

Plaintiff's claims against County Defendants can be effectively divided into two categories: (1) claims of race discrimination in violation of 42 U.S.C. § 1983 (Count Eleven) and NJLAD (Count Twelve); and (2) and claims alleging that County Defendants' failure to promote Plaintiff constituted retaliation in violation of the First Amendment of the U.S. Constitution under 42 U.S.C. § 1983 (Count Thirteen) and Article I, § 6 of the New Jersey Constitution (Count Fifteen). The Court will address each category of claim in turn.

### A.  Plaintiff's Racial Discrimination Claims (Counts Eleven and Twelve)

In Counts Eleven and Twelve of the Amended Complaint, Plaintiff alleges that County Defendants' failure to promote him to Captain instead of Joseph Saponare, David Suarez, Deiter Tunstall, Albert Handy, Gabriel Camacho, Alexsandro Ibarrondo, Richard Verticelli, and Joseph Wysocki constituted racial discrimination in violation of 42 U.S.C. § 1983 and NJLAD. County Defendants move for summary judgment on this claim,

arguing that, while Plaintiff is a member of a protected class,[4] he has failed to make a <u>prima facie</u> case of racial discrimination with respect to any of the purported comparators.[5] Alternatively, County Defendants argue that, even if Plaintiff could establish a <u>prima facie</u> face for racial discrimination with respect to one or more of the comparators, he cannot rebut County Defendants' proffered legitimate and nondiscriminatory reason for not promoting him to Captain during the Pilot Program. Plaintiff, in turn, argues that non-minority officers were promoted above him, despite being less qualified and/or ineligible for the position of Police Captain. (Pl.'s Opp'n [Docket Item 130], 8.)

Plaintiff's § 1983 and NJLAD claims are both analyzed through the burden-shifting framework set forth in <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973). <u>See</u> <u>Stewart v.</u>

---

[4] County Defendants concede Plaintiff is a member of a protected class because he is African American. (County Br. [Docket Item 63-2], 13.)

[5] County Defendants also argue that Defendant Wysocki should not be considered a comparator, due to Plaintiff's belated identification of him as such. (<u>See</u> Letter [Docket Item 170], Apr. 30, 2018, 1-2.) However, the Court has previously held that "Plaintiff's belated identification of [Defendant] Wysocki as a potential comparator will be permitted due to Plaintiff['s] counsel's excusable neglect for [the] reasons stated in the Court's previous opinion granting Plaintiff's reconsideration motion." (Letter Order [Docket Item 165], Apr. 23, 2018, 1 (citing Order [Docket Item 124], Dec. 15, 2017).) The Court shall not revisit its prior decision to consider Defendant Wysocki as a potential comparator at this time.

Rutgers, State Univ., 120 F.3d 426, 432 (3d Cir. 1997) (applying McDonnell Douglas framework to § 1983 claims); Viscik v. Fowler Equip. Co., 173 N.J. 1, 13-14 (2002) (adopting McDonnell Douglas framework for NJLAD employment discrimination cases). The McDonnell Douglas framework first requires the plaintiff to establish a prima facie case of racial discrimination, at which point the burden shifts to the defendant employer to provide a legitimate nondiscriminatory rationale for their employment decision. McDonnell Douglas Corp., 411 U.S. at 802-03. Once the defendant has proffered their legitimate explanation, the plaintiff may prevail if she can prove the defendant's purported reasoning was merely a pretext and that the adverse employment action was actually motivated by discriminatory intent. Id. at 802.

### 1. Whether Plaintiff Has Stated a Prima Facie Case of Racial Discrimination

First, County Defendants argue that Plaintiff has failed to produce sufficient evidence to support a prima facie case of racial discrimination. (County Br. [Docket Item 63-2], 5-10.) To establish a prima facie case of racial discrimination for failure to promote, a plaintiff must prove establish that: (1) he belongs to a protected category; (2) he applied for a job in an available position for which he was qualified; (3) he was rejected; and (4) after he was rejected, the position stayed

28

open and the employer continued to seek applications from individuals with similar qualifications. McDonnell Douglas Corp., 411 U.S. at 802; Bates v. Tandy Corp., 186 Fed. App'x 288, 293 (3d Cir. 2006) (citing Bray v. Marriott Hotels, 110 F.3d 986, 990 (3d Cir. 1997)).

As noted above, there were three distinct promotional periods for County Police Captains during the relevant timeframe: (1) promotions given to officers through the Pilot Program between November 1, 2012 and October 31, 2013; (2) Provisional Process promotions between May and July 2014, and (3) promotions to Captain offered through Civil Service testing in 2015. (Thomson Cert. [Docket Item 63-17], ¶ 4.) Plaintiff claims he should have been made Captain instead of seven others who were promoted during this timeframe: (1) Joseph Saponare; (2) David Suarez; (3) Deiter Tunstall; (4) Albert Handy; (5) Gabriel Camacho; (6) Alexsandro Ibarrondo; and (7) Richard Verticelli. (Pl.'s Dep. [Docket Item 63-12], 56:21-57:6, 63:6-13, 86:11-18, 92:2-16.) The Court will thus address each of these promotions—grouped by the applicable period in which the officers received their promotions—to determine whether Plaintiff has stated a prima facie case for failure to promote.

