**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

LT. ANTHONY CARMICHAEL,                   1:14-cv-3323-NLH-AMD

        Plaintiff,

                              OPINION

    v.

POLICE CHIEF JOHN SCOTT
THOMSON, et al.,

        Defendants.

Appearances:

CHERYL L. COOPER
LAW OFFICES OF CHERYL L. COOPER
342 EGG HARBOR ROAD
SUITE A-1
SEWELL, N.J. 08080

    *On behalf of Plaintiff*

BETSY G. RAMOS
EDWARD FRANK KUHN, III
MICHELLE L. COREA
CAPEHART & SCATCHARD
8000 MIDLANTIC DRIVE
SUITE 300
MOUNT LAUREL, N.J. 08054

    *On behalf of Defendants*

**HILLMAN**, District Judge

    Pending before the Court is Defendants John Scott Thomson,

Louis Vega, Michael Lynch, Orlando Cuevas, Joseph Wysocki, J.L.

Williams, and the City of Camden's ("Defendants") motion for

summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, (ECF 322),[1] and Plaintiff Anthony Carmichael's ("Plaintiff") motion to seal pursuant to Local Civil Rule 5.3, (ECF 336).  For the reasons expressed below, Defendants' motion for summary judgment will be granted and Plaintiff's motion to seal will be denied without prejudice.

## I.   Background

Plaintiff served on the Camden City Police Department ("CCPD") from September 1994 until April 2013, at which point he joined the Camden County Police Department.  (ECF 26 ¶ 4). Plaintiff was promoted to lieutenant in 2003 and was assigned to

---

[1] Plaintiff is represented in this matter by Cheryl Cooper, Esq. On November 3, 2022, after being informed that Cooper was mistakenly terminated as counsel for Plaintiff and ceased receiving notices of electronic filings on or about September 30, 2021 – prior to Defendants' most recent and pending motion for summary judgment, the Court provided Cooper fourteen days to file an opposition.  (ECF 325).  On November 16, 2022, Cooper filed a letter seeking additional guidance from the Court and thirty days thereafter to file an opposition, (ECF 326), to which the Court responded in a November 22, 2022 order finding that Cooper's claim that she was completely unaware of the pending motion for summary judgment lacked credibility but nonetheless provided twenty-one additional days to file an opposition, (ECF 327 at 4).  On December 9, 2022, Cooper submitted a letter seeking an additional two weeks without first conferring with opposing counsel, (ECF 328), which the Court denied while – in the interest of justice – providing an additional six days to file an opposition, (ECF 329).  A timely opposition was filed on December 19, 2022, (ECF 330), followed by an untimely statement of material facts and supporting exhibits, (ECF 332; ECF 334; ECF 335).  The Court thereafter granted Defendants' counsel's request for an extension to submit a response, (ECF 337; ECF 338), which was timely filed, (ECF 339).

Internal Affairs in or around July 2008, where he served as acting captain and immediate supervisor to the entire unit until his transfer in April 2009. (Id. at ¶¶ 14, 21). Relevant to some of his claims, Plaintiff is African American. (Id. at ¶ 13).

Defendant John Scott Thomson was named police chief of CCPD in August 2008 and served in that position during the time relevant to this action. (Id. at ¶¶ 5, 18). Defendant Louis Vega was hired as CCPD's civilian police director on or about August 2008 and served in that position for the time covered by this action. (Id. at ¶¶ 10, 15). Defendants Orlando Cuevas and Michael Lynch served in the roles of inspector or deputy chief during the period in question. (Id. at ¶¶ 6-7). Defendants Joseph Wysocki and J.L. Williams both served as sergeants and, later, lieutenants. (Id. at ¶¶ 11-12).

During Plaintiff's time in Internal Affairs, CCPD was operating under a consent order entered by Judge Robert B. Kugler due to alleged irregularities within the unit, resulting in multiple reporting and other requirements. (Id. at ¶¶ 31-32). Plaintiff was responsible for overseeing those requirements and ensuring compliance with New Jersey Attorney General ("NJAG") Guidelines, including misconduct investigations. (Id. at ¶¶ 33, 46-47).

3

Plaintiff claims that Thomson began using Internal Affairs investigations improperly following his arrival as chief, including eliminating or ignoring practices adopted to comply with the consent decree.  (Id. at ¶¶ 35-36).  Plaintiff alleges that he met with Vega shortly after the latter's arrival and Vega voiced a desire to reprioritize Internal Affairs cases to focus on rules infractions and have members of CCPD fear him and fight for their jobs.  (Id. at ¶¶ 24-26).  During a meeting with Vega and Thomson, Plaintiff also claims that he was told that it was unnecessary to follow NJAG Guidelines, to which he shared his objections with City administration and was told to discontinue past investigatory practices.  (Id. at ¶¶ 27-29).

Plaintiff was serving as an acting captain.  (Id. at ¶ 43).  On or about March 23, 2009, Plaintiff met with Thomson to discuss complaints and cross-complaints alleging misconduct by inspectors, the preliminary interviews for which supported subordinate officers' accounts and disciplinary charges for the superior officers.  (Id. at ¶¶ 50-52).  Thomson allegedly disagreed with Plaintiff's position that a full and complete investigation was necessary, (id. at ¶¶ 53-55), and with respect to a separate allegation against a sergeant by superior officers, Thomson expressed that he would instruct Plaintiff what to investigate and what not to investigate and that allegations made by upper-level officers did not require full

4

investigations, (id. at ¶¶ 57-63).  Plaintiff objected.  (Id. at
¶ 64).  A few weeks later, Thomson reportedly emailed Plaintiff
to demand the completion of the charges for both cases despite
knowing that the related investigations had not concluded.  (Id.
at ¶ 66).  Plaintiff objected but complied.  (Id. at ¶ 67).

On April 10, 2009, Plaintiff was informed that he was being
transferred from Internal Affairs, (id. at ¶ 70), and following
an emergency meeting of captains on April 20, 2009, Plaintiff
was informed that he was being assigned as acting captain of the
midnight shift of the Patrol Division to oversee "problem"
officers effective immediately, (id. at ¶¶ 74-75).  Plaintiff
was effectively replaced in Internal Affairs by Wysocki, who is
Caucasian and was moved from sergeant to acting lieutenant.
(Id. at ¶ 77).  During an April 23, 2009 meeting with City
Business Administrator Christine Jones-Tucker, John A.
Sosinavage, a lieutenant who was also transferred out of
Internal Affairs, was allegedly told that Plaintiff was being
passed over for a permanent captain's position due to
retaliation.  (Id. at ¶ 86).

Plaintiff filed the instant action on May 27, 2014, (ECF
1), and thereafter amended the Complaint, (ECF 26).  Plaintiff's
Amended Complaint alleges sixteen counts, (id.), nine of which

5

remain pending against Defendants.[2]  The Court summarizes the relevant counts by separating them into five general groups as follows.