### a. Promotions offered through the 2013 Pilot Program (Saponare, Suarez, Tunstall, Handy)

Plaintiff testified that his employment discrimination claims are primarily derived from County Defendants' failure to promote him during the Pilot Program, which lasted between November 1, 2012 and October 31, 2013. (Pl.'s Dep. [Docket Item 63-12], 47:21-48:18.) There was no formal application process for promotions made through the Pilot Program; instead, Defendants Lynch and Thomson made final recommendations for promotions within the County Police Department during the program, including promotions to County Police Captain. (Lynch Cert. [Docket Item 63-11], ¶¶ 8, 15; Thomson Cert. [Docket Item 63-17], ¶¶ 6, 10.) These recommendations were then subject to formal approval by the Camden County Board of Chosen Freeholders.

During the Pilot Program, Defendants Lynch and Thomson recommended that Officers Saponare, Suarez, Tunstall, Wysocki, and Handy be promoted to Captain. (Lynch Cert. [Docket Item 63-11], ¶¶ 20-38; Thomson Cert. [Docket Item 63-17], ¶ 14; Second Lynch Cert. [Docket Item 170], 9 on the docket (¶¶ 5-7).) Plaintiff alleges that these promotions resulted in certain less-senior Caucasian officers "rank jumping" in violation of the Pilot Plan and the elevation of less qualified officers at

Plaintiff's expense. (Amended Complaint [Docket Item 26],
¶¶ 213-14, 225.)

County Defendants first argue that Plaintiff's claim cannot
be predicated on the promotions of Saponare, Tunstall, and
Suarez because those three officers were promoted to Captain on
April 8, 2013, and Plaintiff did not commence employment with
the County Police Department until April 15, 2013. (County Br.
[Docket Item 63-2], 7; Lynch Cert. [Docket Item 63-11], ¶¶ 21-
22, 28-29, 35-36; Intergovernmental Transfer Agreement [Docket
Item 63-4], 2.) In support of this argument, County Defendants
cite Oliver, in which the court dismissed a failure-to-promote
claim for failure to establish a prima facie case of
discrimination, finding that "promotion [occurs] when an
employer hires an in-house employee for a higher position," and
thus a plaintiff "must have been employed by the defendant
employer" in order to bring a claim of failure to promote.
Oliver v. Nat'l Beef Packing Co., 294 Fed. App'x 455, 458 (11th
Cir. 2008); see also Davis v. Coca-Cola Bottling Co. Consol.,
516 F.3d 955, 961 n.4 (11th Cir. 2008) (distinguishing, both
"factually and legally," promotions from hirings, because the
former involves filling a position internally, and the latter
involves filling a position externally); Richardson v. CSS
Indus., No. 08-3900, 2009 WL 2230761, at *3 n.3 (E.D. Pa. July
27, 2009) (dismissing failure-to-promote claim brought under

ERISA because, at the time the defendant filled the position which the plaintiff had sought, the plaintiff and defendant had "no employment relationship").

In the present case, the Court finds that Plaintiff's <u>prima facie</u> claim cannot rest on promotions that predate his initial hiring. The fourth prong of a <u>prima facie</u> case for discriminatory failure to promote requires the plaintiff to prove that <u>after</u> he was rejected, the employer continued to seek applications from individuals with similar qualifications. Here, it cannot be said that the promotions of Saponare, Tunstall, and Suarez could reasonably serve as evidence that the employer continued to seek applications from similarly-qualified individuals <u>after</u> Plaintiff was rejected for a promotion, when those officers received their promotions <u>before</u> Plaintiff had even started working for the County Police Department. Thus, Plaintiff's <u>prima facie</u> claim fails with respect to the hiring and promotions of Saponare, Tunstall, and Suarez.

Officer Wysocki, however, received his promotion on April 30, 2013, fifteen (15) days after Plaintiff was hired. (Second Lynch Cert. [Docket Item 170], 9 on the docket (¶ 5); Intergovernmental Transfer Agreement [Docket Item 63-4], 2.) County Defendants contend that they were seeking a Captain specifically to oversee the Internal Affairs Division and that Wysocki had more experience and expertise working in Internal

Affairs than Plaintiff.[6] County Defendants also assert that "[u]nder [Plaintiff's] supervision, the Internal Affairs Division was in a state of disarray," and that "under his supervision, there was a back log of over 400 internal affairs investigations and he was not able to lead the division." (County Letter Brief [Docket Item 170], 4.) Therefore, County Defendants assert that Plaintiff cannot fulfill the fourth prong prima facie requirement that alternative candidates considered by County Defendants were similarly qualified to Plaintiff. (Id. at 4-5.)