### A. Violations of the New Jersey Conscientious Employee Protection Act ("CEPA") (Count 1)

Plaintiff alleges that Thomson, Lynch, Cuevas, and Vega instructed him to charge officers with serious offenses without conducting full investigations, (id. at ¶ 91), and to not investigate complaints against high-ranking officers, (id. at ¶ 89).  Plaintiff claims that he objected to these orders, (id. at ¶¶ 89, 92), because he reasonably believed that they "were not in accord with the requirements under the NJAG Guidelines and believed that the orders violated the rights of the officer, and against public policy," (id. at ¶ 93).  As a result of his objections, Plaintiff claims that he was retaliated against, including his transfer, shift assignments, requirement to attend meetings without overtime, not receiving a permanent captain position, and excessive and unfair discipline.  (Id. at ¶¶ 94-95).

### B. Violations of the New Jersey LAD (Counts 2 and 3)

---

[2] Count 5, alleging discrimination by Thomson, Cuevas, Lynch, and Vega under the New Jersey Law Against Discrimination ("LAD") was dismissed by Chief Judge Jerome B. Simandle along with two counts directed toward Camden County Defendants on March 6, 2015.  (ECF 20).  Then Chief Judge Simandle and the undersigned later granted summary judgment as to the remaining counts against Camden County Defendants.  (ECF 202; ECF 283).

Count 3 of the Amended Complaint also alleges retaliation by Thomson, Cuevas, Lynch, Wysocki, and Williams including lack of compensation, forced split shifts, and improper disciplinary charges and related interrogation and harassment.  (Id. at ¶¶ 123-26).

Plaintiff submits, in the alternative, that he was discriminated against based on his race, forming the basis of Count 2.  (Id. at ¶ 99).  As an African American, Plaintiff is a member of a protected class and Plaintiff asserts that he engaged in protected activity when he objected to orders involving improper investigations and against violations of New Jersey Civil Service Rules.  (Id. at ¶¶ 99-102).

Plaintiff states that, after his objections, he was transferred out of Internal Affairs and to the midnight shift of Patrol to supervise "problem" officers while Wysocki, a Caucasian sergeant his junior in rank, took charge of Internal Affairs.  (Id. at ¶¶ 103-06).  Later, when Plaintiff returned from Family Medical Leave, he was moved back down to lieutenant, first as a medical officer and soon after a lieutenant of Special Operations.  (Id. at ¶¶ 109, 111-12).  Plaintiff was assigned to work under Captain Prince L. Burnett, who was allegedly "manipulated" into a captain position over Plaintiff, and was replaced by Sosinavage, who is Caucasian, as acting captain.  (Id. at ¶¶ 112-13).  Plaintiff further claims that he

was improperly and excessively charged as absent without
official leave for attending a union meeting while others were
permitted to take administrative leave, (id. at ¶¶ 114-16), and
was otherwise retaliated and discriminated against by Thomson,
Lynch, Cuevas, Vega, and the City to the point of needing
medical leave and treatment, (id. at ¶¶ 117-19).

### C. Infringement on Plaintiff's Speech Rights Under the United States and New Jersey Constitutions (Counts 4 and 16)

Plaintiff asserts in Count 4 that he spoke out on matters
of public concern as a public employee, board member of a
bargaining unit, and individual, (id. at ¶¶ 129-30), and that
his exercise of his free-speech right referenced practices of
intimidation and retaliation as well as civil service placement
practices, all of which Plaintiff believed violated the laws,
rules, and regulations of New Jersey, (id. at ¶¶ 132-34).
Plaintiff claims that retaliation against him began within days
of his protected speech, (id. at ¶¶ 135-36, 142), and that
Thomson – in consultation with Vega, Lynch, and Cuevas – created
a custom or practice of improper Internal Affairs practices and
discipline and violation of NJAG Guidelines and promotion
practices, (id. at ¶¶ 137-41).

Similarly, Count 16 claims that Plaintiff's speech
concerning Internal Affairs, the state lawsuit filed in April

2010 and related testimony,[3] and objections to CCPD practices all constituted protected speech.  (<u>Id.</u> at ¶¶ 255-59).  Due to this speech, Plaintiff claims that he was retaliated against in violation of the New Jersey Constitution.  (<u>Id.</u> at ¶¶ 260-61).

### D. Discrimination and Retaliation in Violation of 42 U.S.C. § 1983 (Counts 6 and 8)

In Count 6 of the Amended Complaint, Plaintiff alleges that, as an African American, he is a member of a protected class and that he was discriminated against based on race when he was transferred out of Internal Affairs and replaced by Wysocki – a Caucasian sergeant with less experience, replaced as acting captain by Sosinavage, forced to work split shifts while Caucasian peers did not, and was otherwise harassed.  (<u>Id.</u> at ¶¶ 157-63).  During this alleged retaliation, Thomson, Cuevas, Lynch, and Vega were supervisors within CCPD acting under the color of state law.  (<u>Id.</u> at ¶ 156).

Similar to his free-speech claims, Count 8 references Plaintiff's April 2010 New Jersey Superior Court complaint and submits that his filing of the complaint and testimony, (<u>id.</u> at ¶¶ 182-85), along with speech in opposition of CCPD policies and customs, (<u>id.</u> at ¶ 187) were all protected activities. Plaintiff claims that, because of this protected speech, he was

---

[3] Plaintiff's lawsuit in New Jersey Superior Court, which served as a predecessor to the instant action, was voluntarily dismissed.  (ECF 83 at 2).

retaliated against and suffered adverse employment actions[4] that
he would not have experienced but for his speech.  (<u>Id.</u> at ¶¶
186, 190-91).

### E. 42 U.S.C. § 1983 <u>Monell</u> Claims (Counts 7 and 9)

In Count 7, Plaintiff alleges Defendants created a custom
and practice of violating NJAG Guidelines and improper use of
Internal Affairs and that, as a consequence of his speech
against such customs and practices, they retaliated against him
in the form of transfers, demotions, scheduling assignments, and
inappropriate discipline.  (<u>Id.</u> at ¶¶ 175-78).  Plaintiff
asserts that these actions were taken while Defendants were
acting under the color of state law and Thomson was tasked with
all policymaking for CCPD, (<u>id.</u> at ¶¶ 168-71), and that the
administration within the City government was aware of the
allegedly improper and violative conduct and acquiesced, agreed,
and participated in the harassment against Plaintiff, (<u>id.</u> at ¶
174).

Plaintiff makes similar allegations in Count 9, referring
to his state-court action and alleging that Thomson created a
custom or practice of retaliating against, intimidating, and

---

[4] The only specific example of retaliation provided is the
promotion of individuals less qualified than Plaintiff within
the Camden County Police Department.  (ECF 26 ¶ 186).  As
stated, Plaintiff's allegations against Defendants in their
County capacities are no longer part of this action.  (ECF 20;
ECF 202; ECF 283).

harassing CCPD members who objected to and spoke publicly against his practices.  (Id. at ¶ 194-96).  Plaintiff claims that City administration had actual or constructive knowledge of these practices and acquiesced or ratified them. (Id. at ¶ 197).