Officer Handy received his promotion on October 28, 2013, more than six months after Plaintiff was hired. (Thomson Cert. [Docket Item 63-17], ¶ 16; Intergovernmental Transfer Agreement [Docket Item 63-4], 2.) County Defendants contend that because Handy had more police experience than Plaintiff, Plaintiff again cannot fulfill the fourth prong prima facie requirement that alternative candidates considered by County Defendants were similarly qualified to Plaintiff. (County Br. [Docket Item 63-2], 14.)

---

[6] Plaintiff alleges that he worked in Internal Affairs for less than one year. (Amended Complaint [Docket Item 26], ¶ 21.) County Defendants assert that Wysocki worked in Internal Affairs for nearly four (4) years. (Second Lynch Cert. [Docket Item 170], 10 on the docket (¶ 10).)

The fourth prong of a prima facie failure-to-promote case requires an inquiry into the "relative qualifications of the plaintiff and the employee who actually received the promotion." Provenzano v. LCI Holdings, Inc., 663 F.3d 806, 814 (6th Cir. 2011). For a plaintiff to be considered "similarly qualified" to employees promoted in his stead such that a factfinder could reasonably infer discriminatory failure to promote, he must be "at least as qualified as the candidate chosen in [his] place." Scola v. Publix Supermarkets, Inc., 557 Fed. App'x 458, 468 (6th Cir. 2014); see also Brown v. Mo. State Highway Patrol, 56 F. App'x 282, 284 (8th Cir. 2003) (affirming district court grant of summary judgment to defendants on discriminatory failure-to-promote claim because plaintiff failed to provide evidence that he was "equally qualified" for the position relative to the individuals promoted in his place); cf. Pugh v. Taco Bell Corp., No. 97-01431, 1998 WL 35178379, at *13 (E.D. Mo. Oct. 2, 1998) (denying summary judgment on discriminatory failure-to-promote claim because an employee promoted in plaintiff's stead had less "supervisory" and "industry" experience and fewer "high ratings" than the plaintiff).

Here, the City Police Department hired Officer Handy in 1991 and hired Plaintiff in 1995. (Handy Resume [Docket Item 63-25], 2; Pl.'s Dep. [Docket Item 63-12], 12:20-22.) Defendant Thomson, who made the final recommendation to promote Handy from

Lieutenant to County Police Captain, claims that he did so in response to Handy's "extensive executive experience," noting that he does not believe Plaintiff possessed the same level of necessary experience or knowledge as Handy. (Thomson Cert. [Docket Item 63-17], ¶¶ 14, 18-19.) Plaintiff has made no showing that he was at least as qualified as Handy for the promotion to Captain; indeed, Plaintiff acknowledges in answers to the interrogatories that, with respect to seniority of Lieutenants within the City Police Department, he came "after . . . Handy." (Pl.'s Answer to County Defs.' First Set of Interrogatories [Docket Item 63-18], ¶ 9.) Because Plaintiff has failed to establish that he was similarly-qualified for the Captain position relative to Handy, the Court finds that Plaintiff cannot base his prima facie case for discriminatory failure to promote on Officer Handy's promotion to Captain.

Regarding Officer Wysocki's promotion, County Defendants do not appear to contest Plaintiff's ability to satisfy the first three prongs of Plaintiff's prima facie claim with respect to Wysocki's hiring and promotion. (See generally County's Letter Brief [Docket Item 170].) However, there is significant factual dispute regarding the fourth prong – whether Carmichael was as well-qualified as Wysocki and regarding County Defendants' proffered nondiscriminatory reasons for hiring Wysocki over Plaintiff. (See id. at 2-4; Pl.'s Letter Brief [Docket Item

35

171], 2-5.)[7] Several genuine disputes of material fact are apparent on the present record regarding Wysocki's promotion to Captain over Carmichael. For example, County Defendants contend that Wysocki was a permanent Lieutenant for over three (3) years, while Plaintiff asserts that Wysocki was only a permanent Lieutenant for approximately six months, (see Pl.'s Letter Brief [Docket Item 171], May 7, 2018, 3), additionally County Defendants claim that when Plaintiff was leading the IA department, there was a backlog of over 400 IA cases, while Plaintiff asserts that there were only 272 open IA cases at that time. (See Pl.'s Letter Brief [Docket Item 171], May 7, 2018, 4.) Due to these disputes of material facts pertaining to both Plaintiff's and Wysocki's qualifications, and therefore pertaining to County Defendants' proffered nondiscriminatory reasons for hiring Wysocki over Plaintiff, granting summary judgment with regard to Officer Wysocki would be inappropriate at this time.

---

[7] This dispute includes serious allegations that certain declarations and documents in the record contain false statements, implicating the integrity of County Defendants. (Pl.'s Letter Brief [Docket Item 171], 3-5.) Due to the gravity of these allegations, the Court will not address them in the context of the present motion for summary judgment. Evidentiary refinements pertaining to Wysocki's selection may be sought by either party by motion in limine before trial.