## II. Discussion

### A. Subject Matter Jurisdiction

The Court possesses original jurisdiction over Plaintiff's claims stemming from 42 U.S.C.§ 1983 and the United States Constitution.  See 28 U.S.C. § 1331.  It has supplemental jurisdiction over Plaintiff's state-law claims.  See 28 U.S.C. § 1367(a).

## III. Summary Judgment

### A. Summary Judgment Standard

Under the Federal Rules of Civil Procedure, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "A fact is 'material' if its existence or nonexistence 'might affect the outcome of the suit under the governing law.'"  Kopko v. Lehigh Valley Health Network, 776 Fed. Appx. 768, 772 (3d Cir. 2019) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).  If a movant successfully identifies the absence of genuine issues of material fact, the burden then shifts to the nonmovant "to go

11

beyond the pleadings and 'come forward with "specific facts showing that there is a genuine issue for trial."'"   Santini v. Fuentes, 795 F.3d 410, 416 (3d Cir. 2015) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)).  Determinations are to be made by construing all evidence in the light most favorable to the nonmovant.  Id. (citing United States v. Diebold, Inc., 369 U.S. 654, 655 (1962)).

The Court will proceed to each of Plaintiff's claims to evaluate whether, under the above standard, his claims are unsupported or whether genuine disputes exist warranting a determination at trial.  See Orsatti v. N.J. State Police, 71 F.3d 480, 484 (3d Cir. 1995) ("[A] plaintiff cannot resist a properly supported motion for summary judgment merely by restating the allegations of his complaint, but must point to concrete evidence in the record that supports each and every essential element of his case.").

Before doing so, the Court finds it useful, for the benefit of its forthcoming analyses, to begin with a brief outline of the times of the relevant actions.  Throughout his Amended Complaint, Plaintiff cites his transfer, loss of his active captain position, assignment to the midnight shift, split shifts, required attendance at meetings without overtime, and purportedly unfair discipline as the adverse actions taken

12

against him.  (ECF 26 at ¶¶ 107, 124, 178).  The objections to
CCPD's investigatory practices appear to have taken place from
late March into early April 2009.  (Id. at ¶¶ 48-67).  Plaintiff
was transferred out of Internal Affairs and onto the midnight
shift of Patrol in April 2009.  (Pl. Dep. Tr. at 139:9-11).  He
worked split shifts for approximately two months before filing a
grievance, which resulted in the shift being discontinued as
violative of a collective bargaining agreement.  (Id. at 145:23-
25; ECF 322-3 at 86).  Plaintiff was on Family Medical Leave for
eight weeks during Fall 2009, after which he was removed as an
acting captain and returned to a lieutenant position.  (ECF 322-
3 at 81-82).  On October 15, 2009, Plaintiff was disciplined for
crumpling up an absent-without-leave reprimand and tossing it in
the direction of a captain.  (Id. at 94).  His discipline, a
five-day suspension, was sustained.  (Pl. Dep. Tr. at 177:5 to
178:6).  Plaintiff filed his state-court complaint in April
2010.  (ECF 26 at ¶¶ 182, 257).  The exact date in which
Plaintiff was disciplined for his handling of a bias incident is
unclear, though correspondences and an administrative hearing
took place during the Winter of 2013.  (ECF 322-4 at 26, 209).
His discipline, a one-day fine, was sustained.  (Pl. Dep. Tr. at
179:10-16).

**B. Plaintiff's CEPA Claim**

    "CEPA is remedial legislation and must therefore be

13

construed liberally in employees' favor."  Fraternal Order of Police, Lodge 1 v. City of Camden, 842 F.3d 231, 240 (3d Cir. 2016).  A retaliation claim is established under CEPA when the employee demonstrates that (1) they reasonably believed that the employer's conduct violated a law, regulation, or clear mandate of public policy; (2) they performed a whistleblowing activity; (3) the employer took an adverse employment action against them; and (4) there was a causal nexus between the whistleblowing activity and adverse employment action.  Greenman v. City of Hackensack, 486 F. Supp. 3d 811, 829-30 (D.N.J. Sept. 12, 2020) (citing Sarnowski v. Air Brooke Limousine, Inc., 510 F.3d 398, 404 (3d Cir. 2007) and Dzwonar v. McDevitt, 828 A.2d 893, 900 (N.J. 2003)).

With respect to the first element of a CEPA claim, the employee must have "an objectively reasonable belief" at the time of their objection that the employer's conduct was illegal, fraudulent, or harmful to public health, safety, or welfare. Mehlman v. Mobil Oil Corp., 707 A.2d 1000, 1015 (N.J. 1998). Whistleblowing activities are interpreted from the list of actions expressly protected under CEPA.  See Marra v. Twp. of Harrison, 913 F. Supp. 2d 100, 105 (D.N.J. Dec. 19, 2012). Relevantly, under CEPA an employer may not retaliate against an employee who objects or refuses to participate in an activity, policy, or practice that the employee reasonably believes

14

violates a law, rule, or regulation.  N.J.S.A. 34:19-3(c).

CEPA also defines "[r]etaliatory action" as "the discharge, suspension or demotion of an employee, or other adverse employment action taken against an employee in the terms and conditions of employment."  N.J.S.A. 34:19-2(e).  While some courts have concluded that an employer's action must impact an employee's compensation, rank, or "be virtually equivalent to discharge," to qualify under CEPA, others have permitted broader actions to qualify including suspensions, demotions, and changes in salary, hours, or fringe benefits.  See Greenman, 486 F. Supp. 3d at 833-34 (collecting cases and quoting Klein v. Univ. of Med. & Dentistry of N.J., 871 A.2d 681, 691 (N.J. Super. Ct. App. Div. 2005)).

Finally, to demonstrate a "causal link," the plaintiff "must show that the 'retaliatory discrimination was more likely than not a determinative factor in the decision,'" Cohen v. BH Media Grp., Inc., 419 F. Supp. 3d 831, 856 (D.N.J. Nov. 14, 2019) (quoting Choy v. Comcast Cable Commc'ns, LLC, 629 Fed. Appx. 362, 365 (3d Cir. 2015)), for which temporal proximity may "provide[] an evidentiary basis from which an inference can be drawn," id. (quoting Kachmar v. SunGard Data Sys., Inc., 109 F.3d 173, 178 (3d Cir. 1997)).

The burden-shifting analysis of McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), applies to CEPA claims.  See Houston

v. Twp. of Randolph, 934 F. Supp. 2d 711, 743 (D.N.J. Mar. 21,
2013) (citing Winters v. N. Hudson Reg'l Fire & Rescue, 50 A.3d
649, 662 (N.J. 2012)).  As such, if an employee establishes a
prima facie retaliation claim, the employer then bears the
burden to articulate a legitimate, nondiscriminatory reason for
the adverse action and, if such a reason is provided, the burden
shifts a final time to the employee to show that retaliation was
the real reason for the adverse action.  Id. at 743-44 (citing
Winters, 50 A.3d at 662).