Next, Plaintiff names Officers Camacho and Ibarrondo as examples of less-qualified officers who received promotions instead of him. Officers Camacho and Ibarrondo received provisional promotions through the 2014 selection process for the Provisional Position of Police Captain. (Thomson Memorandum [Docket Item 63-19]; Ibarrondo Personnel Action Form [Docket Item 63-20]; Camacho Personnel Action Form [Docket Item 63-21].) County Defendants argue that Plaintiff cannot base his prima facie case on the promotions of Camacho and Ibarrondo because Plaintiff never submitted an application for promotion during the Provisional Process. (County Br. [Docket Item 63-2], 7-8.)

The first prong of a prima facie case for discriminatory failure to promote requires that the plaintiff actually applied for the position. Bates v. Tandy Corp., 186 Fed. App'x at 293. In Bates, plaintiffs brought claims of racially-discriminatory failure to promote them to district manager positions. Bates v. Tandy Corp., No. 03-5519, 2005 WL 1798825 (E.D. Pa. Aug. 1, 2005), aff'd, 186 Fed. App'x 288 (3d Cir. 2006). The court found that the plaintiffs had not applied for the district manager position "despite invitations from [the employer] to do so." Id. at *6. Thus, despite the fact that the plaintiffs were "undoubtedly qualified" to be district managers, the court

granted summary judgment to the defendant employer for failure to fulfill the first prong of a prima facie case, holding that "without making an application for [a] district manager [position], [p]laintiffs have failed to state a prima facie case for failure to promote." Id.

Similarly, in the companion case of Sosinavage v. Thomson, this Court found that Sosinavage's conscious decision not to apply for a position with the Camden County Police Department prevented him from maintaining a claim that the Camden County Defendants failed to select him for such a position. 2018 WL 2357743, at *6 (D.N.J May 23, 2018). Here, as in Bates and Sosinavage, Plaintiff did not actually apply to be a Provisional Police Captain. Plaintiff testified that he recalled being told that in order to be considered for the Provisional Process, he had to submit an application. (Pl.'s Dep. [Docket Item 63-12], 60:23-61:2.) Plaintiff stated in his deposition that he made a conscious decision not to apply through the Provisional Process because he "decided [to] just go take the [Civil Service] test [for non-provisional promotions]." (Id. at 61:3-62:18.) Accordingly, because he did not submit an application for a Provisional Police Captain position, Plaintiff cannot base his prima facie case on the promotions of Officers Camacho and Ibarrondo during the 2014 Provisional Process, because Plaintiff did not submit an application through the Provisional Process.

### c. 2015 Civil Service Promotions (Verticelli, Camacho, Ibarrondo)

Finally, Plaintiff identifies the promotions to Captain of Officers Verticelli, Camacho, and Ibarrondo during the 2015 Civil Service exam process as evidence in support of his claim of discriminatory failure to promote. (Pl.'s Dep. [Docket Item 63-12], 56:21-57:6, 92:2-9.) Verticelli received a promotion to Captain as a result of his performance on the Civil Service test. (Civil Service Promotion List [Docket Item 63-22]; Pl.'s Dep. [Docket Item 63-12], 49:4-9, 56:21-58:23.) In addition, Officers Camacho and Ibarrondo—who had previously received a provisional promotion through the 2014 Provisional Process—subsequently received a permanent promotion as a result of the 2015 Civil Service exam process. (Id.) County Defendants argue that Plaintiff cannot base his prima facie case on these Civil Service promotions because he ranked lower on the examination than the three officers who received promotions. (County Br. [Docket Item 63-2], 8-9.)

Plaintiff acknowledges in his deposition that he "tied for third" in the Civil Service testing, but was ultimately ranked fourth because the candidate with whom he tied, Ibarrondo, had military experience. (Pl.'s Dep. [Docket Item 63-12], 49:4-9.) And Verticelli and Camacho both received higher scores on the Civil Service test than Plaintiff. (Civil Service Promotion List

[Docket Item 63-22]; Pl.'s Dep. [Docket Item 63-12], 49:4-9.)

Accordingly, as with the promotion of Officer Handy, Plaintiff

cannot base his prima facie case on the Civil Service promotions

of Verticelli, Camacho, or Ibarrondo because Plaintiff has

failed to show that he was similarly qualified relative to these

individuals in light of their superior ranking on the Civil

Service exam. See, e.g., Bates, 186 F. App'x at 292-93

(affirming summary judgment in favor of defendant employer

because defendant's promotion selections were based on other

candidates' superior performance on an objective evaluation

relative to plaintiff).[8]

---

[8] Plaintiff also argues that some of the individuals promoted
during the 2015 Civil Service exam process were not eligible to
sit for the 2015 Civil Service exam. (Pl.'s Opp'n [Docket Item
130], 14-15; Pl.'s Letter Brief [Docket Item 172], 2.) County
Defendants respond that eligibility for the Civil Service exam
is determined solely by the New Jersey Civil Service Commission, as
a matter of New Jersey law. (County Letter Brief [Docket Item 169],
1-2 (citing N.J.S.A. 11A:4-1, et seq.; N.J.A.C. § 4A:4-2, et
seq.).) Plaintiff concedes that County Defendants' understanding
of the cited New Jersey law is accurate. (Pl.'s Letter Brief
[Docket Item 172], 1.) Plaintiff responds that County Defendants
may have obtained certain waivers from the New Jersey Civil Service
Commission regarding the 2015 exam, however Plaintiff has yet to
provide any evidence of such. (See Pl.'s Letter Brief [Docket Item
172], 2 & n.1.) Therefore, there is no dispute of material fact as
to this issue.