    Applying the CEPA analysis standard to the instant action,
the Court first notes that Plaintiff acknowledged both that it
was within Thomson's discretion to direct investigations to
matters Plaintiff disagreed with, such as officers on sick
leave, (Pl. Dep. Tr. at 107:14-22), and that charges must be
brought within forty-five days of sufficient information being
obtained to proceed with filing, (id. at 55:11-18); see also
N.J.S.A. 40A:14-147 ("A complaint charging a violation of the
internal rules and regulations established for the conduct of a
law enforcement unit shall be filed no later than the 45th day
after the date on which the person filing the complaint obtained
sufficient information to file the matter upon which the
complaint is based.").  Notably, the exception to the forty-
five-day rule applies to criminally related, rather than all,
investigations.  See N.J.S.A. 40A:14-147; see also Aristizibal

16

v. City of Atlantic City, 882 A.2d 436, 451 (N.J. Super. Ct. Law
Div. 2005) ("[N.J.S.A. 40A:14-147] contemplates that an
investigation may be necessary before a decision can be made as
to whether a basis exists to initiate disciplinary charges.
However, extensive bureaucratic delay in conducting
investigations and bringing disciplinary charges is
unacceptable." (emphasis added) (synthesizing N.J.S.A. 40A:14-
147 and NJAG Guidelines)).  The objective reasonableness of
Plaintiff's suggestions of impropriety are further called into
doubt by Plaintiff's concession that the investigations in
question were either not improper or he was unable to cite the
rule purportedly broken by them, (Pl. Dep. Tr. at 101:12-17;
111:19-25).  He further acknowledged that the two charges
against subordinate officers he complained of resulted in
sustained charges.  (Id. at 136:2-6; 137:13 to 138:12).[5]

Assuming that Plaintiff's concerns were based on
objectively reasonable beliefs of violations of law or policy,
the Court notes that many of the adverse actions complained of
do not fit the loss of compensation, rank, or "virtually
equivalent to discharge" standard, but rather may fit under the

---

[5] Plaintiffs' statement of material facts challenges the earlier
deposition testimony as to the ultimate sustaining of charges as
to one of the officers.  (ECF 332 at ¶ 55).  An Office of
Administrative Law decision included in Plaintiff's opposition
shows that charges of insubordination as to one of the incidents
involving a referenced officer were reversed.  (ECF 334-7).

lesser standard some courts have employed pertaining to suspensions, demotions, and changes in benefits.  See Greenman, 486 F. Supp. 3d at 833-34.  If the Court were to take the more liberal interpretation of retaliatory actions, three actions can be viewed as causally linked to Plaintiff's objections due to their proximity in time – Plaintiff's transfer, assignment to the midnight shift, and split shifts.  However, the record shows that one of those actions, Plaintiff's assignment to the midnight shift, was not unique to him as another captain was assigned to midnight duty.  (Pl. Dep. Tr. at 143:5-20).

Even if the Court were to accept that Plaintiff has established a prima facie CEPA claim with respect to his transfer and split shifts, Defendants offer nondiscriminatory reasons for those actions.  While Plaintiff's split shifts were violative of a collective bargaining agreement, (ECF 322-3 at 86), the record indicates that the shifts were part of a "give and take" to ensure that Plaintiff attended weekly off-shift meetings while permitting him to attend his child's athletic events, (id. at 83; Lynch Dep. Tr. at 139:14 to 140:9).  Thomson also testified and provided responses to interrogatories that Plaintiff was transferred, not for discriminatory reasons, but rather because CCPD was collaborating with the FBI and Wysocki, who replaced Plaintiff, had a previous working relationship with the FBI and strong interviewing skills.  (Thomson Answer to Pl.

Interrog. No. 2; Thomson Dep. Tr. at 125:19 to 126:3).[6]

Plaintiff, in response, cites to his Amended Complaint and argues that it would have been illogical for him to have filed a grievance as to his split-shifts if he had agreed to them and that this inconsistency "alone should be sufficient to meet Plaintiff's burden of showing pretext." (ECF 330 at 13). The Court disagrees. Plaintiff's argument ignores that the split-shifts, requested or not, were nonetheless violative of a collective bargaining agreement. (ECF 322-3 at 86). Further, Plaintiff challenges Wysocki's experience, or lack thereof, in Internal Affairs, (ECF 330 at 14), as opposed to the interviewing skills and relationship with the FBI cited by Thomson, (Thomson Dep. Tr. at 125:19 to 126:3).

---

[6] Plaintiff challenges Defendant's citation to Thomson's deposition in a different matter, claiming that it was not produced during discovery. (ECF 332 at ¶ 35). Generally, parties seeking to assert that a fact is or is not in genuine dispute must "cit[e] to particular parts of materials in the record." Fed. R. Civ. P. 56(c)(1)(A). Though courts have precluded parties from relying on documents not produced in discovery in summary judgment motions, Rule 56 does not expressly prohibit such documents. See Estate of Fajge v. Dick Greenfield Dodge, Inc., No. 11-cv-04527, 2012 WL 2339723, at *11 (D.N.J. June 18, 2012) (noting that "the affidavits permitted by Rule 56 are by their very nature documents containing factual averments that were not produced during discovery but were created for the purpose of seeking or defending against summary judgment" (citing Wright & Miller, 10A Fed. Prac. & Proc. Civ. § 2722 (3d ed. 2010))). The Court concludes that the use of Thomson's deposition does not greatly prejudice Plaintiff and may be relied upon here. Important in this determination is the fact that the deposition in question was included in Defendants' initial motion for summary judgment, (ECF 292-26), and has thus been on the docket for Plaintiff's review for three years.

More significantly, once a nondiscriminatory reason has been proffered, "[t]he plaintiff then bears the burden of persuasion to convince a reasonable fact-finder that the reason provided by the defendant was a pretext for retaliation," Borgese v. Dean Foods Co., No. 15-cv-2907, 2017 WL 2780742, at *5 (D.N.J. June 26, 2017), and at the summary judgment phase the nonmovant is obligated to "go beyond the pleadings" to rebut the purported absence of a genuine dispute of any material fact, see Santini, 795 F.3d at 416.  Plaintiff has not done so here. Because Plaintiff has not demonstrated an objectively reasonable belief that he was objecting to illegal, fraudulent, or harmful conduct and because Plaintiff has failed to address, much less rebut, the nondiscriminatory reasons offered, the Court holds that summary judgement is warranted for Plaintiff's CEPA claim.