Plaintiff also alleges that he was denied the opportunity to
participate in a training course in preparation for the 2015 Civil
Service exam. (Pl.'s Opp'n [Docket Item 130], 15; Pl.'s Letter
Brief [Docket Item 172], 2.) Counts Eleven and Twelve of
Plaintiff's Amended Complaint primarily relate to the 2013 Pilot
Program and do not contain any allegations regarding 2015 Civil
Service Exam training. (Amended Complaint [Docket Item 26],

2.    Whether Plaintiff Produced Evidence That Could
      Rebut the Department's Proffered Reason for
      "Rank-Jumping" Other Officers Above His Station

Even if Plaintiff could state a prima facie case for
failure to promote, he has not demonstrated that the legitimate
reasons offered by County Defendants for their employment action
were pretext. McDonnell Douglas Corp., 411 U.S. at 802-803. For
a plaintiff to establish pretext in a discriminatory failure-to-
promote case, the plaintiff must establish that the reason given
by the employer was a "fiction which obscures the reality" that
racial discrimination was a "but-for cause" of the employment
action. Lewis v. Univ. of Pittsburgh, 725 F.2d 910, 914-15 (3d
Cir. 1983) (citing McDonald v. Santa Fe Trail Transportation
Co., 427 U.S. 273, 282 n.10 (1976)).

Here, Plaintiff argues there is a dispute of material fact
as to whether the Pilot Program precluded "rank-jumping"
promotions from Sergeant directly to Captain, and claims that
such promotions violated the terms of the Pilot Program and

---

¶¶ 210-28.) Plaintiff alleges that he requested to take part in a
Civil Service exam training program in which at least one Caucasian
and one Hispanic officer were enrolled; Plaintiff alleges that his
request was denied, though he never received an explanation of the
denial, nor did he ask for an explanation of the denial, nor did
he file a grievance regarding the denial. (Pl.'s Dep. [Docket Item
63-12], 118:2-121:25.) The Court finds it difficult to give any
weight to this allegation, where Plaintiff's testimony regarding
these events are extremely vague as to when such training was
requested and the reasons that Plaintiff did not seek further
clarification about the purportedly denied opportunity

placed less-qualified officers in positions above his station as a lieutenant. (Cooper Cert. in Support of Pl.'s Mot. For Reconsideration [Docket Item 75-1], at ¶ 27.) In support of his claim that the Pilot Program expressly prohibits rank-jumping, Plaintiff cites the Civil Service Order. (Id.; Hardwick Decl. [Docket Item 75-8], ¶ 13; Civil Service Order [Docket Item 75-13], 15.) Plaintiff then argues that the Pilot Program promotions of Officer Tunstall and Suarez from Sergeant directly to Captain violated this rule. (Cooper Cert. in Support of Pl.'s Mot. For Reconsideration [Docket Item 75-1], at ¶ 27 (citing Lynch Cert. [Docket Item 63-11], ¶¶ 27, 34).)

County Defendants' justification for promoting Tunstall and Suarez, who were Sergeants, rather than Plaintiff, who was a Lieutenant, was that the plain language of the Order requires only that candidates meet the "minimum requirements for the promotional title." (Civil Service Order [Docket Item 75-13], 15.) The requirements as set forth in the County Police Captain Job Specifications include three years of "supervisory police experience" and a high school diploma. (County Police Captain Job Specification [Docket Item 63-16], 2.) Defendants Lynch and Thomson—who were responsible for making final recommendations for hiring on positions in the County Police Department—did not believe that the Pilot Program precluded "rank-jumping." (Lynch

Cert. [Docket Item 63-11], ¶¶ 8, 10; Thomson Cert. [Docket Item 63-17], ¶¶ 6-9.)

County Defendants argue that Officers Tunstall and Suarez met the minimum requirements for promotion to Captain. (Lynch Cert. [Docket Item 63-11], ¶¶ 30, 37.) Officer Tunstall graduated from Camden High School in 1982 and had more than three years of experience as a Sergeant. (Tunstall Resume [Docket Item 63-23].) Defendant Lynch further avers that Suarez met all requirements for promotion to County Police Captain at the time of his promotion. (Lynch Cert. [Docket Item 63-11], ¶ 37.) Defendant Lynch states that he promoted Tunstall and Suarez due to, inter alia, "[their] success as a supervisor of uniformed officers" and their "demonstrated leadership abilities." (Id. at ¶¶ 31, 38.)