**C. Plaintiff's New Jersey LAD Claims**

   **1. New Jersey LAD Discrimination Claim (Count 2)**

   The New Jersey LAD makes it unlawful for an employer to "discriminate . . . in compensation or in terms, conditions or privileges of employment" based on race.  N.J.S.A. 10:5-12(a). As a "remedial social legislation," the LAD is to be "liberally construed."  Nini v. Mercer Cnty. Cmty. Coll., 995 A.2d 1094, 1100 (N.J. 2010).  To succeed in a LAD claim for racial discrimination, a plaintiff must establish that (1) the complained-of conduct would not have occurred but for the

20

plaintiff's race and the conduct was (2) severe or pervasive enough to make a (3) reasonable individual of the plaintiff's race believe that (4) "the conditions of employment are altered and the working environment is hostile or abusive." Nuness v. Simon and Schuster, Inc., 325 F. Supp. 3d 535, 545 (D.N.J. June 29, 2018) (quoting Taylor v. Metzger, 706 A.2d 685, 688-89 (N.J. 1998)).

The latter three prongs "are interdependent," Rios v. Meda Pharma., Inc., 252 A.3d 982, 987 (N.J. 2021) (quoting Lehmann v. Toys 'R' Us, 626 A.2d 445, 453 (N.J. 1993)), and a determination of whether an employer's conduct is sufficiently severe or pervasive is made by evaluating the surrounding circumstances and cumulative effect of the cited incidents, id. (citing Taylor, 706 A.2d at 685 and Lehmann, 626 A.2d at 445). Importantly, the New Jersey Supreme Court has specified that a plaintiff need only show that the employer's conduct was severe or pervasive, Taylor, 706 A.2d at 689 (citing Lehmann, 626 A.2d at 445), and that requirement may be satisfied by a single incident, id., or even when the discrimination does not necessarily alter the employee's working conditions, id. at 692. Like a CEPA claim, a LAD discrimination claim is analyzed under the McDonnell Douglas burden-shifting analysis. See Kirschling v. Atlantic City Bd. of Educ., 10 F. Supp. 3d 587, 593-94 (D.N.J. Mar. 31, 2014).

21

Plaintiff is African American and cited two incidents of alleged race discrimination during his deposition, his transfer from Internal Affairs while being replaced by Wysocki, who is Caucasian and was of a lower rank, and being replaced as acting captain by Sosinavage, who is also Caucasian.  (Pl. Dep. Tr. at 184:12 to 185:7).

With respect to being replaced by Sosinavage, Sosinavage testified at deposition that Plaintiff was a captain at the time of his promotion, (Sosinavage Dep. Tr. at 98:10-15), which is not rebutted by the portions of the record cited by Plaintiff, (ECF 332 ¶ 89).  The Court finds that Plaintiff fails to show how Sosinavage's ascension to the same rank as him constitutes racial discrimination.  See Jenkins v. Inspira Health Network, Inc., No. 15-2922, 2018 WL 1535208, at *9 (D.N.J. Mar. 29, 2018) (finding that the plaintiff failed to establish a prima facie racial discrimination claim under Title VII and the LAD as a Caucasian employee with similar performance issues was terminated).

Moving to Plaintiff being replaced by Wysocki in Internal Affairs, the Court finds a dearth of evidence supporting Plaintiff's claim that he was replaced by Wysocki due to racial animus.  Plaintiff's allegations focus, rather, on his objections to Defendants' practices and their purported causal connection to the adverse actions taken against him.  Even if

the Court were to accept that Plaintiff's transfer and
replacement were hostile or abusive, Defendants have offered a
legitimate, nondiscriminatory explanation – that CCPD was
working with the FBI and Wysocki's interview skills and prior
working relationship with the FBI were of particular value.
(Thomson Dep. Tr. at 125:19 to 126:3).  Plaintiff offers no
evidence to rebut this legitimate reason, see Kirschling, 10 F.
Supp. 3d at 594, but rather makes general arguments as to the
validity of Plaintiff's claim untethered to citations to the
record or other evidence, (ECF 330 at 14-17).  Plaintiff having
failed to offer evidence that the reasons cited by Defendants
are pretextual, the Court finds that summary judgment is
warranted for Count 2 of Plaintiff's Amended Complaint.

   2. **New Jersey LAD Retaliation Claim (Count 3)**

   The LAD also prohibits reprisals against anyone who opposes
practices forbidden by LAD and coercion, intimidation, threats,
and interference with another's exercise of their rights granted
or protected by LAD.  N.J.S.A. 10:5-12(d).  A plaintiff alleging
retaliation under the LAD must show (1) that they were in a
protected class, (2) engaged in protected activity that the
employer knew about, (3) the plaintiff thereafter suffered an
adverse employment action, and (4) a causal nexus exists between
the protected activity and adverse employment action.  McDermott
v. CareAllies, Inc., 503 F. Supp. 3d 225, 238 (D.N.J. Nov. 30,

23

2020) (citing <u>Victor v. State</u>, 4 A.3d 126 (N.J. 2010)).

Protected activity includes complaints and opposition to acts and practices forbidden by the LAD.  <u>Bradley v. Atlantic City Bd. of Educ.</u>, 736 F. Supp. 2d 891, 900 (D.N.J. Sept. 7, 2010) (citing N.J.S.A. 10:5-12(a), (d)).  However, to be protected, the activity "'must concern discrimination' and moreover, must be more than a general complaint of unfair treatment," <u>Cohen</u>, 419 F. Supp. 3d at 861 (quoting <u>Dunkley v. S. Coraluzzo Petroleum Transporters</u>, 98 A.3d 1202, 1208 (N.J. Super. App. Div. 2014)).  The activity must further represent "a reasonable 'good faith belief that the conduct complained of violates the [LAD].'"  <u>Id.</u> at 862 (quoting <u>Battaglia v. United Parcel Serv., Inc.</u>, 70 A.3d 602, 620 (N.J. 2013)).

A plaintiff must show that the employer's adverse action was "materially adverse," meaning that "it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination."  <u>Thompson v. S. Amboy Comprehensive Treatment Ctr.</u>, No. 18-9923, 2021 WL 3828833, at *9 (D.N.J. Aug. 27, 2021) (quoting <u>Roa v. Roa</u>, 985 A.2d 1225, 1236 (N.J. 2010)).  A causal nexus may be evidenced by a close temporal relationship between the protected activity and the adverse employment action or when "the proffered evidence, looked at as a whole, . . . raise[s] the inference [of causation]."  <u>Nuness</u>, 325 F. Supp. 3d at 563 (alterations and omission in original) (quoting <u>LeBoon v.

Lancaster Jewish Cmty. Ctr. Ass'n, 503 F.3d 217, 232 (3d Cir. 2007)).  A temporal relationship, "unless 'unduly suggestive,' such as a matter of days" cannot alone establish a causal connection.  Horneff v. PSEG Nuclear, LLC, No. 13-975, 2015 WL 263128, at *12 (D.N.J. Jan. 21, 2015) (quoting Cardenas v. Massey, 269 F.3d 251, 264 (3d Cir. 2001) and finding no causal connection when the plaintiff was terminated three months after his investigation interview and when only five of the eleven individuals interviewed were terminated).  Like LAD discrimination claims, LAD retaliation claims are analyzed under the McDonnell Douglas burden-shifting framework.  See Cohen, 419 F. Supp. 3d at 859.