Plaintiff has not introduced any evidence to support the notion that the officers promoted to County Police Captain did not fulfill the minimum requirements for the promotion. Plaintiff does not argue that the rank of Sergeant does not constitute a supervisory position, nor does he proffer any evidence that Officers Tunstall and Suarez lacked the requisite experience. Plaintiff's argument rests solely on the notion that County Defendants' decision to make promotions of Sergeant directly to Captain violated the Civil Service Order, an allegation that does not comport with the plain language of the

Civil Service Order itself. Additionally, Plaintiff has not proffered any evidence to show that race was a motivating factor or causally-linked to the decision to promote other officers instead of him. Indeed, Plaintiff admits that both Officer Tunstall (African American) and Officer Suarez (Hispanic) are minorities. (Pl.'s Dep. [Docket Item 63-12], 51:19-22.) Plaintiff has thus failed to produce evidence from which a reasonable jury could infer that County Defendants' rationale for promotions during the Pilot Program was pretext for a racially-discriminatory motive. Accordingly, the Court will grant County Defendants' motion for summary judgment on Counts Eleven and Twelve of Plaintiff's Amended Complaint, except as they may pertain to Plaintiff's claims regarding Officer Wysocki as a comparator.

### B. Plaintiff's Retaliation Claims (Counts Thirteen and Fifteen)

Plaintiff also alleges that County Defendants' failure to promote him to Captain constituted unlawful retaliation against him for actions he took against County Defendants while they were employees of the City Police Department. (Amended Complaint [Docket Item 26], ¶¶ 229-235, 240-253.) Specifically, Plaintiff alleges that County Defendants retaliated against him for his filing of a claim against Defendants Thomson, Lynch and Cuevas in New Jersey Superior Court, a grievance he filed while working

with the City Police Department, and his speech at union
meetings pertaining to the Pilot Program and the formation of
the County Police Department. (Pl.'s Dep. [Docket Item 63-12],
106:6-21.) County Defendants move for summary judgment on these
claims as well, arguing that Plaintiff has failed to establish a
causal link between Plaintiff's activities and Defendants'
decision not to promote him to Captain. (County Br. [Docket Item
63-2], 18.)

To sustain a claim for unlawful retaliation under § 1983 or
the New Jersey Constitution, Plaintiff must produce evidence to
show that (1) he engaged in constitutionally-protected conduct,
(2) the defendant undertook retaliatory action sufficient to
deter a person of ordinary firmness from exercising his
constitutional rights, and (3) there exists a causal link
between the constitutionally-protected conduct and the
retaliatory action. Thomas v. Indep. Twp., 463 F.3d 285, 296 (3d
Cir. 2006).[9] The Court will begin with the third prong of the

_____

[9] Analysis of retaliation claims under the New Jersey Constitution
is "functionally identical" to analysis of retaliation claims
under the First Amendment to the United States Constitution. See
Buck Foston's New Brunswick, LLC v. Cahill, No. 11-03731, 2013 WL
5435289, at *28 n.23 (D.N.J. Sep. 27, 2013) (citing Hamilton
Amusement Ctr. v. Verniero, 156 N.J. 254, 264-65 (1998) ("Because
we ordinarily interpret our State Constitution's free speech
clause to be no more restrictive than the federal free speech
clause, Shelton College v. State Bd. of Educ., 48 N.J. 501, 518 []
(1967), '[w]e rely on federal constitutional principles in
interpreting the free speech clause of the New Jersey
Constitution.'") (quoting Karins v. City of Atlantic City, 152

argument to evaluate whether the Plaintiff has produced evidence that might establish a causal link sufficient to establish a retaliation claim.

  1. <u>Whether Plaintiff has Produced Evidence that Could Establish a Causal Link Between his Activity and the Decision not to Promote Him</u>

  Plaintiff argues that, as a "direct and proximate result" of his complaints, grievances, and speech regarding the improper practices and customs of the Defendants while he was employed with the City Police Department, he was passed over for a promotion to County Police Captain. (Amended Complaint [Docket Item 26], ¶¶ 232, 351.) County Defendants, in moving for summary judgment on Plaintiff's retaliation claims against them, argue that Plaintiff has failed to establish the causal connection between Plaintiff's grievances and County Defendants decision not to promote Plaintiff. (County Br. [Docket Item 63-2], 18.) To establish causation between conduct and retaliation, a plaintiff must show an "unusually suggestive" temporal proximity between the protected conduct and the retaliation; absent unusually-suggestive temporal proximity, then "timing plus other evidence" may establish a "pattern of antagonism" sufficient to permit a reasonable inference of causation. <u>Farrell v. Planters</u>

_____

N.J. 532, 547; citing <u>Bell v. Township of Stafford</u>, 110 N.J. 384, 393 (1988))). Accordingly, this Court will address both the federal and state retaliation claims together.

<u>Lifesavers Co.</u>, 206 F.3d 271, 280 (3d Cir. 2000); <u>see also</u>

<u>Thomas v. Town of Hammonton</u>, 351 F.3d 108, 114 (3d Cir. 2003)

(citing <u>Estate of Smith v. Marasco</u>, 318 F.3d 497, 512 (3d Cir.