Here, Count 3 of Plaintiff's Amended Complaint focuses on the alleged retaliation he experienced rather than any activity protected under the LAD.  (ECF 26 at ¶¶ 123-27).  Elsewhere in the Amended Complaint, Plaintiff references his general objections and speech relating to CCPD practices, particularly Defendants' investigation practices.  Plaintiff fails to show, however, that these activities "concern[ed] discrimination."  See Cohen, 419 F. Supp. 3d at 861 (quoting Dunkley, 98 A.3d at 1208).

If the Court were to disregard this fatal shortcoming, which it does not, and accept that the temporal relationship between Plaintiff's objections in March and April of 2009 and

his transfer and split shifts beginning in April 2009 made out a prima facie retaliation claim, Plaintiff's claim would still fail for the same reasons as his CEPA claim.  Namely, that evidence in the form of deposition testimony provides non-retaliatory reasons for these actions – Plaintiff's split shifts were a mutual accommodation to ensure that he attended certain meetings and was able to see his child's athletic events, (Lynch Dep. Tr. at 139:14 to 140:9), and that Wysocki possessed important skills and experience needed while CCPD was working with the FBI, (Thomson Dep. Tr. at 125:19 to 126:3).  Plaintiff offers no rebuttal to these explanations.  Yet again, Plaintiff fails to meet his burden under the McDonnell Douglas burden-shifting framework.  Therefore, the Court finds that summary judgment is appropriate for Count 3 of the Amended Complaint.

### D. Plaintiff's Free-Speech Claims

To sustain a First Amendment retaliation claim under 42 U.S.C. § 1983, the plaintiff must demonstrate that (1) they engaged in constitutionally protected conduct, (2) the employer engaged in retaliation sufficient to deter an individual of ordinary firmness from exercising their constitutional rights, and (3) there was a causal nexus between the protected conduct and retaliation.  Javitz v. Cnty. of Luzerne, 940 F.3d 858, 863 (3d Cir. 2019).  To establish a causal nexus, "a plaintiff usually must prove either (1) an unusually suggestive temporal

proximity between the protected activity and the allegedly
retaliatory action, or (2) a pattern of antagonism coupled with
timing to establish a causal link." Rink v. Ne. Educ.
Intermediate Unit 19, 717 Fed. Appx. 126, 133 (3d Cir. 2017)
(quoting Lauren W. ex rel. Jean W. v. DeFlaminis, 480 F.3d 259,
267 (3d Cir. 2007)). If a plaintiff satisfies the three-part
test, the government thereafter bears the burden of showing that
it would have taken the adverse action even if Plaintiff had not
engaged in the protected speech. See Baloga v. Pittston Area
Sch. Dist., 927 F.3d 742, 752 (3d Cir. 2019).

"The Free Speech Clause contained within the New Jersey
Constitution 'is generally interpreted as co-extensive with the
First Amendment,'" therefore this same analysis is applicable to
Plaintiff's federal and state claims and the Court will evaluate
the claims concurrently. See Palardy v. Twp. of Millburn, 906
F.3d 76, 80 (3d Cir. 2018) (quoting Twp. of Pennsauken v. Schad,
733 A.2d 1159, 1169 (1999)).

Plaintiff alleges in the Amended Complaint that he spoke
out against Defendants' practices in his individual, union, and
official capacities with his objections and state lawsuit. (ECF
26 at ¶¶ 129-135, 255-59). The Court first notes that a public
employee's speech right is more limited than that of a member of
the general public and is protected when (1) the public employee
speaks as private citizen, (2) the statement made is of a matter

27

of public concern, and (3) the government employer is not justified in treating the employee differently than a member of the public.  Palardy, 906 F.3d at 81 (citing Hill v. Borough of Kutztown, 455 F.3d 225, 241-42 (3d Cir. 2006)).  Plaintiff cites Palardy for the proposition that no additional proof of public concern is necessary because the union activity of a public employee is "inevitably of public concern," (ECF 330 at 20 (citing Palardy, 906 F.3d at 82)), and adds that his union activities conducted while off-duty were as a private citizen, (id.).  However, the cited discussion in Palardy pertained to union association, 906 F.3d at 82, and the Third Circuit recognized speech and association claims as distinct, see id. at 84 (partially affirming summary judgment as the plaintiff failed to adequately plead a freestanding speech claim).  Further, advocacy made on behalf of a union is not made as a private citizen.  See Foster v. Twp. of Pennsauken, No. 16-5117, 2017 WL 2780745, at *10 (D.N.J. June 27, 2017) (referring to statements made as part of contract negotiations and citing Hill v. City of Phila., 331 Fed. Appx. 138, 142 (3d Cir. 2009)).

A public employee's lawsuit alleging retaliation, however, may be protected by the First Amendment.  See Falco v. Zimmer, 767 Fed. Appx. 288, 307-08 (3d Cir. 2019).  Accepting Plaintiff's state lawsuit as protected, the chronology of alleged events does not support relief in Plaintiff's favor.

Plaintiff filed his New Jersey Superior Court action in April
2010.  (ECF 26 at ¶¶ 182, 257).[7]  At that point, most of the
actions complained of – his transfer, return to a lieutenant
position, absent-without-leave discipline, etc. – had already
taken place, (ECF 322-3 at 81-82, 94; Pl. Dep. Tr. at 139:9-11).
The lone specified event that the Court can deduce occurred
after the initiation of Plaintiff's state lawsuit was his
discipline for a bias incident that took place in early 2013.
(ECF 322-4 at 26, 209).  The Court finds that no reasonable
factfinder could conclude that this discipline, which was
sustained, (id. at 29-30; Pl. Dep. Tr. at 179:10-16), was made
in retaliation nearly three years after Plaintiff filed his
complaint.

     Plaintiff's other purportedly protected actions, namely his
objections made to Defendants, were made in his public capacity.
To find them protected, as the Court does not, does not result
in supporting Plaintiff's claims.  As noted above, though
Plaintiff was transferred and had his shift changed shortly
following his objections, Defendants have offered testimony that
those actions would have taken place regardless of Plaintiff's

---

[7] Plaintiff's claim in his opposition that the state lawsuit was
filed in May 2009, (ECF 330 at 18-19), conflicts with the
timetable provided in the Amended Complaint, which states that
the lawsuit was filed in or around April 2010, (ECF 26 at ¶
182).  The amended state-court complaint available on the docket
was filed in April 2010.  (ECF 292-21).

speech.  (Lynch Dep. Tr. at 139:14 to 140:9; Thomson Dep. Tr. at 125:19 to 126:3); see also Baloga, 927 F.3d at 752.  Nor does the Court find that the adverse actions, including sustained discipline, altered shifts, and reassignments, over the course of approximately four years evidence a pattern of conduct with a causal link between Plaintiff's speech and the adverse employment actions.  See Roseberry v. City of Phila., 716 Fed. Appx. 89, 92 (3d Cir. 2017) (finding "no pattern of antagonism" from several isolated employer actions that took place over the course of three years); Luciani v. City of Phila., 643 Fed. Appx. 109, 113-14 (3d Cir. 2016) (concluding that the ten months between the plaintiff's statements and his pre-termination proceedings could not, alone, support causation).  The Court thus holds that summary judgment is appropriate with respect to Plaintiff's speech claims under the United States and New Jersey Constitutions.