2003)). Such evidence is "not limited to evidence of timing or

demonstrative proof" of retaliatory motive, but instead includes

evidence "gleaned from the record as a whole" that may support

an inference of causation. <u>Watson v. Rozum</u>, 834 F.3d 417, 424

n.16 (3d Cir. 2016).

Defendants argue that there is no unusually-suggestive

temporal proximity between any of the Plaintiff's lawsuits,

grievances, or union speeches and the County Defendants'

decision not to promote him to County Police Captain. (County

Br. [Docket Item 63-2], 20-21.) The Third Circuit provides for a

very limited window of time during which temporal proximity can

be considered sufficiently unusually-suggestive such that no

additional evidence is required. <u>See</u>, <u>e.g.</u>, <u>Dolan v. Penn</u>

<u>Millers Ins. Co.</u>, 625 F. App'x 91, 94 (3d Cir. 2015) (holding

that a proximity of three months between plaintiff's internal

complaint about a coworker and the defendant employer's decision

to terminate plaintiff was not unusually-suggestive); <u>see also</u>

<u>Thomas</u>, 351 F.3d at 114 (holding that three weeks between the

plaintiff's complaint and defendant's termination of plaintiff

was not unusually-suggestive); <u>cf.</u> <u>Jalil v. Avdel Corp.</u>, 873

F.2d 701, 708 (3d Cir. 1989) (finding that a proximity of two

47

days between conduct and adverse action was unusually-suggestive of retaliatory motive).

Here, the timing between either Plaintiff's grievance in 2008-09, or the filing of his complaint in New Jersey Superior Court in 2010, and County Defendants' decision not to promote him on April 15, 2013—the date he commenced employment with the County—is not unusually suggestive, as there is at least a three-year gap between those activities and the alleged retaliation.[10] As for Plaintiff's speech during the COPS union meetings, Plaintiff cannot recall when his speech occurred; the latest time Plaintiff testified that this speech occurred was "maybe" six months prior to the formation of the County Police Department. (Pl.'s Dep. [Docket Item 63-12], 112:22-115:15.) Making all inferences in favor of the Plaintiff, six months is still too great of a temporal gap to be considered unusually suggestive. Thus, in order for Plaintiff to fulfill the causal requirement of his retaliation claim, the record as a whole must include other evidence sufficient to permit a reasonable inference of causation.

County Defendants advance three arguments against the notion that the record as a whole may support an inference of

---

[10] When a plaintiff's protected activity involves a lawsuit against a defendant, the Third Circuit measures temporal proximity from the date on which the litigant first files the complaint. <u>Blakney v. City of Phila.</u>, 559 F. App'x 183, 186 (3d Cir. 2014).

causation: (1) There exists an intervening positive employment action—Plaintiff's hiring at the County Police Department—between Plaintiff's conduct and the alleged retaliation, (2) other City employees who participated in similar activities as the Plaintiff were hired and/or promoted by the County, and (3) the Defendants have a legitimate non-retaliatory reason for promoting other individuals to Captain over the Plaintiff. (County Br. [Docket Item 63-2], 18-22.) The Court will address each of Defendants' arguments in turn.

### a. Intervening positive employment action

County Defendants argue that the fact that Plaintiff was hired by the County Police Department after he engaged in the speech upon which his retaliation claims are predicated weakens the plausibility of the causal link between Plaintiff's conduct and Defendants' decision not to promote him. (County Br. [Docket Item 63-2], 18.) More recently, County Defendants notified the Court that Plaintiff was promoted to Captain on March 18, 2018. (County Letter Brief [Docket Item 162], 1.) County Defendants cite to a number of persuasive opinions to support the notion that an intervening positive employment action "discredits any purported link" between the conduct and retaliation:

> Albrechtsen v. Board of Regents of the University of Wisconsin System, 309 F.3d 433, 437-38 (7th Cir. 2002) (overturning a jury verdict in the plaintiff's favor on a retaliation claim because, inter alia, the

plaintiff had received a promotion after the
protected activity and before the adverse
action occurred); <u>Drury v. BNSF Ry. Co.</u>, No.
15-3021, 2016 WL 4119068, at *6 (10th Cir.
Aug. 2, 2016); ("proof of intervening positive
employment actions cuts against an inference
of causation"); <u>Dumas v. Union Pac. R.R. Co.</u>,
294 F. App'x 822, 827 (5th Cir. 2008)
(affirming grant of summary judgment on
retaliation claim and noting "the intervening
positive employment action further weaken the
already tenuous causal link between [the
plaintiff's] protected activity and his
termination"); <u>Ball v. Tanoue</u>, 133 F. Supp. 2d
84, 91 (D.D.C. 2001) (finding that temporal
gap between protected activity and adverse
action does not support causal inference of
retaliation where there was an intervening
positive personnel action); <u>Byrne v.
Telesector Res. Grp., Inc.</u>, No. 04-CV-0076S,
2007 WL 962929, at *17 (W.D.N.Y. Mar. 29,
2007) ("temporal gap, combined with
intervening promotion and pay raise, precludes
the finding of a causal connection" in
retaliation claim), aff'd, 339 F. App'x 13 (2d
Cir. 2009).