**E. Plaintiff's 42 U.S.C. § 1983 Claims**

**1. Plaintiff's racial discrimination claim (Count 6)**

Count 6 of Plaintiff's Amended Complaint alleges racial discrimination under 42 U.S.C. § 1983.  Like Plaintiff's claim of discrimination under the New Jersey LAD, the Court first notes that Plaintiff, during his deposition, identified two instances of believed racial discrimination – his transfer from Internal Affairs after which he was replaced by Wysocki, and his

being replaced as acting captain by Sosinavage.  (Pl. Dep. Tr.
at 184:12 to 185:7).  As stated, the evidence indicates that
Plaintiff was still a captain at the time of Sosinavage's
promotion.  (Sosinavage Dep. Tr. at 98:10-15).  The Court
therefore finds that no rational factfinder could conclude that
Plaintiff has established a prima facie claim as to Sosinavage's
promotion as such a claim requires favoritism shown toward
members of the nonprotected class.  See Stewart v. Rutgers, The
State Univ., 120 F.3d 426, 432 (3d Cir. 1997).

Moving to Plaintiff's transfer from Internal Affairs,
racial discrimination under 42 U.S.C. § 1983 is subject to the
same McDonnell Douglas burden-shifting framework that has grown
familiar in this Opinion.  See id.  In the context of alleged
discriminatory transfer, a plaintiff must show that they were
(1) a member of a protected class, (2) qualified for the
position they sought, and (3) nonmembers of the protected class
were treated with greater favor.  Longoria v. New Jersey, 168 F.
Supp. 2d 308, 316 (D.N.J. Oct. 17, 2001) (citing Goosby v.
Johnson & Johnson Medical, Inc., 228 F.3d 313, 318-19 (3d Cir.
2000)).

The Court accepts that Plaintiff, an African American, is a
member of a protected class and was qualified to remain in
Internal Affairs.  It notes, however, that Wysocki, who is
Caucasian, was not necessarily treated more favorably as the

31

record indicates that he was unhappy with being moved to replace
Plaintiff.  (Wysocki Dep. Tr. at 54:1-4).  Were the Court to
nonetheless find that Plaintiff sets forth a prima facie
discrimination claim, Count 6 of Plaintiff's Amended Complaint
would fall – like its predecessors – due to Defendants'
proffered racially neutral reason, that Wysocki's prior working
relationship with the FBI and interviewing skills were important
for upcoming investigations.  (Thomson Dep. Tr. at 125:19 to
126:3).  Though Plaintiff challenges Wysocki's experience
elsewhere in his opposition, his focus is on Wysocki's lack of
experience with Internal Affairs, (ECF 330 at 14), not the
actual reasons cited by Defendants.  Therefore, the Court
concludes that Plaintiff has failed to rebut the permissible
rationale, see Stewart, 120 F.3d at 432, and will grant
Defendants' motion as to Count 6 of Plaintiff's Amended
Complaint for failure to meet his burden under McDonnell
Douglas.

### 2. Plaintiff's Retaliation Claim (Count 8)

To establish a 42 U.S.C. § 1983 retaliation claim, a
plaintiff must show that they (1) engaged in protected activity,
(2) suffered an adverse employment action, and (3) that there
was a causal nexus between the protected activity and the
adverse action.  Hanani v. N.J. Dept. of Env't Prot., 205 Fed.
Appx. 71, 79-80 (3d Cir. 2006).  Such claims are also evaluated

under the McDonnell Douglas burden-shifting framework.  Bangura
v. Pennsylvania, 793 Fed. Appx. 142, 145 (3d Cir. 2019).

Count 8 of Plaintiff's Amended Complaint, in the Court's
view, represents a recapitulation of Plaintiff's free-speech
claims under another name.  Plaintiff, again, alleges that his
New Jersey Superior Court complaint and testimony was protected
by the First Amendment.  (ECF 26 at ¶¶ 182-85).  To the extent
that Plaintiff alleges that he was retaliated against by
Defendants "illegally and improperly promoting less qualified
individuals above him in the new County Police Department," (id.
at ¶ 186), the Court notes that Plaintiff's claims against
County Defendants have already been disposed of, (ECF 20; ECF
202; ECF 283).

Furthermore, as recognized above, Plaintiff filed his
state-court complaint in April 2010, (ECF 26 at ¶¶ 182, 257),
after the majority of actions complained of – his transfer,
return to a lieutenant position, and absent-without-leave
discipline, (ECF 322-3 at 81-82, 94; Pl. Dep. Tr. at 139:9-11).
The lone specified adverse action allegedly committed by
Defendants following the state-court complaint was Plaintiff's
discipline for improper handling of the bias incident in early
2013.  (ECF 322-4 at 26, 209).  The Court is unable to discern,
and concludes that no reasonable factfinder could find, a causal
nexus between Plaintiff's state-court action and discipline

nearly three years later to make out a prima facie case.  This is especially so as the discipline in question was ultimately sustained.  (Id. at 29-30; Pl. Dep. Tr. at 179:10-16).  Summary judgment as to Count 8 will therefore be granted.

### F. Plaintiff's Monell Claims

Plaintiff's final two claims, Counts 7 and 9, bring 42 U.S.C. § 1983 actions against the City of Camden.  First, Plaintiff alleges in Count 7 that Defendants created a custom or practice of violating laws, rules, and regulations regarding civil-service procedures and improperly utilizing Internal Affairs.  (ECF 26 ¶¶ 173, 175).  Plaintiff claims that City administration was aware of these practices and acquiesced, agreed, or acted in furtherance of them, (id. at ¶ 174), and that Plaintiff was retaliated against due to his speaking out, (id. at ¶¶ 176-79).  Count 9 makes another reference to Plaintiff's state-court action and alleges that City administration knew of Thomson and other Defendants' custom or practice of harassing and retaliating against objectors and acquiesced to or ratified that conduct.  (Id. at ¶¶ 194-99).

To succeed in a 42 U.S.C. § 1983 claim, a "plaintiff must prove (1) that the alleged injury was caused by a person acting under the color of state law; and (2) that the conduct deprived the plaintiff of a federally protected right." Adams v. Cnty. of Erie, 558 Fed. Appx. 199, 202 (3d. Cir. 2014) (citing Nicini

v. Morra, 212 F.3d 798, 806 (3d Cir. 2000)).

A plaintiff may not sue a local government under 42 U.S.C. § 1983 based solely on the actions of employees, but rather the plaintiff's injury must be caused by a government policy or custom.  Chernavsky v. Twp. of Holmdel Police Dep't, 136 Fed. Appx. 507, 509 (3d Cir. 2005) (citing Monell v. N.Y. Dep't of Soc. Servs., 436 U.S. 658, 694 (1978)).  Policies are made by "an official statement of a 'decisionmaker possessing final authority to establish municipal policy,'" while custom is evidenced by "a course of conduct that 'is so well-settled and permanent as virtually to constitute law.'"  Id. (quoting Bielevicz v. Dubinon, 915 F.2d 845, 850 (3d Cir. 1990)).