(County Br. [Docket Item 63-2], 18-19; <u>see</u> <u>also</u> <u>Carpenter v.</u>
<u>Fannie Mae</u>, 174 F.3d 231, 236 (D.C. Cir. 1999) (noting that for
retaliation claims predicated on defendant's negative
performance review of plaintiff, an intervening satisfactory
performance review weakens the plausibility of the causal
link).)

While not necessarily dispositive, the Court finds that the
presence of an intervening positive employment action does
substantially weaken the plausibility of the causal link. <u>See</u>,
<u>e.g.</u>, <u>Queer v. Westmoreland Cnty.</u>, 296 Fed. App'x 290, 293 (3d

Cir. 2008) (affirming summary judgment in favor of defendants on a claim of retaliatory nonrenewal of a services contract, in part because a finding that the defendant renewed the contract following plaintiff's exercise of his protected speech "substantially undermine[d]" the causal link). Here, Defendants Lynch and Thomson made final recommendations on all positions for the County Police Department, and Plaintiff has introduced no evidence that, at any point, Defendants Lynch and Thomson tried to obstruct his hiring with the County. Indeed, Plaintiff's salary increased when he started at the County Police Department. (Intergovernmental Transfer Agreement [Docket Item 63-4].) The fact that the County Police Department hired Plaintiff after he engaged in his protected activity against County Defendants weighs against a finding that there was a causal link between his speech and County Defendants' decision not to promote him. That Plaintiff is now a Captain makes it nearly impossible to make such a finding.

> **b. Other employees who spoke out against defendants who were hired/promoted by Camden County Police Department**

Next, County Defendants argue that other employees who filed lawsuits against Defendants while employed by the City or spoke out against the formation of the County Police Department were nevertheless hired or promoted by the County Police Department. (County Br. [Docket Item 63-2], 19.) An employer's

treatment of other employees can constitute circumstantial
evidence sufficient to give rise to an inference of causation
when considered as a whole. Marra v. Phila. Hous. Auth., 497
F.3d 286, 302 (3d Cir. 2007). Here, County Defendants note that
Kevin Wilkes, the president of Plaintiff's former union, the
Camden Organization of Police Superiors (hereinafter
"C.O.P.S."), who had also filed suit against County Defendants
while he was a City employee, was hired by the County Police
Department and subsequently promoted from Sergeant to
Lieutenant. (Pl.'s Dep. [Docket Item 63-12], 109:8-110:6.) Wayne
McFadden was also promoted to Lieutenant, despite being
outspoken against the formation of the County Police Department.
(Id. at 110:7-111:1.) And Albert Handy was promoted to Captain
through the Pilot Program despite being on the C.O.P.S. board.
(Thomson Cert. [Docket Item 63-17], ¶ 21.) Plaintiff has not
introduced any evidence that County Defendants refused to hire
or promote other employees who filed litigation or spoke out
against them. The circumstantial evidence of County Defendants'
treatment of other employees who were similarly-situated to
Plaintiff thus weighs against a finding of a causal link between
Plaintiff's speech and County Defendants' decision not to
promote him. See, e.g., Sauzek v. Exxon Coal USA, 202 F.3d 913,
919 (7th Cir. 2000) (affirming grant of summary judgment for
defendant on plaintiff mineworker's claim that defendant

employer retaliated against him for filing EEOC discrimination charges against them, because out of twenty-four employees who were terminated and filed charges after the mine closed, thirteen were rehired).

### c. Defendants' proffered legitimate reasons for not promoting Plaintiff

Finally, County Defendants argue that, as with Plaintiff's claims of racial discrimination, Plaintiff cannot rebut County Defendants' proffered legitimate reasons for promoting other officers prior to Plaintiff. (County Br. [Docket Item 63-2], 21-22.) As with discrimination claims, the employer's motive is relevant to a claim of retaliation, and the employer can defend its actions by providing a legitimate nondiscriminatory rationale. Lepore v. Lanvision Systems, Inc., 113 Fed. App'x 449, 453 (3d Cir. 2004). Just as with the racial discrimination claims, discussed supra, Plaintiff has not produced evidence sufficient to show that County Defendants' legitimate rationale for hiring other officers—based on factors such as the supervisory and leadership skills of the officers who were promoted—was a mere pretext for an underlying retaliatory motive. Plaintiff has thus failed to establish a causal link between his activity and County Defendants' decision not to promote him. Accordingly, the Court will grant summary judgment in favor of County Defendants on Plaintiff's retaliation claims.

## VI.  CONCLUSION

For the foregoing reasons, the Court will grant County Defendants' motion for summary judgment in part and deny it in part. Summary judgment shall be granted with respect to Counts Eleven and Twelve of Plaintiff's Amended Complaint, except as they may pertain to Plaintiff's claims regarding Officer Wysocki as a comparator, and granted in full with respect to Counts Thirteen and Fifteen.


The accompanying Order will be entered.




**September 27, 2018**                    **s/ Jerome B. Simandle**
Date                                       JEROME B. SIMANDLE
                                           Chief U.S. District Judge