Though Plaintiff demonstrates that Defendants performed the relevant actions in their official capacities and thus under the color of state law, the Court cannot conclude that any constitutional right of Plaintiff's has been violated by Defendants for the same reasons described throughout this Opinion.  Namely, with respect to Plaintiff's free-speech right expressly referenced in Count 9, the Court holds that Plaintiff has failed to demonstrate that his objections to Defendants were made as a private citizen, see Palardy, 906 F.3d at 81, and that his state-court claim followed the majority of the adverse actions cited in the record, (ECF 26 at ¶¶ 182, 257; ECF 322-3 at 81-82, 94; Pl. Dep. Tr. at 139:9-11).  The absence alone of a

violation of Plaintiff's rights is enough to defeat his <u>Monell</u>
claim.  <u>See</u> <u>Mulholland v. Gov't Cnty. of Berks</u>, 706 F.3d 227,
238 n.15 (3d Cir. 2013) ("It is well-settled that, if there is
no violation in the first place, there can be no derivative
municipal claim." (citing <u>Los Angeles v. Heller</u>, 475 U.S. 796,
799 (1986) and <u>Estate of Smith v. Marasco</u>, 318 F.3d 497, 505 (3d
Cir. 2003))).

Even if the individual Defendants had engaged in an
unlawful practice, Plaintiff has failed to meet another key
element of a <u>Monell</u> claim.  While Plaintiff alleges that he
alerted the City's business administrator to his concerns with
how investigations were handled, (ECF 26 at ¶ 84), Plaintiff
does not cite any official statement or longstanding pattern of
conduct to evidence a policy or custom, <u>see</u> <u>Chernavsky</u>, 136 Fed.
Appx. at 509, or even acquiescence to such a custom, <u>see</u> <u>Noble</u>
<u>v. City of Camden</u>, 112 F. Supp. 3d 208, 221 (D.N.J. June 29,
2015) ("[P]laintiff must show that the municipality, through one
of its policymakers, affirmatively proclaimed the policy, or
<u>acquiesced in the widespread custom</u> . . . ." (emphasis added)).

Plaintiff submits that "[i]f ever there was a case where
the improper pattern and practice existed and was ratified by
the governing body, it is this one," but makes no citations to
the record and generally relies on rationales asserted elsewhere
in the opposition, (ECF 330 at 21), which itself consists

36

largely of broad, uncited assertions. These bald and conclusory assertions fail to go beyond the pleadings and meet Plaintiff's burden to come forward with specific facts demonstrating a genuine issue for trial.  See Santini, 795 F.3d at 416.  The Court thus holds that summary judgment is appropriate as to Counts 7 and 9.

**IV. Motion to Seal**

Following the filing of his opposition, Plaintiff moved to seal exhibits attached to his statement of material facts.  (ECF 336).  Though the motion was purportedly submitted pursuant to the Federal Rules of Civil Procedure, the Court understands Plaintiff's motion as having been filed pursuant to Local Civil Rule 5.3, which governs motions to seal within this District. See Medley v. Atl. Exposition Servs., Inc., 550 F. Supp. 3d 170, 203 (D.N.J. July 26, 2021).

Motions to seal pursuant to Local Civil Rule 5.3 must be made via a single, consolidated motion on behalf of all parties, L. Civ. R. 5.3(c)(1), and include (a) the nature of the materials or proceeding at issue, (b) the interests warranting the relief sought, (c) the clearly defined, serious injury that would result without relief, (d) an explanation as to why less restrictive alternatives are unavailable, (e) any prior orders involving the sealing of the same materials, and (f) the identity of any objector, L. Civ. R. 5.3(c)(3); see also Ford v.

Caldwell, No. 20-12655, 2022 WL 4449338, at *1 (D.N.J. Sept. 23, 2022) (noting that the Local Civil Rule 5.3(c)(3) factors are considered by courts when ruling on motions to seal).

Furthermore, this information must be provided "based on personal knowledge."  L. Civ. R. 5.3(c)(3).  It is within courts' discretion to restrict public access, but the presumption is in favor of public access to judicial proceedings, creating a burden for movants to overcome only by a showing of "good cause" – that is "a particularized showing that disclosure will cause a 'clearly defined and serious injury'" – that materials should be protected.  See Medley, 550 F. Supp. 3d at 203-04 (quoting Pansy v. Borough of Stroudsburg, 23 F.3d 772, 786 (3d Cir. 1994)).

The pending motion includes a certification from Plaintiff's counsel that all of the relevant exhibits are records – many of them Internal Affairs files – of the former Camden City Police Department and were subject to a confidentiality agreement entered by the Court.  (ECF 336-1).  There is no indication that the motion was filed on behalf of all parties pursuant to Local Civil Rule 5.3(c)(1).  Nor does counsel's statement that she possesses "personal knowledge of the facts set forth" satisfy the personal knowledge requirement of Local Civil Rule 5.3(c)(3).  See Sosinavage v. Thomson, Nos. 1:14-cv-3292 & 1:14-cv-3323, 2022 WL 2442496, at *3 (D.N.J. July

4, 2022) (finding inadequate litigation counsel's declaration
included with the motion to seal because "he [wa]s not an
employee of the Defendants and therefore lack[ed] personal
knowledge of the Confidential Materials . . . .").

Even if the Court were to ignore these procedural
deficiencies, the motion provides little if any of the
information required by Local Civil Rule 5.3(c)(3), the Court's
findings on which must be reflected in any corresponding opinion
or order filed by the Court. See L. Civ. R. 5.3(c)(6). The
fact that a record has been marked confidential for discovery
purposes does not itself mandate sealing. See Brooks v. Wal-
Mart Stores, Inc., No. 1:18-cv-1428, 2020 WL 1969937, at *8
(D.N.J. Apr. 24, 2020) (citing Vista India, Inc. v. Raaga, LLC,
No. 07-1262, 2008 WL 834399, at *5 n.2 (D.N.J. Mar. 27, 2008)).
"[T]o the extent Plaintiff's motion suggests the existence of a
confidentiality order mandates sealing, that motion fails." Id.

The Court will therefore deny Plaintiff's motion without
prejudice and will provide the parties fourteen days to file a
renewed motion to seal addressing the procedural and substantive
deficiencies identified above. Such a motion must adhere to the
requirements of Local Civil Rule 5.3.

## V. Conclusion

For the reasons stated above, Defendants' motion for
summary judgment, (ECF 322), will be granted and Plaintiff's

motion to seal, (ECF 336), will be denied without prejudice.  An

Order consistent with this Opinion will be entered.


Date: <u>February 10, 2023</u>              <u> s/ Noel L. Hillman </u>
At Camden, New Jersey             NOEL L. HILLMAN, U.S.D.J.